**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
PHILLIP E. WRIGHT,            )
                              )
             Plaintiff,       )
                              )
        v.                    )      Civil Action No. 06-0526(JDB)
                              )
FOREIGN SERVICE GRIEVANCE     )
BOARD, et al.,                )
                              )
             Defendants.      )
_____)
```

<u>**MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**</u>

The defendants pursuant to Rule 12(b)(1) and 12(b)(6) move to dismiss Count III of the Complaint which seeks to avoid a Settlement Agreement on the grounds that the Court lacks subject matter jurisdiction and that the plaintiff has failed to state a claim upon which relief may be granted.

In addition, the defendants move for summary judgment on Count II of the Complaint on the grounds that the undisputed evidence in the record before the Foreign Service Grievance Board (FSGB) demonstrates that the defendants are entitled to judgment as a matter of law.

In support of this motion, defendants submit a Memorandum of Points and Authorities and Exhibits 1-6 and rely on the Administrative Record before the FSGB previously filed with the Court.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

__/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

OF COUNSEL:

DAVID HUITEMAN
Department of State

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
PHILLIP E. WRIGHT,             )
                               )
            Plaintiff,         )
                               )
         v.                    )    Civil Action No. 06-0526(JDB)
                               )
FOREIGN SERVICE GRIEVANCE      )
BOARD, et al.,                 )
                               )
            Defendants.        )
_____)
```

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiff challenges the handling and resolution of a grievance by the Foreign Service Grievance Board ("FSGB" or "Board") pursuant to 22 U.S.C. § 4140 (Count II).[1] Plaintiff also seeks to have this Court declare the Settlement Agreement he entered into with the Department of State in July 2005 ("Department") declared null and void (Count III; see also Exhibit 1). Plaintiff's challenge to the FSGB's handling of a prior grievance is barred by the Settlement Agreement with the Department of State (Department). Moreover, the FSGB's denial of plaintiff's attempt to propound more than nine hundred (900) discovery requests to the Department was eminently reasonable and in compliance with the Board's regulations which provided for 30

_____

[1] Count I of the Complaint is a jurisdictional statement characterizing plaintiff's suit.

interrogatories unless there were extraordinary circumstances not present here.  The Board's decision was neither arbitrary, capricious, or contrary to law and was well-supported by the record.

Plaintiff's challenge to the Settlement Agreement should be dismissed because the Court lacks subject matter jurisdiction and the plaintiff has failed to  state a claim upon which relief may be granted.  Finally, there is no constitutional right to an FSGB hearing before being removed from the Foreign Service for poor performance as asserted by plaintiff.

## Background

Plaintiff was a public affairs officer with the U.S. Information Agency, which merged with the State Department in 1999.  The Foreign Service is an "up or out" personnel system. See Molineaux v. United States, 12 F.3d 264, 265 (D.C. Cir. 1994).  Each year, all employees receive a performance evaluation, called an EER, that is completed by a rating official and a reviewing official. 3 FAM 2813 (Exhibit 2, 3 FAH-1 H-2810 et seq.).[2]  Employees also have the opportunity to comment on the rater's and reviewer's comments. 3 FAH-1 H-2816 (Exhibit 2).

---

[2] Exhibits 2, 3, and 5 are excerpts from the Department's Foreign Affairs Manual, Volume 3.  Exhibit 4 is the Procedural Precepts for the Foreign Service Selection Boards.  These regulations are available to the FSGB in all grievances even though they are not routinely made part of the record.  They are included for the convenience of the Court.

2

Selection Boards then review and rank a number of employees of the same grade. 22 U.S.C. §§ 4002, 4003. The highest ranked employees are eligible for promotion. The lowest ranked employees are referred to a Performance Standards Board, which may recommend that low-performing employees be "selected out" from the Foreign Service. 22 U.S.C. § 4008; 3 FAM 6214.1; 3 FAM 6214.2 (Exhibit 5 hereto). Furthermore, foreign service officers who are not promoted from one grade to the next within a specified number of years ("time in class") are subject to automatic, mandatory retirement. 22 U.S.C. § 4007.

Foreign service officers can file grievances challenging, among other things, inadequate or falsely prejudicial evaluations and the procedures employed by Selection Boards and Performance Standards Boards. 22 U.S.C. §§ 4131(a)(1). In the first instance, the Department's internal grievance staff reviews and investigates grievances. 22 U.S.C. § 4134(a); 3 FAM 4434. If a grievant is dissatisfied with the Department's resolution of the grievance, he or she can appeal to the Foreign Service Grievance Board ("FSGB"). 22 U.S.C. § 4134(b); 22 C.F.R. § 903.1. A review of final decisions of the FSGB is available in District Court. 22 U.S.C. § 4140.

Plaintiff was "selected out" of the Foreign Service in 2000. He then filed a grievance challenging his designation for selection out, the low rankings that he received in 2000, 1999,

and 1996, and the EERs from eight different years stretching back
to 1986.  The Department found a procedural error in one EER.
Since the Performance Standards Board relied in part on that EER,
the Department rescinded one low-ranking and the selection out
(AR 07-08).[3]  However, the Department found no basis for revoking
the other low-rankings or making changes in any of the other
seven EERs (AR 012-021).  On March 6, 2002, plaintiff appealed
the Department's decision to the FSGB (AR 02-06 (Count II of the
Complaint relates to the FSGB's handling of this appeal).

Plaintiff was again selected out of the Foreign Service in
2004.  He filed another grievance with the Department challenging
the 2004 selection out.  Plaintiff's separation from the Foreign
Service was held in abeyance while the Department considered his
grievance.  see 3 FAM 6214.2(f) (Exhibit 5 ).  However, under
Department regulations, the plaintiff would have to retire
immediately if the Department denied the grievance.  At that
time, the FSGB did not have the authority to require the
Department to suspend a separation while a grievance was pending
before the Board.[4]

In July 2005, plaintiff entered into a Settlement Agreement

_____

[3]  "AR" refers to the administrative record previously filed
with the Court.

[4] That authority has since been added by amendment to 22
U.S.C. § 4136(8) in circumstances where the FSGB determines that
interim relief would be appropriate.

with the Department before his grievance on the 2004 selection

out was decided by the Department (Exhibit 1).  The Settlement

Agreement provided that plaintiff could  remain in the Foreign

Service until December 31, 2005, at which time he would resign

and be eligible for full retirement benefits.  Pursuant to the

Settlement Agreement, the Department rescinded plaintiff's

"separation out."  Because plaintiff had not been promoted and

would have reached the maximum "time in class" for his grade

level several weeks before he could retire with full benefits,

the Department also extended his "time in class" until December

31, 2005.  In return, the plaintiff agreed to withdraw  his

grievance and to settle <u>all</u> other claims against the Department.

He also agreed to retire effective December 31, 2005 (Exhibit 1).

Three months later, on March 21, 2006, plaintiff filed the

instant Complaint.

**ARGUMENT**

### I.   PLAINTIFF'S ATTEMPT TO VOID THE SETTLEMENT MUST BE DISMISSED

Plaintiff entered into a Settlement Agreement with the

Department in July 2005.  He now seeks to have the agreement

declared null and void after he has received the benefits of that

agreement.  The Court lacks subject matter jurisdiction over this

claim, and the complaint does not state a claim upon which relief

may be granted.  Plaintiff's attempt to declare the Settlement

Agreement null and void should be dismissed pursuant to Rule

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### A.    Standard of Review.

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. District of Columbia Ret. Bd. v. United States, 657 F. Supp. 428, 431 (D.D.C. 1987).  In considering a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all material factual allegations in the complaint. Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987).  A court may also consider materials outside the pleadings as appropriate to resolve the question whether it has jurisdiction to hear the case. Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Borg-Warner Protective Servs. Corp. v. EEOC, 81 F. Supp. 2d 20, 23 (D.D.C. 2000).

The Court may grant a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The Court accepts as true the complaint's factual allegations. Hishon v. King &

6

Spalding, 467 U.S. 69, 73 (1984); Doe v. United States Dep't of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985).  However, the movant is entitled to judgment if there are no allegations in the complaint which, even if proven, would provide a basis for recovery.  Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).

   **B.    The Court Does Not Have Subject Matter Jurisdiction Over the Settlement Agreement.**

   The only basis for jurisdiction asserted in the Complaint is 22 U.S.C. § 4140, which allows for "judicial review of a final action of the Secretary or the Board [the FSGB] on any grievance."  Plaintiff's effort to void the Settlement Agreement, however, is a contract claim; it is not a challenge to any "final action" by the Secretary of the Board on a grievance within the meaning of § 4140.  Jurisdiction over contract claims over $10,000 is in the Court of Claims. 28 U.S.C. § 1346(a)(2).[5]

   The scope of § 4140 is evident both in its plain language, and in the surrounding statutory provisions.  It does not allow for judicial review of any agency conduct related to or affecting a grievance.  It instead permits an appeal to this Court only from the FSGB's final resolution of a grievance or, in some circumstances, the Secretary of State's decision not to implement a FSGB recommendation.

---

   [5] Plaintiff's demand for reimbursement and backpay would greatly exceed the $10,000 jurisdictional threshold.

The FSGB "shall expeditiously decide the grievance on the basis of the record of proceedings," <u>see</u> 22 U.S.C. § 4137(a). The FSGB has authority to issue some forms of relief directly, such as making corrections to inaccurate personnel records or reinstating a foreign service member who had been removed improperly. 22 U.S.C. § 4137(b).  Section 4137(c) provides that FSGB decisions "shall be final, subject only to judicial review as provided in section 4140 of this title."

If the FSGB decides that other remedial measures are warranted, such as promoting or tenuring a foreign service officer or imposing discipline on an official, the Board makes a recommendation to the Secretary of State. 22 U.S.C. § 4137(d)(1). Such a recommendation is also identified as a "final action" permitting judicial review. 22 U.S.C. § 4137(d)(2).  The Secretary decides whether to implement or reject the Board's recommendation. 22 U.S.C. § 4137(d)(1).  If the Secretary rejects a Board recommendation, the Secretary must request that the Board reconsider. 22 U.S.C. § 4137(d)(3)(A).  The Board then makes a revised recommendation which the Secretary must implement. 22 U.S.C. § 4137(d)(B)&(C).  This too is identified by statute as "a final action for purposes of section 4140 . . . ." 22 U.S.C. § 4137(d)(3)(C).

Plaintiff's challenge to the Settlement Agreement does not involve any such "final action."  Indeed, the Settlement

Agreement did not even arise in the context of a grievance
pending before the FSGB.  Rather, plaintiff entered the
Settlement Agreement when the dispute over his most recent
"selection out" was still pending before the Department's
internal grievance staff and before it was even ripe for filing
with the FSGB.

There is no precedent for plaintiff's attempt to invoke §
4140 to challenge a negotiated resolution of an internal
employment dispute that had not even reached the FSGB.

### C.    Plaintiff Fails to State a Claim for "Coercion."

Even if the Court had jurisdiction over plaintiff's contract
claim, it would fail as a matter of law.[6]

The complaint's allegations do not suffice to establish
coercion or duress as a matter of law.  Duress requires an
"improper threat" that leaves the other party "no reasonable
alternative" but to sign a contract, or that induces such fear
that the other party cannot exercise free will or judgment.
Restatement (Second) Contracts § 175; Weaver v. Bratt, 421 F.
Supp. 2d 25, 34 (D.D.C. 2006); Goldstein v. S & A Restaurant
Corp., 622 F. Supp. 139, 144 (D.D.C. 1985).  None of these

---

[6] Plaintiff also asserts in passing that the contract is
"against public policy" (Complaint at IIIj).  This appears to be
just a reference to plaintiff's coercion argument, addressed in
this section, and the due process argument, which is addressed
infra.  The Complaint fails to identify a public policy that the
Settlement Agreement would allegedly contravene.

9

requirements is satisfied here.

The only allegation in the Complaint remotely bearing on possible coercion is that plaintiff was given five days to consider the settlement proposal, and that he faced dismissal and the loss of retirement benefits if his grievance were denied by the Defendant (Complaint at IIId - IIIf).  There is no allegation of any "improper threat."  The most that can be gleaned from the Complaint is that plaintiff was made aware, as he should have been, that he could not forestall dismissal once his grievance was denied by the Department, and that he understood that the FSGB could not reinstate him in the Foreign Service while he pursued an appeal.  These facts are not "threats" and conveying these facts to plaintiff is not "improper."  This information reflects the routine and standard operation of the statutory and regulatory provisions applicable to all foreign service officers and to plaintiff's situation in particular.  The financial implications of termination do not amount to duress either. Goldstein, 622 F. Supp. at 142.  While plaintiff may have been in a difficult situation and had an incentive to settle, this does not mean there was coercion or duress.  It just explains why it was attractive to accept a settlement that allowed him to continue working for almost six months at full salary and then receive full retirement benefits which he could not do if his grievance was denied.

10

Plaintiff faced a meaningful choice.  He could settle with the Department and guarantee his full retirement or he could take his chances before the FSGB.  He could appeal to the FSGB, which had the power, if it decided in his favor, to reinstate him, award back pay, and order any appropriate changes to his personnel records.  On the other hand, if plaintiff was unsuccessful before the FSGB he would have been already selected out of the Foreign Service and would not be eligible for full retirement.  Cf. Restatement (Second) Contracts § 175 cmt. B (a threat to sue someone may be improper, but it does not amount to duress, because the other party can vindicate his interests in the threatened legal proceeding).  Plaintiff clearly understood his options, exercised his free will, voluntarily signed the Settlement Agreement, and received a substantial benefit from the agreement, including several months at full salary and then full retirement benefits.  Moreover, duress and coercion as claimed by plaintiff are not grounds for affirmative claims, but are instead defenses to a contract enforcement claim.  See Bennett Enterprises, Inc. v. Domino's Pizza, Inc., 794 F. Supp. 434, 438 (D.D.C. 1992).  Plaintiff cannot sue the Department in an effort to void a contract that has already been implemented to plaintiff's benefit.  Id.

Finally, plaintiff can no longer void the Settlement Agreement even if he had been coerced into signing it, because he

11

has already accepted the contract and all its benefits.  Pursuant to the settlement, the Department made changes to plaintiff's personnel records, and permitted him to continue working until he qualified for a full retirement.  Plaintiff reaped those benefits.  He stayed on as a member of the Foreign Service for many months longer at full pay than he would have been if his grievance had been denied, and he now enjoys full retirement benefits that he may not have been entitled to if the FSGB had denied his appeal.  A party loses the power to void a contract entered under duress by affirming the agreement or subsequently accepting its benefits. Restatement (Second) Contracts § 380; Goldstein v. S & A Restaurant Corp., 622 F. Supp. at 145 ("duress merely renders a contract voidable.  Thereafter, the victim may ratify the agreement by accepting its benefits."); see also Weaver v. Bratt, 421 F. Supp. 2d 25, 34 (D.D.C. 2006) (rejecting assertion of duress and coercion, in part, because plaintiff did not assert her claims until she had already taken the benefits of settlement and was no longer satisfied).  Thus, plaintiff's claim of coercion must fail.

   **D.    There Is No Due Process Right to a FSGB Hearing Before Selection Out of the Foreign Service.**

Plaintiff argues that the FSGB's lack of statutory authority to grant him interim relief by requiring the Department to maintain his status as a member of the Foreign Service during the pendency of his appeal violates his right to procedural due

process (Complaint at IIIg).  Plaintiff contends he was entitled
to a hearing before the FSGB before he was terminated.

Plaintiff lacks standing to challenge the constitutionality
of the statutory scheme.  The Department did not deny his
grievance, the Department did not separate him for poor
performance, and finally plaintiff did not find himself
terminated before having a hearing before the FSGB.  Plaintiff
has no standing to challenge the statutory scheme that was
provided but that he voluntarily chose not to pursue. See
generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560
(1992) (noting "injury in fact" is part of the "irreducible
constitutional minimum" for standing, and that the injury must be
"actual or imminent, not conjectural or hypothetical") (internal
quotations omitted).

Moreover, the Constitution does not require a full,
evidentiary hearing prior to termination when there are other
adequate opportunities for review.  The Department has extensive
regulations governing the evaluation of foreign service officers'
job performance.  The process starts with an annual performance
rating, to which the foreign service officer has an opportunity
to make a written statement as part of that rating. 3 FAH-1
H-2816 (Exhibit 2).  Selection Boards then review all of the
ratings in a process guided by lengthy precepts that are issued
each year (2003 Selection Board Precepts (Exhibit 4)).  In an

13

effort to ensure objectivity and equal treatment, the Selection
Board has access to only a limited range of official information
about the foreign service officers, most notably the annual
rating. 22 U.S.C. § 4003.  Each Selection Board must rank the
foreign service officers that it reviews, and those who are "low
ranked" are then passed on for further consideration by a
Performance Standards Board. 3 FAM  6214.1 (Exhibit 3).  The
Performance Standards  Board conducts its own review and can
recommend that foreign service officers who "have not met the
standards of performance of their class" be selected-out of the
Foreign Service. 3 FAM 6214.2(a) & 3 FAM 6214.2-1.  Any such
recommendation must include an "individual statement[s]
justifying the Board's findings in each case.  These statements
shall indicate the documented shortcomings where the members did
not meet the standards of their present class."  3 FAM 6214.2(e).
The Director General then decides whether to accept the
Performance Standards Board's findings. Id.

     Foreign service officers who are "designated for separation"
then have a choice:  They can either file a grievance, as
plaintiff did, or they can appeal to a Special Review Board. 3
FAM 6214.2(f).  The regulations further provide that "[a]n
employee will not be separated from the FS while the SRB review
is pending or while the grievance process is pending at the
initial level below appeal." Id.  The Special Review Board

14

conducts a hearing during which the employee can introduce evidence and present witnesses. 3 FAM 6214.3(c). The employee may be represented during the proceedings and may conduct discovery. 3 FAM 6214.3(d) & 3 FAM 6214.3-1. The plaintiff chose not to use this review process.

The premise of plaintiff's due process argument is erroneous. The Department's regulations do give employees a procedural avenue that guarantees a full hearing before any mandatory retirement takes place. Plaintiff simply chose a different avenue to challenge the basis for his selection out.

However, even if a pre-termination hearing before the Special Review Board was not available, plaintiff fails to state a constitutional claim. The numerous procedural steps and safeguards built into the low-ranking and selection-out process, coupled with the availability of review before the FSGB after termination, provide all the process due under the Fifth Amendment. If a foreign service officer files a grievance after being "selected out," it is first adjudicated by the Department before the employee is removed. 3 FAM 6214.2(f), 3 FAM 4431(b). At that stage, the employee has the opportunity to provide any arguments and evidence, including statements from witnesses, if relevant. See, e.g. 3 FAM 4426.1, 3 FAM 4426.1, 3 FAM 4430. This is all that due process requires. If the Department denies the grievance and the employee is terminated, he or she may

15

appeal to the FSGB, where additional discovery is authorized. There is further opportunity to present evidence and argument, and full evidentiary hearings are also available. 22 U.S.C. § 4136.

The Supreme Court has explained that a full evidentiary hearing is not required prior to terminating a public employee with a property interest in his or her position. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-48 (1985).  What is essential is that the employee have notice of the charges, an explanation of the employer's evidence, and a chance to respond. Id. at 470 U.S. 546.  "To require more than this prior to termination," the Supreme Court noted, "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id.  Moreover, "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures." Id. at 470 U.S. 547 n.12.  Notably, if a full evidentiary hearing is available after an employee is removed, then less process is required to accomplish the removal in the first place. Id.

Similarly, in the civil service context, tenured employees generally do not receive an administrative hearing before they are terminated for poor performance.  There are procedures that must be observed: an employee must be given notice of performance deficiencies and an opportunity to improve. 5 U.S.C. §

16

4302(a)(6).  This is followed by a written proposal to terminate, and the employee has an opportunity to respond within the agency to that proposal. 5 U.S.C. § 4303(b).  Once a decision letter is issued, however, the employee is immediately terminated.  Only then can he or she pursue an appeal with the Merit Systems Protection Board ("MSPB"), where a hearing is available. 5 U.S.C. § 4303(e) (permitting appeal to MSPB for an employee "who has been reduced in grade or removed") (emphasis added).  The MSPB serves a role in civil service terminations comparable to the FSGB in the foreign service context.  Thus, there is no basis in fact or law that the statutory scheme for selection out of the Foreign Service denied plaintiff any due process rights.

## II.  The Decision of FSGB Was Not Arbitrary, Capricious or Contrary to Law.

### A.  Standard of Review.

Under the Foreign Service Act of 1980, an aggrieved party can obtain review of a final decision of the FSGB in federal district court in accordance with the standards of the APA. 22 U.S.C. § 4140(a).  Thus, a decision of the Board will not be set aside under 5 U.S.C. § 706(2)(A) unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  This highly deferential standard of review reflects a legislative judgment that "the Board's familiarity with the foreign service ought to be respected by the judiciary." United States v. Paddack, 825 F.2d 504, 514 (D.C. Cir. 1987).

17

The Board's decision is presumed to be valid, and it must be upheld as long as there is any rational basis for it. <u>Motor Vehicle Mfrs. Ass'n of the U.S. Inc. v. State Farm Mut. Auto Ins. Co.</u>, 463 U.S. 29, 42-43 (1983).  A court is not empowered to "substitute its judgment" for that of the Board. <u>Id</u>.  As long as a decision is reasonable, it "need not be the best or most natural one" in the eyes of the court. <u>Pauley v. BethEnergy Mines</u>, 501 U.S. 680, 702 (1991); <u>see also</u> <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971); <u>American Paper Institute v. American Electronic Power Servs. Corp.</u>, 461 U.S. 402, 422 (1983); <u>INS v. Wang</u>, 450 U.S. 139, 144 (1981).  The court's review is limited to the administrative record that was before the Board at the time it made its decision. <u>Florida Power & Light v. Lorion</u>, 470 U.S. 729, 743-44 (1985); <u>Citizens to Preserve Overton Park</u>, 401 U.S. at 420.

With regard to any alleged procedural problems, a decision of the Board will not be set aside under 5 U.S.C. § 706(2)(D) unless it was made "without observance of procedure required by law."  Moreover, for any APA claim, "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706.  In other words, APA violations are only actionable if the plaintiff was prejudiced by the violation.  Procedural irregularities are not <u>per</u> <u>se</u> prejudicial, and it is the plaintiff's burden to establish prejudice. <u>Carstens v. Nuclear Regulatory Comm'n</u>, 742 F.2d 1546,

1558 (D.C. Cir. 1984).

**B.   Plaintiff Waived Any Right to Pursue the Claims Covered by the Grievance in the Settlement Agreement with the Department.**

As indicated above, plaintiff entered into a Settlement Agreement with the Department in July 2005.  In that binding contract, plaintiff "agrees . . . [t]hat this Agreement is in full settlement of any and all claims, administrative or judicial, against the Department with the exception of any claim(s) filed under 22 U.S.C. 4132" (Settlement Agreement (Ex. 1)).[7]  Thus, the claims arising from the grievance against the Department that plaintiff had litigated through the FSGB prior to the settlement were resolved by the Settlement Agreement except for post-employment claims regarding benefits. Id.[8]

**C.   The FSGB Did Not Improperly Deny Plaintiff the Opportunity to Develop Evidence.**

But even if the Settlement Agreement did not bar the instant suit, the decision of the Board was not arbitrary, capricious or contrary to law.  Plaintiff alleges that "[t]he FSGB denied [him] the opportunity to develop evidence" supporting his grievance

---

[7] 22 U.S.C. § 4132 allows former foreign service officers to file grievances related to their post-employment benefits, which is not at issue in this case.

[8] The plaintiff was out of the country when the Board decided his grievance. 22 U.S.C. § 4140(a) permits a Foreign Service officer 180 days after his or her return to the country to appeal the FSGB's decision to the District Court.  Plaintiff returned to the United States in December 2005.  This Complaint was filed within 180 days after his return.

(Complaint at IIa).  Plaintiff does not specify what opportunity was denied him, but defendants assume that he is referring to his attempt to propound over 900 interrogatories on the Department . . . more than ten times the normal amount permitted under FSGB guidelines.  The Board properly denied plaintiff's attempt to greatly exceed the standard scope of discovery in grievance cases.

FSGB regulations require that parties should "follow procedures established by the Board concerning the use of interrogatories." 22 C.F.R. § 903.6.  The FSGB's Policies and Procedures Regarding Discovery permit grievants to serve interrogatories to employees of the Department, but they make clear that such interrogatories are "directed to the agency, which shall be responsible for obtaining responses" (AR 445). The FSGB's Policies and Procedures Regarding Discovery also impose a limit on interrogatories: "Absent good cause shown, a party shall not be required to respond to more than 30 interrogatories, including all discrete sub-parts" (AR 445).

Despite this clear limitation, on March 26, 2002, plaintiff propounded over 900 interrogatories to the Department seeking responses from 46 individuals.  The discovery request alone ran to 173 pages (AR 269-442).  The Department objected to the voluminous discovery request on the same day, informing plaintiff that it would respond only after he narrowed his request to 30

interrogatories (AR 443).  Board guidelines gave plaintiff ten days to respond to the Department's objections (Id. at 445).  On May 28, 2002, having received no response to its objections for over two months, the Department requested that the Board close the discovery process.

Rather than act immediately on the Department's request, the Board gave plaintiff an opportunity to show cause why discovery should not be closed (AR 453-54).  Plaintiff argued that he faced no deadline in responding to the Department's discovery objections (AR 456-57).  Moreover, he failed to narrow the scope of the interrogatories to comply with Board regulations. Instead, he argued that "generally speaking, all of these interrogatories meet the tests of relevance and materiality . . . " (AR 461).  Plaintiff further contended that the 900 interrogatories were not "unreasonably cumulative or duplicative" because they "are spread among a large number of people" (AR 463).  In a detailed opinion dated July 30, 2002, the Board permitted plaintiff to serve a revised set of discovery requests that complied with FSGB guidelines, but it denied his request to exceed the normal limit on interrogatories (AR 465-477).  The Board noted that plaintiff had directed some interrogatories to retirees even though the Department is not required to obtain interrogatory responses from former employees because they are not subject to the Department's control (AR 472 & 475).  The

Board also found that many of the interrogatories were directed
to individuals who had not drafted the evaluations at issue in
his grievance, even though discovery in grievances challenging
the wording of evaluations is normally limited to the officials
responsible for appraising the grievant's performance. Id.
Finally, the Board observed that many interrogatories sought
endorsements or descriptions of the work environment where
plaintiff had been posted, even though grievants may obtain
voluntary statements from co-workers or retirees outside the
formal discovery process.  The Board concluded that much of the
requested discovery was improper and not focused on the matters
at issue in his case. Id.  The record clearly supports the
Board's findings and the conclusion that plaintiff had failed to
show good cause for exceeding the prescribed limit on discovery.
Despite, plaintiff's apparent intransience, the Board gave
plaintiff another chance to craft a set of interrogatories that
complied with Board guidelines (AR 475).

Rather than comply with the Board's order, on August 19,
2002, plaintiff filed a "Response" to the Board's order in which
he stated:  "I do not feel I can limit this request" (AR 478).
He then asked the Board to "address my discovery request in
detail" and to indicate which of the over 900 interrogatories
were being denied (AR 479).  The Department objected, noting that
plaintiff had not taken advantage of the opportunity extended by

the Board, had not complied with the Board's July 30, 2002, order, and had instead written a "rebuke" of the Board's decision (AR 482). The Department again requested that discovery be closed.

On October 1, 2001, the Board denied plaintiff's demand to further review his excessive interrogatory requests (AR 486-92). The Board observed that its regulations permit it to reconsider a decision "upon the presentation of newly discovered or previously unavailable material evidence." 22 C.F.R. § 910.1. The Board further explained that it would also reconsider a previous decision in the event of an intervening change in law or in order to correct clear error or prevent manifest injustice (AR 488). Because none of the criteria for reconsideration had been met, the Board declined to alter or amend its July 30, 2002 order. Nonetheless, the Board gave plaintiff yet another chance, granting him fifteen days to submit a revised set of 30 interrogatories. If plaintiff failed to do so within the time set, the Board put him on notice that "the discovery process will be deemed closed" (AR 491).

Once again, instead of taking advantage of the chance to serve a properly tailored set of discovery requests, plaintiff filed yet another Response with the Board stating that, "[f]or the reasons stated in my memorandum of August 19th, I cannot submit a revised set of interrogatories" (AR 493). On December

2, 2002, the Board finally brought the question of discovery to a close (AR 500-07). The Board found that plaintiff "has been offered ample opportunities to provide argumentation and reasoning as to the relevance of the information sought" in his interrogatories, wrote the Board, but "[n]othing in his prior or most recent submissions addresses this deficiency. Accordingly, we find no basis to disturb our decision as set forth in the aforementioned Orders" (AR 504-05). As the Board correctly found, plaintiff failed to establish good cause for exceeding the standard number of interrogatories.

The FSGB gave plaintiff ample opportunity to justify his excessive interrogatory requests or to issue a substitute set of requests. Plaintiff failed to take advantage of any of the opportunities provided by the Board to properly tailor his interrogatories. The FSGB decision was not arbitrary, capricious or contrary to law. Indeed, the Board's actions fully complied with its long-standing regulations.

**D.    Plaintiff Cannot Demonstrate Harm.**

Plaintiff cannot demonstrate that he was harmed by the constraints on discovery because he failed to utilize the discovery opportunities that were available to him, failed to provide any additional evidence, and failed to argue the merits of his grievance to the FSGB.

Once discovery closed, plaintiff failed to prosecute his

24

grievance at all (See AR generally).  Parties are allowed to
provide a supplemental submission, with evidence gathered after
the filing of the grievance.  Plaintiff failed to do so (AR 520).
Parties are also permitted to file a brief with their final
arguments before the Board makes a decision on the merits of the
grievance.  Plaintiff failed to do so (AR 521).  Thus, when the
Board considered plaintiff's grievance, it was not provided with
any substantive filing by the plaintiff other than the grievance
itself.  Given plaintiff's total failure to support or argue the
merits of his own case before the Board, he cannot show that the
standard limitations on the number of discovery requests caused
prejudice.

     **E.    The FSGB's Decision Is Supported by the Record and
Reasonable.**

    Plaintiff alleges that the FSGB's final decision on his
grievance was "unsupported by and contrary to the evidentiary
record" (Complaint at IId).  On the contrary, the decision is
thorough, well-reasoned, and fully supported in the record (See
AR 528-540).[9]  The decision carefully reviews the grievance's
allegations, the requested relief, the procedural history of the
case, and the positions and arguments of the parties.  The
decision also outlines the standards applicable to its review.

---

    [9] The Complaint alleges that the FSGB delegated its
fact-finding and decision-making to staff personnel (Complaint at
IIf).  The record is devoid of any evidence to support this
allegation.

"The critical test is whether an EER [evaluation] fairly and accurately describes and assesses performance and potential with adequate clarity and documentation to constitute a reasonably discernible, objective and balanced appraisal" (AR 538 (internal quotation omitted)).  Because rating and reviewing officials are presumed to evaluate co-workers properly, "a grievant must present evidence establishing that the challenged rating or reviewing statements are materially inaccurate or unbalanced." This the plaintiff failed to do.

The Board noted that plaintiff failed to make any substantive submission organizing or arguing from the evidence. Nevertheless, it "undertook an extensive review of the material contained in the ROP seeking to insure that Wright's position was fully considered and reviewed" (AR 538-39).  From that review, the Board concluded that "the material (while voluminous) did not provide any evidence supporting the validity of grievant's assertions" (AR 539).  This conclusion was unavoidable, because plaintiff provided no evidence going to the accuracy of his evaluations beyond the evaluation forms themselves.

Moreover, the Board did not simply summarize its global finding, but instead reviewed the assertions and evidence relating to each evaluation at issue in the grievance.  In each case, the Board concluded that plaintiff either had not identified specific language that he alleged to be false, or he

26

had simply presented a difference of opinion with the rater and reviewer without any evidence to refute the evaluation's language.  The Board also reviewed the evaluations that plaintiff asserted were too vague, and found that they included "sufficient detail to provide an employee guidance on how to enhance his performance" (AR 539).  Plaintiff's contention that his 2000 low-ranking resulted from a conflict of interest and bias on the part of the panel chairperson, who had been his rating officer in China, was not supported by the record.  The Board further found, however, that plaintiff had provided no evidence of an adversarial relationship with his previous supervisor, and no evidence that the chairperson had failed to adhere to the Precepts applicable to Selection Boards (AR 540).  To the contrary, the record contained a statement from the Selection Board chairperson that clearly refuted plaintiff's allegation.  Nor did the Board find fault with the Department's internal handling of plaintiff's grievance. Id.  The Board's decision on the merits of plaintiff's grievance was overwhelmingly supported by the record, well-reasoned and according to law.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss and for summary judgment should be granted.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

__/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

OF COUNSEL:

DAVID HUITEMAN
Department of State

28

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
PHILLIP E. WRIGHT,            )
                              )
          Plaintiff,          )
                              )
       v.                     )      Civil Action No. 06-0526(JDB)
                              )
FOREIGN SERVICE GRIEVANCE     )
BOARD, et al.,                )
                              )
          Defendants.         )
_____)
```

**DEFENDANTS' STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE**

In accordance with Local Rule 7.1(h), defendants submit the following statement of material facts as to which there is no genuine issue:

1. Plaintiff was "low ranked" by a Selection Board and then "selected out" of the Foreign Service by a Performance Standards Board in 2000 (AR 44-49, 170-172; see also Exhibits 5).

2. Plaintiff filed a grievance with the Department of State (Department) on May 9, 2001. The grievance challenged his designation for selection out; low rankings that he received in 2000, 1999, and 1996; and performance evaluations ("EERs") from eight different years stretching back to 1986 (AR 30-43). The grievance was designated as AGS 2001-36. Id.

3. The Department found a procedural error in one EER. The Department rescinded one low-ranking and the selection out because the Selection Board and the Performance Standards Board

had relied, in part, on that EER (AR 07-08).

4.  The Department found no basis for overturning the other
low-rankings or making changes in any of the other seven EERs (AR
012-021).

5.  Plaintiff appealed the Department's decision to the FSGB
on March 6, 2002.  The  appeal was docketed as FSGB 2002-018 (AR
02-06, 201).

6.  Plaintiff propounded at least 945 interrogatories (173
pages) to the Department seeking answers from 46 named
individuals (AR 269-442).

7.  The FSGB's Policies and Procedures Regarding Discovery
provide that, "Absent good cause shown, a party shall not be
required to respond to more than 30 interrogatories, including
all discrete sub-parts" (AR 445).

8.  Under the FSGB's Policies and Procedures Regarding
Discovery, interrogatories seeking responses from agency
employees are "directed to the agency, which shall be responsible
for obtaining responses" (AR 445).

9.  The Department objected to the discovery requests on the
same day they were received, informing plaintiff that it would
respond only after he narrowed his requests to 30 interrogatories
(AR 443).

10.  Plaintiff did not respond to the Department's
objections.

11.  On May 28, 2002, the Department requested that the Board close the discovery process (AR 449-452).

12.  On June 3, 2002, the Board gave plaintiff an opportunity to show cause by June 10, 2002, why discovery should not be closed (AR 453-54).

13.  On June 24, 2002, plaintiff filed a motion to compel discovery (AR 456-464).  He argued that "generally speaking, all of these interrogatories meet the tests of relevance and materiality . . . " (AR 461).  He further argued that the 900+ interrogatories were not "unreasonably cumulative or duplicative" because they "are spread among a large number of people" (AR 463).

14.  On July 30, 2002, the Board denied plaintiff's request to exceed the normal limit on interrogatories finding that plaintiff's discovery requests did not meet the criteria for permissible discovery under Board regulations.  However, the Board gave plaintiff the opportunity to issue a revised set of discovery requests that complied with FSGB guidelines (AR 465-477).

15.  On August 19, 2002, plaintiff filed a "Response" to the Board's Order (AR 478 ("I do not feel I can limit this request.")).  Plaintiff asked the Board to address his discovery requests in detail and to indicate which of the over 900 interrogatories were being denied (AR 479).

3

16.  On August 22, 2002, the Department objected to plaintiff's "Response" (AR 482-483).  The Department noted that plaintiff had failed to take advantage of the opportunity extended by the Board to serve a proper set of interrogatories, but had instead written a "rebuke" of the Board's decision (AR 482).  The Department again requested that discovery be closed.

17.  On October 1, 2002, the Board denied plaintiff's request to further review his interrogatory requests (AR 486-92).  The Board found that none of the criteria for reconsideration of its July 30, 2002, Order had been met.  Again, the Board gave plaintiff fifteen additional days in which to submit a revised set of 30 discovery.  The Board advised plaintiff that "the discovery process will be deemed closed" if he did not serve the narrowed interrogatories within the allotted time (AR 491).

18.  Plaintiff did not serve a narrower set of discovery requests.  Instead, plaintiff filed another "Response" with the Board on October 29, 2002 (AR 493-494).  In that Response, plaintiff stated that, "[f]or the reasons stated in my memorandum of August 19th, I cannot submit a revised set of interrogatories" (AR 493).

19.  On December 2, 2002, the Board issued an Order stating that "[t]he interrogatory stage of discovery is closed."  The Board found that plaintiff "has been offered ample opportunities to provide argumentation and reasoning as to the relevance of the

4

information sought" in his interrogatories, but "[n]othing in his prior or most recent submissions addresses this deficiency" (AR 504-05).

20. After discovery closes, parties before the Board are permitted to file a supplemental statement with the FSGB.  The deadline for plaintiff's supplemental statement was February 14, 2003 (AR 511).

21. On February 16, 2003, which was two days after the deadline for the supplemental statement, plaintiff requested an extension until March 24, 2003 (AR 512-514).

22. On February 21, 2003, the FSGB denied plaintiff's request for a one month extension, but did permit him to file a supplemental statement by February 28, 2003 (AR 515-518).

23. Plaintiff did not file a supplemental statement (AR 520).

24. Plaintiff was also permitted to file a brief, or final argument, for the Board's consideration by March 21, 2003. Id.

25. Plaintiff did not submit a final argument to the Board (AR 521).

26.  On July 8, 2003, the FSGB issued a decision on plaintiff's grievance (AR 527-542).[1]

---

[1] The plaintiff was out of the country when the Board decided his grievance. 22 U.S.C. § 4140(a) permits a Foreign Service officer 180 days after his or her return to the country to appeal the FSGB's decision to the District Court.  Plaintiff returned to the United States in December 2005.  This Complaint

27.  The Board "undertook an extensive review of the material contained in the ROP seeking to insure that Wright's position was fully considered and reviewed" (AR 539).  The Board concluded that the record evidence did not meet plaintiff's burden with regard to any of his claims.

28.  The Board denied plaintiff's grievance in its entirety (AR 541).

29.  Plaintiff filed his Complaint in District Court challenging the Board's decision on March 21, 2006.

30.  On July 14, 2005, plaintiff entered into a Settlement Agreement with the Department in which he agreed to settle "any and all claims, administrative or judicial, against the Department "with the exception of claims concerning future benefits set forth in 22 U.S.C. § 4132." (Exhibit 1).

---

was filed within 180 days after his return.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

__/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

OF COUNSEL:

DAVID HUITEMAN
Department of State

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this _____ day of November,

2006, that a copy of the foregoing was served by First-Class mail

to:

PHILLIP E. WRIGHT
4260 Franklin Street
China Grove, NC 28023

                      _____/s/_____
                      DIANE M. SULLIVAN
                      Assistant United States Attorney
                      Judiciary Center Building
                      555 Fourth Street, N.W.
                      Room E4919
                      Washington, D.C. 20530
                      (202) 514-7205