UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILLIP E. WRIGHT,

      Plaintiff,

v.                                                   Civil Action No. 06-0526 (JDB)

FOREIGN SERVICE GRIEVANCE
BOARD, et al.,

      Defendants

## PLANTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S SUPPORTING MEMORANDUM

Plaintiff opposes Defendants' Motion to Dismiss and for Summary Judgment and moves for summary judgment on his part. The Court has jurisdiction to hear all elements of Plaintiff's Complaint. Furthermore, Plaintiff's allegations in his Complaint and his request for relief are fully supported by the evidence contained in the Administrative Record (AR) and in the Plaintiff's Exhibits.

## JURISDICTION

The Court has jurisdiction to consider and rule on all elements of Plaintiff's Complaint. As the United States Supreme Court stated in Dept. of Commerce v. U.S. House of Reps. 525 U.S. 329, 199 Supreme Court Reporter 765, 772 (1999): "We have repeatedly noted that in order to establish Article III standing ' [a] plaintiff must allege

RECEIVED
JAN 2 9 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

personal injury fairly traceable to the defendants' allegedly unlawful conduct and likely to be redressed by the requested relief."

In the present case, Plaintiff's injury lies in a decision of the Foreign Service Grievance Board (hereafter referred to as FSGB or Board) that is not supported by the evidence and is contrary to the applicable law and regulations, and in being forced to sign an invalid settlement agreement. These actions are directly traceable to the Defendants' conduct. These injuries can be redressed by the Court through granting the relief requested in Plaintiff's Complaint.

## THE SETTLEMENT AGREEMENT

It is necessary to begin with a consideration of the Settlement Agreement (hereafter referred to as SA) since the Defendants wish to use this agreement to bar consideration of any part of Plaintiff's Complaint. See Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss and for Summary Judgment (hereafter referred to as DM) at pages 1, 5 and 19.

The SA is void in that there was no consideration on the Defendants' part in offering the SA, it was signed under duress, and it is void as against public policy.

The SA lacks consideration on the Defendants' part in that there is absolutely no justification for either the 2002 or 2003 low rankings (hereafter referred to as LR) or for the 2003 Designation for Separation (hereafter referred to as DFS). For the LRs see Plaintiff's Exhibits (hereafter referred to as PE) pages 5-6 and 9-10. For the DFS see PE 13-16. For my detailed argument on this point see PE 23-29.

I should also note that since neither the 2002 or 2003 Selection Board (hereafter referred to as SB) referred me directly to a Performance Standards Board (hereafter referred to as PSB), even if only one of the 2002 or 2003 LRs is found invalid, then the DFS is invalid as well. See Defense Exhibit (hereafter referred to as DE) 4 at page 9.

In terms of the Procedural Precepts "Low ranking is an indication to the member and the Department of problem areas or inadequacies in needed skills, performance and/or potential, and may not be based on such secondary considerations as … type or pattern of assignments … [or] less extensively documented successful performance." DE 4 at page 8. See also DE 4 at page 14 [sec. 3(b)]. However, this is exactly what the 2002 SB did (PE 5-6).

The 2003 LR and DFS focused in large part on my statement in my 2003 EER where I stated, "However, my unwillingness to make additional comments here should be taken as a sign of the utmost disrespect for this contemptible and corrupt travesty that dares to pass itself off as a personnel system." (PE 48) This again violates the Procedural Precepts. Boards "should not give undue weight to any single evaluation report in isolation from other reports …" (DE 4 at page 14 [sec. 3(a)]).

In terms of a low ranking, "These statements shall draw where possible on materials from more than one rating period and from more than one rating officer. Such statements will include specific examples of performance given in reports from the most recent 5 years." (DE 4 at page 9 [sec. b(2)]) (emphasis added). "A designation of selection-out ordinarily will not be based solely on the reports on a single rater. The Board should be able to identify some or all of the critical shortcomings among the reports of more than one rater." (DE 5, page 19 of 30) (emphasis added)

The duty of a PSB is "to designate for selection-out those whose <u>performance</u> (evaluated in terms of assigned duties, goals, and work requirements) or whose deficiencies in work-related personal qualities or professional skills indicate that they have not met the standards of performance for their class." (DE 5 at page 19 Of 30) (emphasis added)

In addition "A PSB shall not consider any of the following: (a) The time remaining before a member arrives at what may be mandatory retirement either for age or time-in-class/time-in service." (DE 5, page 19 of 30). The 2003 PSB violated this requirement by stating "Mr. Wright, a public diplomacy officer, was last promoted in 1989." (PE 15)

The 2003 SB and PSB also ignored positive factors in my favor. "Creditable performance under unusually difficult or dangerous circumstances is particularly relevant, as is a willingness to risk disciplined and sensible dissent and the constructive advocacy of policy alternatives." (DE 4 at page 6). Kinshasa certainly qualifies as unusually difficult or dangerous circumstances.

Furthermore, my comment in the 2003 EER was not an inadmissible comment. See DE 2 at page 22 of 26 (secs. e and f). HR/PE (personnel) must remove inadmissible comments from EERs (DE 3 at page 9 of 10). If my comment in the 2003 EER was an admissible comment and was not removed by HR/PE, it cannot be used against me as a basis for a LR and a DFS.

The 2003 PSB attempted to frame my EER comment as a lack of "substantive knowledge" and more precisely as a lack of "institutional knowledge" (PE 13). The decision criteria (or substantive precepts) states "Applies knowledge of institutional

realities to policy and operational issues." (PE 67). In other words, this refers to an ability to know what can and cannot be done in various institutional contexts. While the performance evaluation process may be an "institutional reality" as the PSB says, my comment had nothing to do with my application of institutional knowledge to policy and operational issues. The performance evaluation process is simply not a policy or operational issue in this context. This goes back to the fact that my comment had nothing to do with my job performance.

For these reasons and for the reasons stated in my Grievance Submission for Final Agency Review of April 1, 2005 the State Department had nothing to offer in terms of offering a settlement agreement to me since the Department had absolutely no basis for terminating me. I was not given anything by the SA (DM 10-11). I earned my salary by doing my job well and I earned my retirement benefits through 20 years of competent and honorable service. What was taken away from me was the right to seek independent review of improper actions by the Defendants' in the case of the SA and in the previous FSGB case. The Grievance Staff (hereafter referred to as GS) and the Department in fact acted in an unconscionable way in forcing the alternative of signing the SA or facing immediate separation on me.

This reaches the issue of duress. 25 Am Jur 2d Duress and Undue Influence sec. 5 states: "Duress requires a showing that one party was prevented from exercising his or her free will by the other party's threats, wrongful conduct, coercive acts, or wrongful and oppressive conduct. The wrongful conduct may take virtually any form."

It is important to note here that when I signed the SA, the FSBG could not grant interim or proscriptive relief in cases of involuntary separation for performance (PE 98-

101). This was apparently due to a drafting error when Congress decided to remove the FSGB's authority to grant interim relief in cases of separation for cause, such as criminal or improper conduct.

The GS was well aware of this (PE 35). The GS's taking advantage of this fact is exacerbated by the length of time it gave me to consider its offer. I was not given five days to consider this offer (DM 10). It appears the offer was sent on Friday, July 1 2005 at 4:07 p.m. Washington time and arrived at 9:07 p.m. Kinshasa time. In any event, the embassy was closed that day due to a general strike called by a leading opposition political party. I did read the message on Sunday July 3rd when I went to the office to catch up on things and to prepare for our July 4th public reception.

The GS knew or should have known that for our embassies, the July 4th reception is our biggest public event of the year. The Public Diplomacy section has a leading role in organizing this reception. In any case, the GS knew July 4th was a holiday. One can draw the clear inference that the intent of Hagans' e-mail was to give me two working days to make a decision on the SA. This gave me no time to consider my options either within the Department or outside the Department, such as a request for injunctive relief. Contrast this with the provisions of 22 USC sec. 4140, which gives a Foreign Service Officer (hereafter referred to as FSO) 180 days after his or her return from a foreign posting to appeal a decision of the FSGB.

The GS's bad faith is shown by the fact that the factor determining whether I could remain in Kinshasa for the remainder of my tour and then receive retirement benefits was not whether I was performing my job competently or not, but whether I was willing to sign the SA and waive my rights to judicial review. If I signed the SA, I was a

competent FSO who could finish out my tour. If I did not sign the SA, I became a substandard FSO who must immediately be separated from the FS. I was either a competent FSO meeting the standards of my class or I was not. If I was a competent FSO, the SA is null and void since the Department had no basis to terminate me. If I was not a competent FSO, then the GS and the Department committed malpractice by allowing me to remain at post, regardless of whether or not I signed the SA.

The whole point of the SA was for me to give up my right to judicial review of any of the Department's actions either regarding the grievance leading up to the SA or the previous FSGB decision. The public policy in this case (DM 9) is for FSOs not to punished for stating opinions [see 22 USC sec. 3905(b)]; for FSOs to be given some deference while they are serving overseas, particularly in difficult, dangerous and isolated posts (see 22 USC sec. 4140); and to have the right of judicial review to challenge improper actions by the Department. 20 Am Jur 2d Courts sec. 96 states, "Generally, an agreement purporting to completely exclude adjudication by the courts is against public policy and void."

For these reasons, the SA should be declared null and void.

### THE FSGB DECISION (FSGB 2002-018)

I believe the record is clear enough that several of my EERs, particularly the EERs from China had omissions and contained falsely prejudicial statements. See my grievance submissions (AR 2-6, 9-10, 30-43), the China EERs (AR 65-107), materials regarding the Rifkin Award (AR 137-142), comments for Consul General Gene Martin (AR 156-157) and materials from Laurence Daks (AR 158-164). Furthermore, in 2000

Congress passed the China Relations Act, 22 USC secs. 6901 et. seq. In this Act, Congress states "The human rights record of the People' Republic of China is a matter of very serious concern to the Congress. 22 USC sec. 6901(11).

In my grievance submission of April 1, 2005 I discussed the provisions of 22 USC sec. 3905 (b), which gives FSOs the right to submit dissenting views (PE 27-28). This statute has apparently never been construed in any reported cases.

Even though I only became aware of this statute at some point after filing my grievance with the FSGB, I had the general principle in mind. "I also note that one person's editing can be another person's censorship. To this day, I fail to see the problems in communicating fully from the field with colleagues back in Washington." (AR 36).

The provisions of this statute have been completely ignored by the Department. See AR 14-16, 47-48 ("The rating officer also commented that Mr. Wright's drafting was occasionally inappropriate: he sometimes inserted editorial comments into routine messages, causing extra editing work in Beijing."), 91 (Unfortunately, Mr. Wright is not always able to separate analytical comment from action requests. He has on occasion inserted editorial comments in the midst of routine action cables."), 99 (On several occasions, Mr. Wright told me he planned to send a strong message to Washington on this issue. I informed Mr. Wright that any cable of this nature first must be vetted with Beijing, pointing out that if there were serious disagreements in the approach to be taken, he could send a dissent message.", and AR 103-105.

If the Court finds what is in the AR insufficient, this brings us to my discovery request. I did not "rebuke" the Board on this. I submitted a well articulated justification

for my discovery request to the FSGB (AR 456-464). I also responded to the FSGB's subsequent orders (AR 478-480, 493-494).

The Defendants' statement that "Given Plaintiff's total failure to support or argue the merits of his own case before the Board, he cannot show that the standard limitations on the number of discovery requests caused prejudice." (DM 25). This is a complete misstatement. I laid out my arguments and the evidence I had in my grievance submissions. Once my discovery request was denied, there was really nothing to add to my initial submission. This was not a failure to prosecute the grievance (DM 24-25). This was in fact the same approach taken by the GS, who submitted no additional arguments to the FSGB (AR 519).

I was clearly harmed by the denial of my discovery request. In reality, I had an impossible burden before the FSGB to prove my complaints about the various EERs, particularly the China EERs, if I could no go outside the EERs. This is clear from the Boards decision, which states "Rating and reviewing officers generally are presumed to have carried out their duty to evaluate the performance and potential of subordinates correctly and properly. To overcome this presumption, a grievant must present evidence establishing that the challenged rating or reviewing statements are materially inaccurate or unbalanced. Utilizing this standard, we conclude that Wright has not met his burden to prove by a preponderance of the evidence that the seven contested EERs are vague, lack specificity, or are false and/or falsely prejudicial." (AR 538).

The Board added, "Although Wright did not pursue his discovery request, thereby leaving his contribution to the ROP being only the material he initially provided, the Board undertook an extensive review of the material contained in the ROP seeking to

insure that Wright's position was fully considered and reviewed. Simply stated, the material (while voluminous) did not provide any evidence supporting the validity of grievant's assertions." (AR 539). Defendants elaborate on this by stating "This conclusion was unavoidable, because plaintiff provided no evidence going to the accuracy of his evaluations beyond the evaluation forms themselves." (DM 26).

I obviously disagree with these conclusions, as previously noted. The FSGB has had its cake and ate it well. It denied my discovery request, which was the only mechanism I had for submitting additional evidence outside of my initial submission and then denied my grievance for not providing additional evidence. What else was I supposed to do?

Discovery would have produced evidence in my favor in addition to what is already in the AR. See statements from Michael Spangler (AR 138-139), Gene Martin (AR 156-157) and Mark Linton (AR 245). Out of the 15 or so people of whom I requested voluntary statements only Micheal Slack responded (PE 104). With the back and forth over discovery and my transfer to Kinshasa, I apparently did not submit this statement to the FSGB and I apologize for this. Given the FSGB's decision and its ignoring the positive evidence just cited, I do not believe submission of Mr. Slack's statement would have made a difference. However, it is indicative of the type of evidence that could have been developed if the FSGB had not denied my discovery request.

## Due Process

At this point, I will not elaborate on the due process arguments, other than what is contained in the AR and PE since I believe the Court can render a decision in my favor without reaching these arguments. I will elaborate on the due process arguments if the Court so requests.

## REMEDIES

Under 22 USC sec. 4137(b) the FSGB has authority, among other things, to reinstate a grievant and to grant back pay (see also 5 USC sec. 5596) and "to take such other remedial actions as may be appropriate under procedures agreed to by the Department and the exclusive representative (if any)." The Court of course has its own broad remedial powers.

If the Court finds for me in this matter, there are two issues to consider. Regarding the settlement agreement, I request that this agreement be declared null and void and that I be reinstated as an FSO with back pay from January 1, 2006, offset by retirement benefits received.

If FSGB decision 2002-018 is reversed, the proper remedy would be retroactive promotions. The retaliation against me by the personnel system under USIA and then the State Department has been long-standing and egregious. I was punished for engaging in statutorily protected conduct relating to a country that is of critical importance to the national interest of the United States. I have been denied the chance to have a normal career and this time cannot be regained.

The FSGB improperly denied my discovery request and denied me a fair hearing. A remand would serve no purpose since all the issues were presented to the FSGB. The passage of time also vitiates the usefulness of engaging in discovery at this point. Since the FSGB denied my discovery request, it should be barred from issuing a decision against me on the grounds that I did not provide sufficient evidence in the Board's eyes.

In terms of retroactive promotion, the proper remedy would be to promote me at the maximum rate possible, including into the Senior Foreign Service, from 1989, when I was last promoted to FO-03. As an alternative, I could be compared to members of the Foreign Service who came into USIA and/or State at the same time as I did and who are at the top of their class in terms of promotion. The Court can of course also come up with its own formula for relief.

Wherefore, Plaintiff asks the Court to grant Plaintiff's motion for summary judgment and to grant Plaintiff's relief as requested.

Respectfully submitted this the 29th day of January, 2007.

Phillip E. Wright, pro se
4260 Franklin Street
China Grove, NC  28023
Tel: (704) 796-2272
E-mail: pwrightjr1@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 29th day of January, 2007 that a copy of the foregoing was hand delivered to Diane M. Sullivan in care of the offices of the United States Attorney for the District of Columbia at the Judiciary Center Building; 555 Fourth Street, N.W.; Room E4919; Washington, DC 20530.

Phillip E. Wright, pro se
4260 Franklin Street
China Grove, NC 28023
Tel: (704) 796-2272
E-mail: pwrightjr1@yahoo.com