*Phill Wright*

**Unite States Department of State**

*Bureau of Human Resources*

*Washington, D.C. 20522*

SETTLEMENT AGREEMENT

between

THE DEPARTMENT OF STATE

and

PHILLIP E. WRIGHT
AGS 2005-029

In settlement of the grievance filed by Phillip E. Wright and denominated by AGS 2005-029, the Parties agree as follows:

The Department agrees:

1. To rescind the Designation for Separation that the 2003 Performance Standards Board issued to Mr. Wright and expunge it from his records;
2. To extend Mr. Wright's Time-in-Class from December 3, 2005 until December 31, 2005.

Mr. Wright agrees:

1. To execute and submit an unconditional and irrevocable application for voluntary retirement to be effective no later than December 31, 2005;
2. That this Agreement is in full settlement of any and all claims, administrative or judicial, against the Department with the exception of any claim(s) filed under 22 U.S.C. 4132;
3. That he will not be reviewed by Department Selection Boards, including 2004 or 2005 Selection Boards;
4. That the grievance denominated as AGS 2005-029 shall stand withdrawn as being settled in full and all matters raised and documents grieved shall not form the basis of any other grievance, discrimination complaint or other complaint, or adjudicative proceeding, including any processing before the Equal Employment Opportunity Commission or any court; and that the Department has no further liability with regard to this grievance provided, however, that nothing herein is intended to preclude Mr. Wright from asserting a grievance in the event the Department does not comply with the terms of this Agreement.

1

*Phillip E. Wright*
Phillip E. Wright     July 14, 2005

*Linda S. Tagliatela*
Linda S. Tagliatela
Deputy Assistant Secretary
For Human Resources
7\29\05

Page 2 of 2

Settlement Agreement between The Department of State and
Phillip E. Wright - AGS 2005-029   dated July 2005

2



United States Department of State

*Washington, D.C.   20520*

November 25, 2002

Mr. Phillip Wright
Public Affairs Officer
AmEmbassy Kinshasa
2220 Kinshasa Pl
Washington, D.C.  20521-2220

Dear Phillip:

Per our conversation, enclosed please find the statement from the Selection Boards that explains why you were low-ranked this year.  I have kept a copy of this statement so that we may discuss its contents further, if you wish.  In any event, please advise by phone or e-mail that you have received this copy so that I may shred mine.

As I mentioned, the Boards are required to low-rank five percent of all those reviewed in a given grade and cone.  Low-ranking can be based upon difficulties with job performance, or a relative lack of demonstrated skills and competitiveness.

These deliberations are confidential and your supervisors will not be told of this action. This statement will not become part of the file HR/CDA uses in connection with the assignments process, nor will future Selection Boards be notified of the fact that you have been low-ranked this year. This statement is intended to allow you to direct your efforts to improve performance without stigmatizing you in the eyes of colleagues or superiors, or jeopardizing your eligibility for future promotions.

However, you need to take this notification seriously and address the root cause of the problems cited. Under current regulations, if you are low-ranked again within the next five years under a different rating officer, you will be automatically referred for consideration for selection out.  For this reason, I encourage you to take this counseling statement to heart and focus on addressing the problems cited by the Board.

It is important to understand the context of this action.  If the Board had felt that you were incapable of addressing your area of weakness, it would have referred you directly for consideration for selection out.  That did not happen.  Indeed, the Board saw positive elements in your performance and made note of them.  It is now counseling you on how to achieve a higher level of performance to ensure a full career in the Foreign Service.

Mr. Phillip Wright
November 25, 2002
Page Two

As you reflect on this information, you may find it helpful to contact MED's Office of
Employee Consultation Services (ECS), which is staffed with trained counselors ready
and able to assist you.  You may reach them at (202) 663-1815 (Room H-246 in SA-1,
Columbia Plaza).  ECS maintains strict confidentiality, and your consultations with them
will not become part of your personnel file or Department medical records.

If you have any other questions, or if I can be of any further assistance, please feel free to
contact me at (202) 647-4343, by fax at (202) 736-4075, or by e-mail at
AdamsGM@state.gov.

Sincerely,

Gregory M. Adams
Career Development Officer

Enclosure:
Low-Ranking Statement

UNCLASSIFIED - ADMINISTRATIVELY SENSITIVE

2002 FOREIGN SERVICE SELECTION BOARDS

BOARD G-III, PANEL B (FS-03 GENERALISTS)

LOW RANKING STATEMENT

WRIGHT, Phillip E.                                    FS-03

The Selection Boards are required by the Precepts to low
rank five percent of the officers in each class reviewed
for promotion.  Phillip E. Wright is one of the officers so
identified by the G-III-B Board.

The Board would like to commend Mr. Wright's work in the
Declassification Unit.  Mr. Wright's contribution there has
been of significant benefit to the Department of State.
His experience as a USIA officer brought an important
dimension and background to the work of the unit, and
indeed, Mr. Wright was commended by his rater for his
outstanding efforts and knowledge.

Prior to his assignment to the Declassification Unit, Mr.
Wright had an extended period of leave without pay.  From
1995 to 1997 he was assigned as a watch officer in USIA's
operation center.  Mr. Wright was last promoted in 1989 and
last served overseas in Guangzhou from 1992 to 1995.

The Board reviewed Mr. Wright's performance against that of
other public diplomacy officers - a select group within the
Foreign Service and noted that Mr. Wright's lack of recent
direct and relevant responsibilities and experience were a
significant factor in its inability to rank him on a par
with his class.

Although Mr. Wright has exhibited outstanding qualities,
particularly with regard to his intellectual abilities,
during his assignment to the Declassification Unit, he has
not had a recent opportunity to manage public diplomacy
programs abroad.  Nor has he had recent experience in a
Washington assignment that would point to his ability to

UNCLASSIFIED - ADMINISTRATIVELY SENSITIVE

UNCLASSIFIED – ADMINISTRATIVELY SENSITIVE

2002 FOREIGN SERVICE SELECTION BOARDS

BOARD G-III, PANEL B (FS-03 GENERALISTS)

LOW RANKING STATEMENT
-2-

WRIGHT, Phillip E.                                    FS-03

enhance public diplomacy policy.  This lack of experience
has affected his ability to compete successfully on a level
with his colleagues who are actively managing public
diplomacy programs and engaging on a day to day basis with
current policy issues in that field.

The Board notes, however, that Mr. Wright has recently been
assigned to a post in Africa where he will increase his job
knowledge and have the opportunity to demonstrate his
operational effectiveness and adaptability in an overseas
environment.  The Board also notes his recent success in
language training to bring his French speaking and reading
ability up to professional standards.  However, based on
the current performance file, the Board has found Mr.
Wright's performance deficient when compared to others in
his class and cone, as noted above.

UNCLASSIFIED - ADMINISTRATIVELY SENSITIVE

6



United States Department of State

*Washington, D.C.   20520*

March 19, 2004

Dear Phillip:

Per our conversation, enclosed is the statement from the Selection Boards that explains the reasons you were low-ranked this year.  I have kept a copy of this statement should you wish to call me to discuss its contents.  <u>Please</u> call or e-mail me to let me know you have received your copy so that I may shred mine.

As I mentioned, because you have already received at least one other low-ranking in the last five years, and you had different rating officers in at least two of those years, you were automatically referred to the Performance Standards Board (PSB) for possible selection out.

The PSB makes its own selection-out determinations after an independent review of your entire Official Performance File and the low ranking statement from the Selection Boards. The PSB does not hear witnesses or consider additional evidence.  (The enclosed regulations, 3 FAM 732.3, explain its procedures.)  For those selected out, the Director General will establish a separation date which gives at least thirty days notice but which cannot be more than six months from the date of the PSB decision.

The board is currently in session and will take several more weeks to complete its work. You will be notified of the outcome as soon as the Director General approves the Board's report.

Employees designated for selection out have the right to request a full evidentiary hearing before a Special Review Board, or they may pursue a grievance process – but not both. Appeals to a Special Review Board must be made within 20 calendar days after receiving notice of the PSB decision.

The deliberations of the PSB, like those of Selection Boards, are strictly confidential.  If you are not selected out, future Selection Boards will not be advised of the referral, nor will the enclosed referral statement become part of the administrative file HR/CDA uses in connection with the assignments process.

As you reflect on this information, you may find it helpful to contact MED's Office of Employee Consultation Services (ECS) which is staffed with trained counselors ready and able to assist you.  You may reach them at (202) 663-1815 (Room H-246 in SA-1, Columbia Plaza).  ECS maintains strict confidentiality, and your consultations with them will not become part of your personnel file or Department medical records.

Mr. Phillip Wright
March 19, 2004
Page Two


If you have any other questions, or if I can be of any other assistance, please feel free to contact me at (202) 647-4343, by fax at (202) 736-4075, or via e-mail at AdamsGM@state.gov.

Sincerely,

Gregory M. Adams
Career Development Officer


Enclosures:

3 FAM 732.3
Selection Board Statement

UNCLASSIFIED - ADMINISTRATIVELY SENSITIVE

2003 FOREIGN SERVICE SELECTION BOARDS

BOARD G-III, PANEL B (FS-03 GENERALISTS)

LOW RANKING STATEMENT


Wright, Phillip E.                            FS-03


The Selection Boards are required by the Precepts to low
rank five percent of the officers in each class reviewed
for promotion.  Phillip E. Wright is one of the officers so
identified by the Board G-III, Panel B.

The Board finds Mr. Wright's performance as a Public
Diplomacy officer to be superior in many ways.  For
example, he has excellent language skills, having earned a
3/3 rating in French, Chinese-Mandarin, and Macedonian.
Also, in his most recent (October 2002 - April 2003) EER
covering his performance as a Public Affairs Officer in
Kinshasa, Mr. Wright is praised by the rating officer for a
management style that "puts a premium on forward-planning".
The reviewer lauds his Internet and organizational skills.

However, in reviewing Mr. Wright's performance against that
of the other FS-03 officers in the Public Diplomacy cone of
Board G-III, Panel B, the Board noted that a key aspect of
Mr. Wright's work was less than competitive. In Mr.
Wright's most recent EER (October 2002 - April 2003), he
used his employee statement not to express his views on his
performance, but instead to describe his "utmost disrespect
for this contemptible and corrupt travesty that dares pass
itself off as a personnel system". The Board considered
this a most unfortunate statement given Mr. Wright's
excellent performance in Kinshasa, which had followed a
successful three-year stint as a Declassification Officer.

Under the Substantive Knowledge Section of the Core
Precepts, subheading Institutional Knowledge, the
successful mid-level officer "applies knowledge of
institutional realities to policy and operational issues".
The performance evaluation process is an "institutional
reality" for Foreign Service Officers, and the Board

UNCLASSIFIED - ADMINISTRATIVELY SENSITIVE

2003 FOREIGN SERVICE SELECTION BOARDS

BOARD G-III, PANEL B (FS-03 GENERALISTS)

LOW RANKING STATEMENT

- 2 -

Wright, Phillip E.                                    FS-03

believes this process must be respected whether or not one
agrees with it.

The Board believes Mr. Wright's statement also calls into
question his interpersonal skills, a problem seen in
earlier evaluations going back to 1993.  Under the
Interpersonal Section of the Core Precepts, subheading
Social Perceptiveness, the successful mid-level officer
"understands and deals effectively with relationships and
aspirations; anticipates how others will react; frames own
responses to achieve results".

The Board offers its observations in the spirit of helping
Mr. Wright achieve the performance standard of his class.

UNCLASSIFIED - ADMINISTRATIVELY SENSITIVE

10



**United States Department of State**

*Director General of the Foreign Service
and Director of Human Resources*

*Washington, D.C. 20520*

May 6, 2004

## EYES ONLY – PERSONNEL SENSITIVE

Mr. Phillip E. Wright
Department Of State
2220 Kinshasa Place
Washington, DC 20521-2220

Dear Mr. Wright:

This will confirm the notification you received by telephone from the Office of Performance Evaluation that the Performance Standards Board (PSB) to which you were referred has designated you for separation from the Foreign Service. I am enclosing a copy of the Precepts under which the PSB operated and a copy of its determination concerning you. In accordance with 3 FAM 733, I have set August 31, 2004, as the date of your separation.

I know this news brings serious disappointment and confronts you with many important decisions. My colleagues in the Bureau of Human Resources are committed to assisting you in any way possible.

You will shortly receive a letter from your Counseling and Assignments Officer that will provide detailed information to help in your planning. The letter will discuss, for example, the possibility of a limited postponement of your mandatory separation date to enable you to take the Retirement Seminar and Job Search Program. It will also explain the option of retiring prior to the mandatory separation date as well as other matters.

## EYES ONLY – PERSONNEL SENSITIVE

**EYES ONLY – PERSONNEL SENSITIVE**

Let me close assuring you of my personal understanding at this difficult time. You have served our nation faithfully through many years and, on behalf of the entire Department of State, I want to express sincere appreciation. You have my warm good wishes in whatever activities you may undertake in the future.

Sincerely,

W. Robert Pearson

Enclosures:
    PSB Precepts
    Performance Standards Board statement

**EYES ONLY – PERSONNEL SENSITIVE**

12

UNCLASS~ED – ADMINISTRATIVELY S~SITIVE

## 2003 PERFORMANCE STANDARDS BOARD

## DESIGNATION FOR SEPARATION

WRIGHT, Phillip E.                                                    FS-03

The Performance Standards Board (PSB) designates Phillip E. Wright for
selection out of the Foreign Service for failure to maintain the standard of
performance required of his class.

The PSB finds that Mr. Wright's weakness in interpersonal skills, as well as
in the area of substantive knowledge, as it applies to Institutional
Knowledge, have made him less competitive against the performances of
other FS-03 officers in the Public Diplomacy cone. In Mr. Wright's most
recent EER (October 2002 – April 2003), he used his employee statement
not to express his views on his performance, but instead to describe his
"utmost disrespect for this contemptible and corrupt travesty that dares pass
itself off as a personnel system." The PSB considers this a most unfortunate
(and unexplained) statement given Mr. Wright's excellent performance in
Kinshasa, which had followed a successful three-year stint as a
Declassification Officer. Under the Substantive Knowledge Section of the
Core Precepts, subheading Institutional Knowledge, the successful mid-level
officer "applies knowledge of institutional realities to policy and operation
issues." The performance evaluation process is an "institutional reality" for
Foreign Service Officers, and should be respected whether or not one agrees
with it. Such a statement also calls into question Mr. Wright's interpersonal
skills, a problem seen in earlier evaluations going back to 1993. Under the
Interpersonal Section of the Core Precepts, subheading Social
Perceptiveness, the successful mid-level officer "understands and deals
effectively with relationships and aspirations; anticipates how others will
react; frames own responses to achieve results." The PSB further notes that
the review panel advised Mr. Wright to reconsider his statement, saying that
the "Panel chairperson counseled rated employee on possible revisions to
employee statement." It is particularly unfortunate that Mr. Wright appears
to have ignored this counsel.

The Kinshasa rating assumes particular importance in the PSB evaluation of
Mr. Wright's performance because his last promotion was in 1989 and his
last overseas assignment was in Guangzhou from 1992 to 1995. From 1995

UNCLASS___ED – ADMINISTRATIVELY S___SITIVE

## 2003 PERFORMANCE STANDARDS BOARD

## DESIGNATION FOR SEPARATION

WRIGHT, Phillip E.                                                     FS-03

-2-

to 1997 he was assigned as a watch officer in USIA's operation center. After an extended period of leave without pay he served for three years in the Declassification Center (02/99-04/02). The PSB reviewed Mr. Wright's performance against that of other public diplomacy officers – a select group within the Foreign Service. A consideration of Mr. Wright's relative lack of recent experience and responsibilities directly relevant to public diplomacy caused the PSB to closely examine his performance evaluation from the first six months in Kinshasa, with a view to comparing his performance to that of his colleagues who are actively managing public diplomacy programs and engaging on a day to day basis with current policy issues in that field.

The Kinshasa evaluation was not the first time that Mr. Wright has had problems and disagreements with the rating system. In general, his comments over the last five years are not informative, consisting of little more than the statement that he likes his work and appreciates his rating and reviewing officers. The PSB is unable to form a picture of Mr. Wright's view of his career path and aspirations from most of his statements. As stated in the instructions for this section, the material provides a helpful picture of the career interests and goals of the rated employee. In addition the instructions add that the rated employee must comment on his or her major achievements over the rating period. At times, Mr. Wright does not do this in a specific way. For example in the rating period 4/15/01-4/15/02, Mr. Wright says that he believes that "the current system of declassification is a good one." He adds that he "will miss my efforts in this regard." Finally, he says that he is looking forward to his next assignment. The PSB must conclude that Mr. Wright has made a minimum effort to satisfy the requirements of the performance evaluation process. Mr. Wright's indifference to the process is further shown in the rating period 4/16/00-4/15/01. At that time the review panel returned his performance evaluation to him, citing numerous problems. Mr. Wright's response was that he was unable to make the changes and suggested forwarding the evaluation to

UNCLASSIFIED – ADMINISTRATIVELY SENSITIVE

UNCLASS~~ED~~ – ADMINISTRATIVELY S~~SITIVE~~

## 2003 PERFORMANCE STANDARDS BOARD

## DESIGNATION FOR SEPARATION

WRIGHT, Phillip E.                                                                            FS-03

-3-

HR/PE without suggested changes and panel approval. While he indeed
may not have been able to make the changes himself, as the issues involved
the rating officer, the PSB regrets that a more accurate and informative
performance evaluation did not result.

The PSB notes that a relative weakness in interpersonal skills, as well as
substantive knowledge as related to the performance evaluation process,
does not meet Foreign Service promotion standards related to Institutional
Knowledge, as well as Social Perceptiveness.

The PSB Precepts state that the PSB shall weigh heavily documented
shortcomings in one or more skills, abilities or knowledge areas that are
pertinent to the occupational category of the member reviewed. They
further state that failure to overcome these shortcomings after they have
been brought to the attention of the member shall also be taken into account
by the PSB. The PSB notes that Mr. Wright has had problems with his
interpersonal skills seen in earlier evaluations going back to 1993. As
mentioned above, his problems with the performance evaluation process are
also long-standing.

Mr. Wright, a public diplomacy officer, was last promoted in 1989. In
reviewing his performance against that of members of the FS-03 Class,
however, certain aspects of his performance are strong. He has excellent
language skills, having earned a 3/3 rating in French, Chinese-Mandarin, and
Macedonian. Also, in his most recent (October 2002 – April 2003) EER
covering his performance in Kinshasa, Mr. Wright is praised by the rating
officer for a management style that "puts a premium on forward-planning."
The reviewer lauds his Internet and organizational skills. Mr. Wright's
work in the Declassification Unit is also commendable. His contribution
there has been of significant benefit to the Department of State. His
experience as a USIA officer brought an important dimension and

UNCLASSIFIED – ADMINISTRATIVELY SENSITIVE

## 2003 PERFORMANCE STANDARDS BOARD

## DESIGNATION FOR SEPARATION

WRIGHT, Phillip E.                                              FS-03

-4-

background to the work of the unit, and indeed, Mr. Wright was commended by his rater for his outstanding efforts and knowledge.  Even so, in light of the record, much of which has been recounted above, the PSB finds that Mr. Phillip E. Wright has failed to meet the standards of performance while serving in the present class.



**United States Department of State**

*Washington, D.C.   20520*

June 2, 2004

Dear Phillip,

As the Director General indicated in his recent letter to you confirming the decision of the Performance Standards Board (PSB) designating you for mandatory separation, you have many decisions to make in the coming weeks.  This letter contains information which you may find useful in making these choices.  I stand ready to assist you with any questions that you may have about the process.  You can reach me by unclassified e-mail at AdamsGM@state.gov, by phone at 202-647-4343, by telegram slugged for HR/CDA/ML – Gregory M. Adams, or by fax at 202-736-4075.

Separation Date

The Director General has set the date of your mandatory separation as **August 31, 2004**, under the authority of 3 FAM 733 (copy enclosed).

The Department's Career Transition Center offers two programs dealing with alternate career planning: the Retirement Planning Workshop (RV101) and the Job Search Program (RV102).  If you are interested in receiving more information about them, please contact Mr. Ray Leki at LekiRS@state.gov, by phone at 703-302-7266 or 7407, or by mail at:

> Ray Leki
> M/FSI/CTC, SA-42
> U.S. Department of State
> Washington DC  22204-1500

The Director General will grant you a limited postponement of your separation date, in accordance with 3 FAM 734.1 (copy enclosed), if you wish to take the next available Retirement Planning Workshop and Job Search Program while still in a pay status.  (You may also participate in the programs in non-pay status after separation, provided you indicate your intention to do so **prior** to leaving the Foreign Service.)

Should you decide to take the Retirement Planning Workshop from September 28 – October 1, 2004, and the Job

Search Program from October 4 - November 30, 2004, the
Department would postpone the date of your separation to
November 30, 2004.  To exercise this option, please notify
me in writing by **June 21, 2004** of your desire to participate
in these two programs.

You may, of course, elect to resign before the date of
mandatory separation.  In that case, your personnel action
would indicate resignation.  If you wish to resign before
the separation date set by the Director General, please
notify me as soon as you have made your decision as there is
some paperwork that must be completed.

Separation Benefits

You are entitled to separation benefits in accordance
with Section 609 of the Foreign Service Act if you separate
involuntarily.  A calculation of these benefits, from the
records of the Office of Retirement, will be forwarded to
you as soon as possible.  The calculation will be based on a
separation date of August 31, 2004.  This estimate will not
include such factors as sick leave and applicable cost of
living increases.

The separation benefits for an involuntary separation
are different from those for a voluntary resignation.  For
details on these differences, you may wish to contact HR/RET
in Room H-620 SA-1 (Columbia Plaza), telephone 202-261-8980,
or fax 202-261-8988.

Contesting the Separation

An employee designated for separation may appeal the
designation to a Special Review Board (SRB).  Should you
elect to appeal, you must inform me and HR/PE (SA-1, Room H-
720, 202-663-2060, fax 202-663-2040) in writing within 20
calendar days of receipt of this letter.  A copy of the
regulation (3 FAM 732.2c) governing the right of appeal, and
describing the organization and operations of the SRB, is
enclosed, as is a copy of the precepts for this Board.  The
SRB appeal process is often more rapid than a grievance, but
there is no appeal from the decision of the SRB.  In lieu of
an appeal, you may avail yourself of such remedies as may be
appropriate through the grievance process in accordance with
3 FAM 4400 (copy enclosed).

You should be aware that you are precluded by
regulation (3 FAM 4428a) from pursuing more than one avenue
in seeking to overturn the PSB's decision.  You may file an
appeal or a grievance, but not both.  In other words, if you
appeal the PSB's determination to the Special Review Board,

you may not subsequently seek to overturn the PSB decision by filing a grievance, or vice-versa.

In considering your options, you may find it useful to contact the Grievance Staff (HR/G, SA-1 Room H-520, 202-261-8110) and/or the Office of Performance Evaluation (HR/PE). The American Foreign Service Association (AFSA) may also be of assistance to you. AFSA's counselors may be reached at 202-647-8160, fax 202-647-0265, or by means of a protected cable channel, the "ERG Channel".

Separation Travel and Assignment Options

If I have not heard from you by June 21, I will begin the process of separation so that you will have your travel orders, if necessary, well in advance of your last day of employment, currently August 31. Unless you advise me otherwise, I will use the latest OF-126 "Residency and Dependency Report" on file in HR/CDA to determine your separation address and names of your Eligible Family Members. Separation travel entitles you to: (1) three days' per diem for consultations in D.C. (if your duty station is outside the D.C. area), and (2) the shipment of your air freight and household effects to your separation address. Eligible Family Members are only authorized to travel directly to an employee's separation address; they are not authorized stopovers in D.C. for consultations.

If you file a grievance and request a stay of action to separate you while your case is pending before the Department, interim relief will be granted, and you will be able to remain on the rolls of the Department of State past your current separation date. Since you are not eligible for transfer in the next 12 months, you need do nothing more than advise me that interim relief has been approved. While on interim relief, you will not be able to bid for or receive an onward assignment. If remaining where you are is not possible, approximately 30 days before your transfer date, I will help you find meaningful work in the D.C. area until interim relief expires.

Should you need travel orders to the D.C. area because you are close to your transfer date, separation travel orders will be processed for you. You may choose to interrupt travel to your separation address in Washington, D.C., and remain here in pay status until interim relief expires or your grievance is concluded. If you select this option, you will receive three days' per diem for consultations, but separation orders do not authorize transfer allowances, home leave, or D.C. locality pay. You may ship your air freight (UAB) to D.C. with you and it may

then be shipped to your separation address.  Your household
effects (HHE) may be placed in storage at government expense
for a maximum of three months with the possibility of an
additional three months being authorized.  Alternatively,
you may ship your HHE to D.C.; however if you do so the
Government will not pay to ship the HHE to your separation
address should that be necessary.  You may also ship your
HHE directly to your separation address at Government
expense using your separation orders.

As noted above, your Eligible Family Members are only
authorized travel at Government expense directly to your
separation address; they are not authorized to interrupt
travel in D.C.  Thus, if they elect to stop in D.C. for the
duration of your grievance, and then need onward travel to
your separation address, payment for the travel will be on a
cost-constructive basis, and you will incur some personal
expense.

I hope the above information will be helpful to you in
this difficult time.  Please feel free to contact me if you
require any further information.

Sincerely,

Gregory M. Adams, CDO
HR/CDA/ML

Enclosures:

3 FAM 730
3 FAM 4400
SRB Precepts



**United States Department of State**

*Director General of the Foreign Service*
*and Director of Human Resources*

*Washington, D.C. 20520*

May 27, 2004

Dear Aubrey:

   I have looked into the case of your PAO, Phillip Wright, which you raised in your May 3 letter, and hope that this reply will be helpful.

   By regulation, a separation date based on designation by a Performance Standards Board must be established within six months from the decision of final administrative review. In Mr. Wright's case, that decision was taken on April 5, 2004, and I have already written to notify him formally that his separation date has been set for August 31, 2004. I do, however, have the authority, in the public interest and only in special circumstances, to extend temporarily, but only up to one year, the career appointment of a career member of the Service facing mandatory separation. Based on the unique difficulty of staffing posts like Kinshasa, I have accordingly directed that Mr. Wright's separation date be set for April 5, 2005. He can expect to hear from us shortly.

   This will bring Mr. Wright's departure date closer to his scheduled August 2005 transfer, with less disruption to your post.

                                   Sincerely,

                                   W. Robert Pearson

The Honorable Aubrey Hooks,
        United States Ambassador,
              Kinshasa.

21



**United States Department of State**

*Bureau of Human Resources*

*Washington, D.C.  20522*

JUL  6  2004

**EYES ONLY – PERSONNEL SENSITIVE**

Mr. Phillip E. Wright
Department of State
2220 Kinshasa Place
Washington, D.C.  20521-2220

Dear Mr. Wright:

The Performance Standards Board (PSB) to which you were referred designated you for separation from the Foreign Service effective October 5, 2004.   However, because of the needs of the Service, the Director General has postponed your separation date until April 5, 2005.

You will shortly receive a letter from your Counseling and Assignments Officer that will provide detailed information to help in your planning.  The letter will discuss, for example, the possibility of a limited postponement of your mandatory separation date to enable you to take the Retirement Seminar and Job Search Program.  It will also explain the option of retiring prior to the mandatory separation date as well as other matters.

Sincerely,

Robert B. Nolan

Robert B. Nolan
Director
Office of Performance Evaluation

**EYES ONLY – PERSONNEL SENSITIVE**

TO:        DGP/PER (name)
FROM:      Phillip E. Wright FO-03
DATE:      April 1, 2005
RE:        Grievance Submission for Final Agency Review


In accordance with 3 FAM 4434.1, I hereby file the following grievance. This grievance falls with the definition of a grievance provided in 3 FAM 4412(c)(1) as it concerns "Separation of a member allegedly contrary to law or regulation or predicated upon alleged inaccuracy, omission, error or falsely prejudicial character of information in any part of the official personnel record of the member;" This grievance also falls under the definition of 22 USC sec. 4131(a)(1)(B) "other alleged violation, misinterpretation, or misapplication of applicable laws, regulations, or published policy affecting the terms and conditions of the employment or career status of the member;" This grievance may also fall under the provisions of 3 FAM 4412(c)(5), 3 FAM 4412(c)(6), and 3 FAM 4412(c)(9).

In this grievance I am grieving the low ranking from the 2002 and 2003 Foreign Service Selection Boards, Board G-III, Panel B (FS-03 Generalists) and the Designation for Separation (DFS) from the 2003 Performance Standards Board. Pursuant to 3 FAM 4431(b)(2), I request that I be given prescriptive relief during the deliberation of this grievance. My selection out date has been set as April 5, 2005. I also request that AFSA be copied on any documents or communications related to this grievance.

This grievance turns primarily on questions of law rather than on questions of fact. For the sake of convenience, and I hope clarity, I will combine my legal arguments and citations of authority with the detailed statements of the bases for my grievance.


The 2002 Low Ranking

This low ranking is difficult to understand. The Selection Board (SB) begins by commending me on my performance by stating "The Board would like to commend Mr. Wright's work in the Declassification Unit. Mr. Wright's contribution there has been of significant benefit to the Department of State. His experience as a USIA officer brought an important dimension and background to the work of the unit, and indeed, Mr. Wright was commended by his rater for his outstanding efforts and knowledge."

Despite this, the SB goes on to low rank me based on "lack of recent direct and relevant responsibilities and experience" adding "Although Mr. Wright has exhibited outstanding qualities, particularly with regard to his intellectual abilities, during his assignment to the Declassification Unit, he has not had a recent opportunity to manage public diplomacy programs abroad. Nor has he had recent experience in a Washington assignment that would point to his ability to enhance public diplomacy policy. This lack of experience has affected his ability to compete successfully on a level with his colleagues who are

actively managing public diplomacy programs and engaging on a day to day basis with current policy issues in that field."

There are several problems, I would argue fatal problems, with low ranking me on this basis. Low rankings and designations for separation are to be based on <u>performance</u>. "Selection Board precepts require that inadequacies that lead to low ranking be documented by examples of <u>performance</u>. ... In both cases the boards are instructed to base their decisions on findings concerning inadequacies and shortcomings in <u>performance</u>." FSGB 99-013, p. 13 (emphasis added). See also 22 USC sec. 4008. In my case, I was performing a legitimate job and performing it well, as the SB's statement itself admits. In this regard, I was not low-ranked for at least one of the other years I worked in the Declassification Unit (DU). Also, under USIA several active FSOs were assigned to the DU at any given time. As long as I was performing my assigned job well, the SB cannot use the nature of the job as a basis to low rank me.

Even though I performed my jobs at the DU and the Operations Center very well, the 2002 SB low ranked me on the basis that these jobs were in effect not as good as overseas PD jobs or other Washington jobs. It is not the function of a SB to pick and choose or judge the relative merits of various jobs that FSOs do. The SB needs to focus on the performance in the particular job. A bad performance in any job can be grounds for a low ranking or a separation. However, as long as the performance in the job is acceptable, the fact that the job may not be as important or high-profile as another job should not be grounds for a low ranking.

I was at the DU on over-complement status. The fact is that I was assigned to the Operations Center and later the DU in retaliation for activities related to my assignment in China. Because I on occasion dissented from some of our policy decisions in China, I was blacklisted and otherwise punished by USIA and later by State. As a result, I was not able to get the kinds of jobs that the SB states would have pointed to my "ability to enhance public diplomacy policy." These issues were raised in a previous grievance, AGS 2001-036 and FSGB 2002-018. Rather than repeat the details here, I incorporate the allegations of that grievance herein by reference.

Unfortunately, I was not allowed to develop evidence of this blacklisting and other retaliatory activity in the previous grievance. Even so, the length of time I was in over-complement status is prima facie evidence of irregularities in the personnel system. I was in over-complement status in the DU for almost 3 ½ years or 40+ months, from the beginning of 1999 until May 2002.

The FSGB has dealt with this issue on at least one occasion. In case 90-13, the FSGB stated, "Nevertheless, it is difficult to accept the argument that an eighteen-month period on overcomplement without a regular assignment, is not out of the ordinary. ... But the circumstantial evidence provided by the length of time before grievant was given a new regular assignment and the fact that the assignment had to be made by forced placement strongly suggests the possibility that some extraneous factors were at play – that some office or corridor scuttlebutt was making it difficult for grievant to obtain a new

position." p.24. In my case, I was in over-complement status more than twice as long as
the grievant in the cited case. And unlike the grievant in that case, there is nothing in my
record to militate against the presumption of reprisal – no curtailment from post or letter
of reprimand. I did the best I could with the very limited options that were available to
me. I cannot be low ranked by the SB based on its feeling that the jobs I did were not at
the same level as those of other PD officers, particularly given the context I have just
described.

For part of this period, I was designated for separation and engaged in the grievance of
that decision which also froze me in place at the DU. In that regard, I am being punished
by the SB for pursuing my legal remedies in violation of 3 FAM 4412(c)(6).

The 2002 SB also erred in going outside its period of review. In its last paragraph, the
SB states "The Board notes, however, that Mr. Wright has recently been assigned to a
post in Africa where he will increase his job knowledge and have the opportunity to
demonstrate his operational effectiveness and adaptability in an overseas environment.
The Board also notes his recent success in language training to bring his French speaking
and reading ability up to professional standards." The French language training took
place from the end of May 2002 until early August 2002, well after the end of the rating
period subject to review by the SB. The SB actually used my success in finally getting an
overseas assignment and my success in language training against me. It is clear that the
SB used my language training and speculation about my future assignment to further  ·
denigrate the nature of my work in the Operations Center and the DU. It is quite possible
that this relative distinction may have triggered the 2002 SB's decision to low rank me.

As the FSGB has noted, "The pressure of the five per cent requirement may cause boards
to misapply their precepts for the sake of meeting that quota ...", FSGB 99-013, p.12.
And "In performing its review of the files, a selection board is confronted with a very
difficult task in identifying those individuals whose performance warrants low ranking.
At times it appears that the slightest perceived fault in the performance of an employee
by a selection board is the difference between being mid-ranked or low-ranked.
Escalating the difficulty faced by each selection board identifying individuals for low-
ranking is the requirement set by Congress that each board low-rank 5% of the
individuals whose files it reviews." FSGB 2000-054, pp. 6-7 (emphasis added).

For the above reasons, the 2002 low ranking should be expunged from my personnel file.


The 2003 Low Ranking and Designation for Separation

I will discuss these in tandem since the DFS relies heavily on and essentially repeats the
2003 low ranking. The DFS also incorporates large elements of the 2002 low ranking
and is subject to the same fatal flaws as that low ranking.

There are two fatal flaws in the 2003 low ranking and DFS. First, my statement in the
October 2002-April 2003 EER concerning the Department's personnel system does not

relate in any way to my job performance. Neither of the 2003 boards makes any sort of connection between my statement and my job performance. Independently of this, my statement in my EER is protected speech under a variety of doctrines and it cannot be used as either a basis for a low ranking or for a DFS.

Under the discussion of the 2002 low ranking, I pointed out that low rankings and DFSs are based on performance. This is reinforced by the Precepts for the Performance Standards Boards. Precept 3(d) states that the duty of a PSB is "to examine the <u>performance</u> record of the member under review and related materials, in comparison with other records reviewed, and to designate for selection-out those whose <u>performance</u> (judged in terms of assigned duties, goals and work requirements) ... indicate that they should be separated from the Service." (emphasis added).

Proof of performance depends primarily on what the Rating Officer says. "Ordinarily, a designation of selection-out will not be based solely on the reports of a single rating officer. In the vast majority of cases, the Board should be able to satisfy itself that some or all of the critical shortcomings have been reflected in the reports of more than one rating officer. Where a Board's decision rests predominately on the reports of one rating officer, it will assure itself as fully as feasible that there is no indication of unfair negative bias by the rating officer." Precepts for the Performance Standards Boards, paragraph 3(g).

In regard to performance, the 2003 low ranking states "The Board finds Mr. Wright's performance as a Public Diplomacy officer to be superior in many ways." This statement is backed up by reference to my language skills and to comments by the rating officer in the 2003 evaluation. The SB then goes on to low rank me based on my statement about the Department's personnel system. However, there is no connection made at all between this statement and my actual job performance. As the FSGB said in reference to an area for improvement comment, "Without indications in the EER of such linkage ["how an AFI comment relates to an identified shortcoming in job <u>performance</u>"] the assumption that an AFI comment is evidence of an inadequacy of <u>performance</u> is weakened; it is further weakened if there is contrary evidence in the rest of the EER." FSGB 99-013, p. 13 (emphasis added).

The SB states "The performance evaluation process is an 'institutional reality' for Foreign Service Officers, and the Board believes this process must be respected whether or not one agrees with it." I respect the personnel evaluation process by doing my job as I am supposed to do it to the best of my ability. I do not have to respect the personnel evaluation process in the way that it is applied and I am free to express my opinion to that effect, as long as my opinion does not affect my actual job performance. This is analogous to the First Amendment distinction between speech and action. The 2003 SB did not come up with a single instance of my opinion affecting my job performance in any way, shape or form.

The SB also cited my interpersonal skills, but again without giving any specific examples of this alleged deficiency negatively affecting my job performance in any way. For these reasons, the 2003 low ranking should be dismissed.

Before discussing the DFS it is worth noting that "a recommendation to separate an employee is held to a higher standard that the criteria used by a selection board to low rank an employee or refer him/her to a performance standards board ... they simply are not the same in terms of severity of outcome." FSGB 99-013, p. 13 quoting FSGB 96-13.

As noted, the DFS relies heavily on and essentially restates the 2003 low ranking and therefore suffers the same flaws as the low ranking. The PSB is obviously offended by my statement concerning the personnel system but again makes no connection between this statement and my actual job performance. In fact, the PSB notes my "excellent performance in Kinshasa, which had followed a successful three-year stint as a Declassification Officer." The PSB also states that "certain aspects of his performance are strong" drawing on examples cited in the 2003 low ranking and adds, "Mr. Wright's work in the Declassification Unit is also commendable. His contribution there has been of significant benefit to the Department of State. His experience as a USIA officer brought an important dimension and background to the work of this unit, and indeed, Mr. Wright was commended by his rater for his outstanding efforts and knowledge."

The PSB states on page 3 of the DFS "The PSB notes that a relative weakness in interpersonal skills, as well as substantive knowledge as related to the performance evaluation process, does not meet Foreign Service promotion standards related to Institutional Knowledge, as well as Social Perceptiveness." Besides being a complete misreading of the institutional knowledge precept in particular, the PSB again makes no connection whatsoever between these alleged weaknesses and my actual job performance. Making a statement the PSB does not like is not evidence of a lack of substantive knowledge. And telling people things they do not necessarily want to hear or that they disagree with is not evidence of lack of interpersonal skills.

Besides the general First Amendment right any of us has to express an opinion, FSOs have very specific protection in terms of expressing opinions. 22 USC sec. 3905 (b) states in relevant part "The Secretary shall administer the provisions of this chapter and shall prescribe such regulations as may be necessary to ensure that members of the Service ...(3) are free to submit to officials of the Service and the Department any report, evaluation, or recommendation, including the right to submit such report, evaluation, or recommendation through a separate dissent channel, whether or not the views expressed therein are in accord with approved policy, unless the report, evaluation, or recommendation was submitted with the knowledge that it was false or with willful disregard for its truth or falsity ..."

Just to be clear, the dissent channel is only one option so this section can read as follows: "The Secretary shall administer the provisions of this chapter and shall prescribe such regulations as may be necessary to ensure that members of the Service ...(3) are free to submit to officials of the Service and the Department any report, evaluation, or

recommendation, ... whether or not the views expressed therein are in accord with approved policy, unless the report, evaluation, or recommendation was submitted with the knowledge that it was false or with willful disregard for its truth or falsity ..."

My statement and rated officer comments in general clearly fall under the heading of "report, evaluation, or recommendation." Congress clearly recognized the value of open communication and dissent in the Foreign Service. Any rational organization would ask what would lead an officer who has put in almost two decades of honorable service under often difficult conditions and circumstances to make a statement like I did and take steps to identify and correct the problems leading to such a statement, rather than seek to drive that officer from the Foreign Service. As a Federal court said, "The Plaintiff has the right to voice his objections to these policies and not be discharged for refusing to apply them." Olsen v. Albright, 990 F. Supp 31, 33 (1997). (This is the "visa profile" case.) My situation is even clearer because my voicing my objection to the way the personnel system is applied was not in any way connected to my performance on the job.

The PSB devotes a substantial amount of it s decision to my "problems and disagreements with the rating system" but again there is no connection made between this and my actual job performance. The PSB states on page 2 "In general, his comments over the last five years are not informative, consisting of little more than the statement that he likes his work and appreciates his rating and reviewing officers. The PSB is unable to form a picture of Mr. Wright's view of his career path and aspirations from most of his statements." This is a far cry from finding major, well-documented deficiencies in my job performance. I disagree with the PSB's conclusion that I "made a minimum effort to satisfy the requirements of the performance evaluation process." I was criticized by previous boards for saying too much while attempting to defend myself in my China EERs. I feel like I'm damned if I do, damned if I don't.

The PSB simply goes too far, even in the context of the DFS, when it states "Mr. Wright's indifference to the process is further shown in the rating period 4/16/00-4/15/01." I do not recall the specific problems with this EER, but as the PSB itself notes "While he indeed may not have been able to make the changes himself, as the issues involved the rating officer, the PSB regrets that a more accurate and informative performance evaluation did not result." My understanding is that when the problem lies with the rating officer, the rating officer should correct the problem. It puts the rated officer in a very delicate and unfair position to ask the rating officer to correct errors when this should be coming from someone in the personnel system. It is unfair and impermissible for the PSB to punish me in this way for something that was not my fault and that I could not correct.

Finally, the PSB refers in two places to the fact that I was last promoted in 1989 (p.1 and p. 3). Paragraph 3(e) of the Precepts for the Performance Standards Boards states "The time remaining before a member arrives at what may be mandatory retirement either for age or time-in-class is not relevant to a PSB's assessment of a member." The PSB improperly took the length of my time-in-class into account in reaching its decision to designate me for separation. As noted in the precepts, length of time-in-class is not

relevant to a DFS. These are different things. A DFS has to be based on well-documented and specific deficiencies in job performance. Time-in-class is a Congressionally-mandated requirement giving FSOs a specific period of time in which to be promoted or to be retired. See 22 USC sec. 4007.

The distinction is one between relative performance (TIC) and substandard performance (separation). See Colm v. Kissinger, 406 F. Supp. 1250, 1252 (1975). As the court stated in Colm "The fact, then, that an officer is selected out on time-in-class grounds does not mean that his performance has been unsatisfactory, nor even that it has not been above average. Rather, it reflects the fact that during the years in his class other officers were deemed to have had better performance records."p. 1252. If I understand correctly, my TIC as an FO-03 will expire around April 2006. In any case my TIC is irrelevant to the DFS. The PSB erred in mixing the two by referring twice to the length of time since my last promotion.

For all of the above reasons, both the 2003 low ranking and the 2003 DFS should be expunged from my personnel file.


Douglas Factors Analysis

The Douglas Factors can also provide a useful tool for analysis in my case. See 03 State 54454. Obviously, this is not a misconduct case, but some of the Douglas Factors are relevant to a separation for performance case. It is ironic that someone who commits a serious offense or someone who claims victimhood may have more legal protection than a conscientious FSO, [see for example Salleh v. Christopher, 876 F. Supp. 297 (D.D.C. 1995), but life isn't always fair.

In any case, relevant Douglas Factors in my situation are past disciplinary record, past work record, and mitigating circumstances such as unusual job tensions. Past disciplinary record is easy – there is none. No misconduct, no security violations – nothing.

In terms of work record, I have been an FSO for almost twenty years. I have served conscientiously and to the best of my ability in a series of difficult overseas posts, all of them hardship or greater hardship posts. In Kinshasa I am doing a double-stretch assignment (Kinshasa PAO is an FO-01 position) and I am doing it well. I have reconstructed a solid PD program in a post that did not have a PAO for two years preceding my arrival. I have received two very positive EERs during my tour in Kinshasa and I expect to receive another positive EER in the current rating period. I have the full support and understanding of the current Ambassador and DCM as well as the former Ambassador and DCM. I also have the support and confidence of other colleagues, including DAS for African Affairs Don Yamamoto.

Kinshasa is one of our most difficult posts. I have seen friends and colleagues suffer from malaria, cerebral malaria, and typhoid fever in addition to the "normal" diseases we

8

have to contend with here. And now we have the Marburg virus to worry about. I have seen people who cannot take the mental and physical stress here and who have had to curtail. The crime threat is high and the country always seems to be on the verge of a political explosion. From March 28 to June 11 of last year, we endured two coup attempts and a major riot and looting. From May 26-28 of last year, I and several other people from the Embassy were trapped in Bukavu for approximately 38 hours where we were subjected to sustained bouts of automatic weapons and mortar fire. As the senior officer on the ground, I was instrumental in keeping the Embassy informed of our situation, in keeping the group calm, and in getting us out safely. Since June 11 we have had a couple of general strikes and protests that seem almost normal in comparison. The potential for further unrest is high, particularly if elections are postponed, which they will be. My colleagues, including the Ambassador, the DCM and DAS Yamamoto know that I can deal with whatever arises.

In terms of job tensions, there were a series of factors that converged and caused me to write what I did in the 2003 evaluation. First, I was hit with the 2002 low ranking. I thought this low ranking was very unfair and unjustified, as I have discussed above. I was also in the process of losing my partial appeal to the FSGB in my previous grievance. I will not go into detail about my feelings about this other than to say I do not believe justice was done   I was severely disappointed to see that the elements of the Department that should be doing justice and upholding the highest standards of the Foreign Service were instead more interested in protecting the bureaucracy.

Finally, on April 8 2003 I received an e-mail from my CDO entitled "EER Advice" that he sent to his clients. While this was a commendable effort on his part to let us know how the evaluation system really works, for me this e-mail served to solidify just how dysfunctional our personnel system really is. All of these factors put me to the point where I had to express my frustration with the personnel system and the EER was the only place I could do this.

Extension and Estoppel

The DG extended my separation date to April 5, 2005 (Pearson-Hooks letter of May 27 2004 and Nolan-Wright letter of July 6 2004). This was based on "the unique difficulty of staffing posts like Kinshasa" (Pearson) and "the needs of the Service" (Nolan). This extension raises an estoppel argument. Either I am meeting the standards of my class or I am not. The Department is taking contradictory positions. On the one hand, the personnel system through the PSB is saying that I am an unfit officer. On the other hand, the personnel system through the DG is maximizing the time I can spend at post. As noted, I am doing a double-stretch assignment in a very difficult and very critical post with the full support and confidence of my colleagues and my supervisors. This is strong, if not overwhelming, evidence that I am meeting the standards of my class.

It has been almost two years since I made the statement that is at the root of the PSB's determination that I am not meeting the standards of my class. In that time, I have

performed my job well and I continue to do so. If I am in fact an unfit or substandard FSO, then I should not have been allowed to remain in this important and critical position. If, on the other hand, I am in fact meeting, if not exceeding, the standards of my class, as I believe the evidence clearly indicates, then the Department is estopped from asserting otherwise and the low rankings and the DFS should be dismissed for this reason.

Delay of Proceedings Until I Return from Overseas

I believe I have made a convincing case as to why the low rankings and the DFS should be dismissed. If the Agency disagrees, then deliberation regarding this grievance should be delayed until the end of my tour (probably in October 2005) when I will be able to return to the U.S. and do additional research relating to this grievance. I have the research I did for my last grievance and I believe this research more than adequately shows why the low rankings and DFS that are the subject of this grievance should be dismissed. However, this research has not been updated since the summer of 2002. I need access to a full law library and full access to FSGB decisions in order to update my research and to explore new issues raised in this grievance. Among the issues I can only fully explore and research in the U.S. are the First Amendment issues and protected speech in general, whistle-blower protection, and general principles of equity and estoppel.

There is clear support for this in the statute governing judicial review of FSGB decisions. 22 USC sec. 4140 states in relevant part "Any aggrieved party may obtain judicial review ... (or in the case of an aggrieved party who is posted abroad at the time of the final action of the Secretary or the Board, if the request for judicial review is filed not later than 180 days after the aggrieved party's return to the United States.)"

This provision recognizes the difficulty of managing complex legal proceedings while serving in an overseas posting. This same principle should apply to proceedings at the Agency level if the situation warrants it. Any such delay would also serve the needs of the Service. As noted, I have the full confidence and support of my colleagues and supervisors. We are at a critical time in the Democratic Republic of the Congo, although all times seem critical here, as the country struggles to put together a viable electoral process.

The situation calls for a strong PD presence. There will be about a one-month gap between the current DPAO's departure in July and the new DPAO's arrival in August. The new DPAO is a second-tour JO. She is PD-coned but coming off of her consular tour so she has as yet had no substantive PD experience. My replacement is due to arrive in October. I do not know if we will have an overlap, but we should if at all possible. My replacement is an experienced FSO, including substantial experience in Africa. However, this will be his first PD tour. Any training, advice etc. I can provide to both the new DPAO and the new PAO will be of great value and importance given the critical situation in the DRC and the need for a strong and effective PD presence here.

Accordingly, any delay based on procedural grounds would not only help ensure that all due process is given and that justice is served, it would also clearly benefit the Department and meet the needs of the Service.

Rewriting the Statement

Another option, although not my preferred one, is for the Agency to allow me to rewrite my statement in the 10-01-2002 to 04-15-2003 EER. The 2003 low ranking and the DFS clearly turn on this statement. The sanction here is vastly disproportionate to whatever offense the Department sees in my statement. The statement, as noted, has nothing to do with my actual job performance and no connection has been made between my statement and my job performance. Consequently, the situation can be fixed easily enough from the Department's point of view by my simply rewriting this statement and then putting my personnel file back into the pool for consideration by the regular selection boards or by a reconstituted board.

Further Information

As discussed, this case is primarily one of legal, rather than factual, determination. To the extent the Agency feels the need to develop additional information concerning my substantive knowledge, my interpersonal skills, or any other aspect of my job performance, anyone who has worked with me in Kinshasa can be contacted. I would particularly recommend the following individuals:

DAS Don Yamamoto, AF/FO
Roger Meece, current Ambassador-Kinshasa
Aubrey Hooks, former Ambassador-Kinshasa, current Ambassador-Abidjan
Thomas Dougherty, current DCM-Kinshasa
Jim Swan, former DCM-Kinshasa, currently at the National War College
Mario Cantu, HR/PE – Based on my conversations with Mr. Cantu, I believe that he feels the DFS is a bad decision.
Meg Keeton, former Management Counselor-Kinshasa, currently at HR/CDA/AD
Karen Ogle, former Consular Officer-Kinshasa, currently in Melbourne
Christina Dougherty, former Economics Counselor-Kinshasa, currently in EUR/ERA
Paul Kepp, former ORA chief-Kinshasa, currently at USUN-Geneva
Melissa Sanderson, current Political Counselor-Kinshasa
Ed Bestic, current Political Officer-Kinshasa
Jeff Lischke, current RSO-Kinshasa
LTC Thomas Foster, current DATT-Kinshasa
Robert Hellyer, current AID Director-Kinshasa
Tony Gambino, former AID Director-Kinshasa – Mr. Gambino can be reached at tgambino@aol.com
Mikaela Meredith, current AID General Development Officer-Kinshasa

Dawn Howes, former CLO-Kinshasa - Ms. Howes can be reached at thehowes@yahoo.com and she can attest to my role in keeping Embassy morale up.

The following individuals have worked with me from Washington and other posts and in many cases have visited me at post:

Cynthia Efird, current Ambassador-Luanda, former head of AF/PD
LW Koengeter, current head of AF/PD
Daniel Whitman, current Desk Officer, AF/PD
Valerie Reynolds, AF/EX/BFO
George Scholz, current Regional English Language Officer-Cairo, former RELO-Pretoria
Anne D, Carson, Regional Information Resources Officer, IIP/G/AF
Angier Peavy, Director of African Regional Services-Paris.

Request for Relief

Based on the above grievance, I request the following relief:

1. That prescriptive relief be granted pursuant to 3 FAM 4431(b)(2) until this grievance is fully resolved;
2. That the low rankings from the 2002 and 2003 Selection Boards be dismissed and expunged from my personnel records;
3. That the Designation for Separation from the 2003 Performance Standards Board be dismissed and expunged from my personnel records;
4. That I be reimbursed for all reasonable expenses incurred in the pursuit of this grievance;
5. That I be granted such other relief as may be deemed just and proper.

Thank you for your attention to this matter.

Phillip E. Wright
Public Affairs Officer
American Embassy – Kinshasa
Unit 31550
APO AE 09828-1550
Tel: 243-81-880-5845
Wrightpe@state.gov



**United States Department of State**

*Washington, D.C. 20520*

April 4, 2005

Mr. Phillip E. Wright
Unit 31550
APO AE 09828-1550

AGS 2005-029

Dear Mr. Wright:

This letter acknowledges that on April 1 we received your grievance by email. In accordance with 3 FAM 4400 we will provide you and AFSA with a written decision in this matter.

The AGS number cited above has been assigned as the identifier for the grievance. Please refer to this number in all future correspondence. If you have any questions please contact Mr. Terry Michael Hagans of my staff who will process your case. You may reach him at (202) 261-8120 or by unclassified email at haganstm@state.gov.

Please know that while your grievance pends in this office the Department will suspend its action to separate you from the Foreign Service.

Enclosed is a fact sheet explaining the grievance procedures for Foreign Service members of the Department.

Sincerely,

*Joanne M. Lishman*

Joanne M. Lishman
Director
Grievance Staff

Enclosure as stated

cc: AFSA

**Wright, Phillip E**

| | |
|---|---|
| **From:** | Hagans, Terry M |
| **Sent:** | Friday, July 01, 2005 9:07 PM |
| **To:** | Wright, Phillip E |
| **Cc:** | Slotnick, Josiah M |
| **Subject:** | AGS 2005-029 status |
| | |
| **Importance:** | High |

Mr. Wright - our office has concluded its review of your grievance submission in which you dispute your designation for separation and two low ranking statements. During this review period you have also been on interim relief status. This is to inform you that we are prepared to issue a decision denying your grievance. I recognize you likely would disagree with our conclusions and would appeal our decision to the FS Grievance Board, as is your right. The purpose of my present communication with you is not, however, to discuss the merits of the case. It is instead to propose the possibility of a settlement agreement to you based on my understanding that you have an interest in hitting your 20-year date.

Once our decision issues you will lose your entitlement to interim relief because the FSGB lacks the authority to grant such relief. This means you would be separated from the Service very soon thereafter. This does not affect your right to appeal our decision to the FSGB though. It just means that if you should prevail before the Board some time down the road that the Department would be obligated to make you whole retroactively. If you are interested, I am prepared to recommend to the deciding official in this case that we settle your grievance according to the following general terms: the Department agrees to extend your appointment until your 20-year date, you agree to retire from the service on hitting your 20-year date, you forego all claims against the Department (except the statutory right of a former member to grieve financial claims) to include withdrawing the subject grievance. **Time is very much of the essence here** and what I propose to recommend to the deciding official is something that I am open to doing in the course of the coming week. I give no assurance that the deciding official will agree to my recommendation but I believe there is a solid possibility this would happen. It is in no one's interest that this drag out. **I ask for your response to my proposal no later than July 6.** Absent a response our decision will issue. Sincerely, Terry Michael Hagans, HR/G staff (p.s. note that I have cc'ed AFSA in the person of Mr. Slotnick)

*Terry Michael Hagans*
*Grievance Staff, HR/G*
*SA-1, Room H-523*
*tel: 202-261-8120*
*fax:202-261-8121*

**Wright, Phillip E**

| | |
|---|---|
| **From:** | Slotnick, Josiah M |
| **Sent:** | Wednesday, July 06, 2005 3:34 PM |
| **To:** | Wright, Phillip E |
| **Subject:** | FW: AGS 2005-029 status |

**Importance:**    High

Mr. Wright,

I spoke with Terry Hagans of the grievance staff regarding the below email. He is under the impression that you read his email on Sunday. I wanted to encourage you to respond one way or the other, especially if you are considering his proposal because he reinforced the impression that absent a response today they will move to their decision. Please advise.

Regards,

Joe Slotnick

---

**From:** Hagans, Terry M
**Sent:** Friday, July 01, 2005 4:07 PM
**To:** Wright, Phillip E
**Cc:** Slotnick, Josiah M
**Subject:** AGS 2005-029 status
**Importance:** High

Mr. Wright - our office has concluded its review of your grievance submission in which you dispute your designation for separation and two low ranking statements. During this review period you have also been on interim relief status. This is to inform you that we are prepared to issue a decision denying your grievance. I recognize you likely would disagree with our conclusions and would appeal our decision to the FS Grievance Board, as is your right. The purpose of my present communication with you is not, however, to discuss the merits of the case. It is instead to propose the possibility of a settlement agreement to you based on my understanding that you have an interest in hitting your 20-year date.

Once our decision issues you will lose your entitlement to interim relief because the FSGB lacks the authority to grant such relief. This means you would be separated from the Service very soon thereafter. This does not affect your right to appeal our decision to the FSGB though. It just means that if you should prevail before the Board some time down the road that the Department would be obligated to make you whole retroactively. If you are interested, I am prepared to recommend to the deciding official in this case that we settle your grievance according to the following general terms: the Department agrees to extend your appointment until your 20-year date, you agree to retire from the service on hitting your 20-year date, you forego all claims against the Department (except the statutory right of a former member to grieve financial claims) to include withdrawing the subject grievance. **Time is very much of the essence here** and what I propose to recommend to the deciding official is something that I am open to doing in the course of the coming week. I give no assurance that the deciding official will agree to my recommendation but I believe there is a solid possibility this would happen. It is in no one's interest that this drag out. **I ask for your response to my proposal no later than July 6.** Absent a response our decision will issue. Sincerely, Terry Michael Hagans, HR/G staff  (p.s. note that I have cc'ed AFSA in the person of Mr. Slotnick)

*Terry Michael Hagans*
*Grievance Staff, HR/G*
*SA-1, Room H-523*
*tel: 202-261-8120*
*fax:202-261-8121*

**Wright, Phillip E**

| | |
|---|---|
| **From:** | Hagans, Terry M |
| **Sent:** | Wednesday, July 06, 2005 7:13 PM |
| **To:** | Wright, Phillip E |
| **Cc:** | Slotnick, Josiah M |
| **Subject:** | RE: AGS 2005-029 status |
| | |
| **Importance:** | High |

Very well. Mr. Slotnick did contact me. I will forward to you and him a proposed agreement very soon. Your employee profile shows a service computation date of 12/09/85. However, I have asked HR/RET to doublecheck the accuracy of this date and to affirm to me that as of 12/09/2005, or whatever proximate date, you would be eligible to receive an immediate annuity. I would not want to be proceeding on an error at this stage. I expect to hear back from RET tomorrow morning at the latest. Sincerely, Terry Michael Hagans, HR/G staff

-----Original Message-----
| | |
|---|---|
| **From:** | Wright, Phillip E(Kinshasa) |
| **Sent:** | Wednesday, July 06, 2005 12:03 PM |
| **To:** | Hagans, Terry M |
| **Cc:** | Slotnick, Josiah M |
| **Subject:** | RE: AGS 2005-029 status |

Ok. I have discussed this with Mr. Slotnick and I understand that he will be contacting you to work out the details of a settlement agreement.

-----Original Message-----
| | |
|---|---|
| **From:** | Hagans, Terry M |
| **Sent:** | Friday, July 01, 2005 9:07 PM |
| **To:** | Wright, Phillip E |
| **Cc:** | Slotnick, Josiah M |
| **Subject:** | AGS 2005-029 status |
| **Importance:** | High |

Mr. Wright - our office has concluded its review of your grievance submission in which you dispute your designation for separation and two low ranking statements. During this review period you have also been on interim relief status. This is to inform you that we are prepared to issue a decision denying your grievance. I recognize you likely would disagree with our conclusions and would appeal our decision to the FS Grievance Board, as is your right. The purpose of my present communication with you is not, however, to discuss the merits of the case. It is instead to propose the possibility of a settlement agreement to you based on my understanding that you have an interest in hitting your 20-year date.

Once our decision issues you will lose your entitlement to interim relief because the FSGB lacks the authority to grant such relief. This means you would be separated from the Service very soon thereafter. This does not affect your right to appeal our decision to the FSGB though. It just means that if you should prevail before the Board some time down the road that the Department would be obligated to make you whole retroactively. If you are interested, I am prepared to recommend to the deciding official in this case that we settle your grievance according to the following general terms: the Department agrees to extend your appointment until your 20-year date, you agree to retire from the service on hitting your 20-year date, you forego all claims against the Department (except the statutory right of a former member to grieve financial claims) to include withdrawing the subject grievance. **Time is very much of the essence here** and what I propose to recommend to the deciding official is something that I am open to doing in the course of the coming week. I give no assurance that the deciding official will agree to my recommendation but I believe there is a solid possibility this would happen. It is in no one's interest that this drag out. **I ask for your response to my proposal no later than July 6.** Absent a response our decision will issue. Sincerely, Terry Michael Hagans, HR/G staff (p.s. note that I have cc'ed AFSA in the person of Mr. Slotnick)

*Terry Michael Hagans*
*Grievance Staff, HR/G*
*SA-1, Room H-523*
*tel: 202-261-8120*
*fax:202-261-8121*

1

37

**Wright, Phillip E**

| | |
|---|---|
| **From:** | Hagans, Terry M |
| **Sent:** | Tuesday, July 12, 2005 7:51 PM |
| **To:** | Slotnick, Josiah M; Wright, Phillip E |
| **Subject:** | FW: AGS 2005-029 status |
| **Importance:** | High |

Gentlemen - HR/RET confirmed the accuracy of the SCD date, which is the date tied to 20 years of service.  However, Mr. Wright's TIC date falls 6 days earlier.  This is why in the attached settlement proposal I refer to extending the TIC date so that it reaches the SCD date -- actually, I've taken it out to the end of the month of December.  Please let me know <u>no later</u> than this Friday, July 15, whether the terms of the agreement are acceptable.  If I do not hear from you by then I will process the case as if no settlement consideration involving Mr. Wright's voluntary retirement exists.

**For Mr. Wright**: HR/RET advised me that you would be eligible for an immediate annuity via voluntary retirement effective as of 12/31/2005.  There are two forms that you must complete to initiate the retirement process, and these should be submitted three months <u>ahead</u> of your effective retirement date to ensure no delay in annuity payment.  The forms are Application for Retirement DS-5004 and the Residence and Dependent Report Form OF-126.  These forms are available on eForms or you may contact HR/RET, attention Judith Smallwood for any questions.

Note: the attached agreement consists of two pages; the second page is for signatures only.



wright settlement
agreement.do...

-----Original Message-----

| | |
|---|---|
| **From:** | Hagans, Terry M |
| **Sent:** | Wednesday, July 06, 2005 2:13 PM |
| **To:** | Wright, Phillip E |
| **Cc:** | Slotnick, Josiah M |
| **Subject:** | RE: AGS 2005-029 status |
| **Importance:** | High |

Very well.  Mr. Slotnick did contact me.  I will forward to you and him a proposed agreement very soon.  Your employee profile shows a service computation date of 12/09/85.  However, I have asked HR/RET to doublecheck the accuracy of this date and to affirm to me that as of 12/09/2005, or whatever proximate date, you would be eligible to receive an immediate annuity.  I would not want to be proceeding on an error at this stage.  I expect to hear back from RET tomorrow morning at the latest.  Sincerely, Terry Michael Hagans, HR/G staff

-----Original Message-----

| | |
|---|---|
| **From:** | Wright, Phillip E(Kinshasa) |
| **Sent:** | Wednesday, July 06, 2005 12:03 PM |
| **To:** | Hagans, Terry M |
| **Cc:** | Slotnick, Josiah M |
| **Subject:** | RE: AGS 2005-029 status |

Ok.  I have discussed this with Mr. Slotnick and I understand that he will be contacting you to work out the details of a settlement agreement.

-----Original Message-----

| | |
|---|---|
| **From:** | Hagans, Terry M |
| **Sent:** | Friday, July 01, 2005 9:07 PM |
| **To:** | Wright, Phillip E |
| **Cc:** | Slotnick, Josiah M |
| **Subject:** | AGS 2005-029 status |
| **Importance:** | High |

1

Mr. Wright - our office has concluded its review of your grievance submission in which you dispute your designation for separation and two low ranking statements. During this review period you have also been on interim relief status. This is to inform you that we are prepared to issue a decision denying your grievance. I recognize you likely would disagree with our conclusions and would appeal our decision to the FS Grievance Board, as is your right. The purpose of my present communication with you is not, however, to discuss the merits of the case. It is instead to propose the possibility of a settlement agreement to you based on my understanding that you have an interest in hitting your 20-year date.

Once our decision issues you will lose your entitlement to interim relief because the FSGB lacks the authority to grant such relief. This means you would be separated from the Service very soon thereafter. This does not affect your right to appeal our decision to the FSGB though. It just means that <u>if</u> you should prevail before the Board some time down the road that the Department would be obligated to make you whole retroactively. If you are interested, I am prepared to recommend to the deciding official in this case that we settle your grievance according to the following general terms: the Department agrees to extend your appointment until your 20-year date, you agree to retire from the service on hitting your 20-year date, you forego all claims against the Department (except the statutory right of a former member to grieve financial claims) to include withdrawing the subject grievance. **Time is very much of the essence here** and what I propose to recommend to the deciding official is something that I am open to doing in the course of the coming week. I give no assurance that the deciding official will agree to my recommendation but I believe there is a solid possibility this would happen. It is in no one's interest that this drag out. **I ask for your response to my proposal no later than July 6.** Absent a response our decision will issue. Sincerely, Terry Michael Hagans, HR/G staff  (p.s. note that I have cc'ed AFSA in the person of Mr. Slotnick)

*Terry Michael Hagans*
*Grievance Staff, HR/G*
*SA-1, Room H-523*
*tel: 202-261-8120*
*fax:202-261-8121*

**Wright, Phillip E**

| | |
|---|---|
| **From:** | Wright, Phillip E |
| **Sent:** | Thursday, July 14, 2005 5:14 PM |
| **To:** | Hagans, Terry M |
| **Cc:** | Slotnick, Josiah M |
| **Subject:** | RE: AGS 2005-029 status |

I have sent Mr. Slotnick a scanned copy of the signature page with my signature. I have also sent to Mr. Slotnick via DHL four copies of the Settlement Agreement with my signature. These should arrive in Washington at the beginning of next week. Please let me know if any further action is required on my part at this time.

-----Original Message-----
| | |
|---|---|
| **From:** | Hagans, Terry M |
| **Sent:** | Tuesday, July 12, 2005 7:51 PM |
| **To:** | Slotnick, Josiah M; Wright, Phillip E |
| **Subject:** | FW: AGS 2005-029 status |
| **Importance:** | High |

Gentlemen - HR/RET confirmed the accuracy of the SCD date, which is the date tied to 20 years of service. However, Mr. Wright's TIC date falls 6 days earlier. This is why in the attached settlement proposal I refer to extending the TIC date so that it reaches the SCD date -- actually, I've taken it out to the end of the month of December. Please let me know no later than this Friday, July 15, whether the terms of the agreement are acceptable. If I do not hear from you by then I will process the case as if no settlement consideration involving Mr. Wright's voluntary retirement exists.

**For Mr. Wright:** HR/RET advised me that you would be eligible for an immediate annuity via voluntary retirement effective as of 12/31/2005. There are two forms that you must complete to initiate the retirement process, and these should be submitted three months ahead of your effective retirement date to ensure no delay in annuity payment. The forms are Application for Retirement DS-5004 and the Residence and Dependent Report Form OF-126. These forms are available on eForms or you may contact HR/RET, attention Judith Smallwood for any questions.

Note: the attached agreement consists of two pages; the second page is for signatures only.

<< File: wright settlement agreement.doc >>

-----Original Message-----
| | |
|---|---|
| **From:** | Hagans, Terry M |
| **Sent:** | Wednesday, July 06, 2005 2:13 PM |
| **To:** | Wright, Phillip E |
| **Cc:** | Slotnick, Josiah M |
| **Subject:** | RE: AGS 2005-029 status |
| **Importance:** | High |

Very well. Mr. Slotnick did contact me. I will forward to you and him a proposed agreement very soon. Your employee profile shows a service computation date of 12/09/85. However, I have asked HR/RET to doublecheck the accuracy of this date and to affirm to me that as of 12/09/2005, or whatever proximate date, you would be eligible to receive an immediate annuity. I would not want to be proceeding on an error at this stage. I expect to hear back from RET tomorrow morning at the latest. Sincerely, Terry Michael Hagans, HR/G staff

-----Original Message-----
| | |
|---|---|
| **From:** | Wright, Phillip E(Kinshasa) |
| **Sent:** | Wednesday, July 06, 2005 12:03 PM |
| **To:** | Hagans, Terry M |
| **Cc:** | Slotnick, Josiah M |
| **Subject:** | RE: AGS 2005-029 status |

Ok. I have discussed this with Mr. Slotnick and I understand that he will be contacting you to work out the details of a settlement agreement.

-----Original Message-----

1

**From:**      Hagans, Te      M
**Sent:**      Friday, July      2005 9:07 PM
**To:**  Wright, Phillip E
**Cc:**  Slotnick, Josiah M
**Subject:**      AGS 2005-029 status
**Importance:**      High

Mr. Wright - our office has concluded its review of your grievance submission in which you dispute your designation for separation and two low ranking statements. During this review period you have also been on interim relief status. This is to inform you that we are prepared to issue a decision denying your grievance. I recognize you likely would disagree with our conclusions and would appeal our decision to the FS Grievance Board, as is your right. The purpose of my present communication with you is not, however, to discuss the merits of the case. It is instead to propose the possibility of a settlement agreement to you based on my understanding that you have an interest in hitting your 20-year date.

Once our decision issues you will lose your entitlement to interim relief because the FSGB lacks the authority to grant such relief. This means you would be separated from the Service very soon thereafter. This does not affect your right to appeal our decision to the FSGB though. It just means that if you should prevail before the Board some time down the road that the Department would be obligated to make you whole retroactively. If you are interested, I am prepared to recommend to the deciding official in this case that we settle your grievance according to the following general terms: the Department agrees to extend your appointment until your 20-year date, you agree to retire from the service on hitting your 20-year date, you forego all claims against the Department (except the statutory right of a former member to grieve financial claims) to include withdrawing the subject grievance. **Time is very much of the essence here** and what I propose to recommend to the deciding official is something that I am open to doing in the course of the coming week. I give no assurance that the deciding official will agree to my recommendation but I believe there is a solid possibility this would happen. It is in no one's interest that this drag out. **I ask for your response to my proposal no later than July 6.** Absent a response our decision will issue. Sincerely, Terry Michael Hagans, HR/G staff (p.s. note that I have cc'ed AFSA in the person of Mr. Slotnick)

*Terry Michael Hagans*
*Grievance Staff, HR/G*
*SA-1, Room H-523*
*tel: 202-261-8120*
*fax:202-261-8121*

2