**Wright, Phillip E**

---

**From:** Adams, Gregory M(HR/CDA/ML)
**Sent:** Tuesday, April 08, 2003 9:16 PM
**Subject:** EER Advice

Dear PD Colleagues,

I was only going to share this information with my clients, but I have had enough e-mails and phone calls from others to cause me to risk sending it out to everyone -- even to those for whom it will be very old hat. For you who find it simplistic and/or redundant, please just hit the "delete" key.

The following advice is compiled from readouts we have had from various promotion panels plus an in-house session among CDA staff, some of whom have served on panels in the past. This is anecdotal, informal stuff, not to be found in any regulations, SOPs, procedures or the FAM. It is NOT a guaranteed "roadmap" to promotion, just the random thoughts, opinions and experiences of some people who are familiar with the process, filtered through my own notes. I provide it as a service only, so please don't read any more into it than that.

I initially tried to put the points in some logical order, but then realized it was probably a hopeless task. So here they are:

1. Promotion is competitive. You don't get promoted for doing a good job (that's why you get a paycheck), or for your "potential to perform at the next level," or for taking on assignments or positions beyond your current grade. You get promoted for standing out -- for being better than others in your "class" or competition group. Period.

2. Panel members must read upwards of 40 files a day. One file = one person's entire employment history, so we're talking big volume. While they usually go back only five years or to the last promotion, whichever is longer, members may go back considerably farther if they have questions, such as why an officer whose latest reviews look stellar has had a slow promotion history. If something piques their curiosity, they can dig deeper.

3. Given the sheer volume of the material they must read, members make up their minds quickly as they put the files into three basic piles: possibly promote, mid-rank, and possibly low-rank. The middle pile is, of course, by far the biggest. The goal is to get into that first pile.

4. In order to stand out, you must catch the reader's attention quickly. If your rater is going to declare that you are the finest officer he/she has ever worked with in their 30-year career, it's best to put that up front, rather than bury it at the end: "...and because Mr. DeFonebone is such a fine officer, I recommend that he be promoted at the earliest opportunity." (Yawwwnnnn....)

5. You want a good, eye-catching "topic sentence" right off the bat. You do not want something that lands with a dull thud: "Ms. Tweeter serves as one of 30 mid-level officers in the non-immigrant visa section and has no supervisory responsibilities." With an intro like that, the absolute BEST you can hope for is a mid-ranking. As they say in journalism, "Don't bury your lead." Don't let your rater get away with it either. Just saying you did a "good job" or "had a good year" is not going to get your file into the "possibly promote" pile.

6. Your EER should tell a story -- the story of you, your performance and your career. It should have a nice, logical flow to it, and by the end the reader should have a clear idea of who you are, what you did during the rating period, and why it was important. Also, as one person put it, panels tend to promote people they LIKE -- the sort of people that they would want to serve with in an office or overseas. Conversely, they are not likely to promote people who come across as whiny, excuse-laden, self-justifying, embittered, brilliant but prickly to deal with, etc. You want to leave a friendly, positive, engaging impression.

7. This was said so many times that it cannot be emphasized enough: REMEMBER YOUR AUDIENCE! And make sure that your rater and reviewer do the same. As one person put it, "So many EERs seem written to please the employee" rather than inform the panel. You are NOT the audience. Pleasant-sounding adjectives may make you happy, but they won't get you promoted without substance to back them up.

8. Take total responsibility for your EER. In the best of all possible worlds, your rater and reviewer would be with you every second of every working day, know exactly what did, and be able to remember it all and write it up in a fair, impartial way. But this is not a perfect world, and more often than not your EER is only as good as the information you provide.

9. Don't just give your rater a list of accomplishments and hope for the best. Take the next step and link each of them

1

directly to the promotion precepts and the competencies that you believe they demonstrate. Lay it all out for your rater and reviewer and lead them to the result you seek. The easier you can make the burden on them the better it will go for you, especially if they're writing a bunch of these things. Don't leave anything to chance.

10. Also -- and VERY IMPORTANT -- make sure your accomplishments pass the "So what?" test. Stacking greased beebees is undoubtedly very hard to do, but unless you can show why it is worth doing it isn't going to count for much with the panel. Don't allow your rater and reviewer to lose focus on the significance of your work -- "why" is ultimately much more important than "what." But don't overdo it. Taking credit for single-handedly keeping us out of war with Canada only invites derision, not admiration. Both your accomplishments and their contributions to the overall Mission should be credible and realistic.

11. Save some "crumbs" for your reviewer. In order to be effective, he/she needs to say something new and slightly different. But if your rating officer takes all the points for her/himself, your reviewer, who by definition is less familiar with your work, is left to either repeat what has already been said or fill the page with empty praise that adds little to the record. One tactic is to provide so many examples that your rater cannot possibly use them all. The reviewer can then pick and choose from the rest, and whatever is left over can go into your own statement at the end. That is one way of assuring that nothing of importance ever gets left out. A reviewer should also be encouraged to give a view of your position from his/her exalted vantage point: how your job fits into and contributes to the overall Mission. Again, you cannot assume that panel members -- and especially those from the outside -- will automatically know these things. Be sure someone tells them.

12. Areas for improvement, Part I. This is dangerous territory, since panels are required to low-rank 5% of every class, and the easy way out is to low-rank those who have demonstrated a pattern of chronic inadequacy over two or more years. Citing the same Area of Improvement year after year is an invitation to low-ranking, regardless of what else is said. The best antidote is once again to be proactive: suggest an Area yourself. Be honest and pick something you would genuinely like to work on and improve at, or one that is understandable given your position (e.g., "substantive knowledge" is a justifiable deficiency when starting a new job, but probably not after you've been in one for three years). Just be careful not to pick something you have been cited for in the recent past. One person who served on a panel said he felt "relieved" when he came across an EER that he could immediately place on the "possibly low-rank" pile, since most reports were so good that it was very hard to come up with the required 5%. Don't make the panel's work any easier than you have to in this regard.

13. Areas for Improvement, Part II. Be sure to respond to criticism in your "Rated Officer's Statement" -- the so-called "suicide box" -- especially if you have been cited for the same deficiency before. The worst thing you can do is take issue with what your rater has said and argue your case to the panel as if it were some sort of jury. It isn't. The second worst thing you can do is ignore the criticism entirely. Panels become exasperated with employees who blow off constructive advice, who "don't get it" and who refuse to take direction. The best thing you can do is acknowledge the validity of the criticism and vow to take steps to improve, such as by taking a course at FSI, or by meeting with your supervisor at your own initiative for regular counseling and feedback. Panels love humility and contrition; they hate unrepentant sinners.

14. Suicide Box, Part I. Promotion panel members don't know you, and the outside members probably don't know much about the State Dept. or even the Foreign Service. They cannot rectify the wrongs done to you in your career, make you happier, or settle scores with your supervisors. So don't write your statement as if you expect them to do these things. All they can do is grant or withhold a promotion based on the impression they come away with after reading your file.

15. Suicide Box, Part II. Again, REMEMBER YOUR AUDIENCE! Panel members are chosen in part because they outrank you. So if it comes down to a spitting match between you and your supervisors, guess whose side they are going to be sympathetic to? It may not be fair, it may not be right, but the object here is to get promoted, not win the debate.

16. Suicide Box, Part III. Think of it this way: The panel is seated in a room, eager to hear all about you. The first person to walk through the door is your rating officer, who describes you as someone he/she works with on a regular basis. Then it's the reviewing officer's turn to walk through the door and give a slightly different perspective: describing both you and your relationship with the rating officer. Finally, the panel gets to meet YOU. This is what they have been waiting for. Now's their chance to get "up close and personal" with the person they have been hearing so much about. This is your chance to "come to life," to connect with the panel members on a personal level. They want to know you better, to hear about your goals, aspirations and visions for the future. They want to see if you're excited and passionate about your career, if you have a sense of mission. The last thing you want to do is destroy a good impression by complaining, or by being reserved, boring or having nothing to say. Just as with any interview-type situation, if you're disappointing in person, it doesn't really matter what other people might have said about you. You're done.

17. Suicide Box, Part IV. This is the last thing panel members read, and it does more to form their impression of you than any other part of the EER. Use it to present yourself in a positive light. DON'T leave it blank, or use it merely to repeat or agree with what your rater and reviewer have already said. That's not only unenlightening, it's boring, and these are tired, weary-eyed people. You want to wake them up by making a crisp, clear and vivid impression in their minds. You want

them to truly KNOW you by the time they have finished reading your file. You want your file to be memorable -- for the right reasons.

I hope this helps. For those who not have seen them yet, I will send this year's EER cables in a separate message. And for any of you who might like to contribute to MY EER, you can click on the HR feedback site at http://hrweb.hr.state.gov/cf/CSsurvey/survey.cfm. Thanks to all of you who have already done so.

Regards to all,

Greg


*************************
Gregory M. Adams
HR/CDA/ML - Room #2425 MS
phone: (202) 647-4343
fax: (202) 736-4075
E-mail: AdamsGM@state.gov
**https://hrweb.hr.state.gov**
*************************

**Wright, Phillip E**

**From:** Adams, Gregory M
**Sent:** Tuesday, April 06, 2004 11:56 PM
**Subject:** EER Advice

Dear PD Colleagues,

The current rating year ends next week (April 15) and EERs are due in HR on May 15.

I don't want to repeat myself by reprising what I wrote last year. I'll attach it for those who might want to review it, and add a few bullets based on debriefs from this past year's Multifunctional and Functional selection boards (aka "promotion panels").

Overall, I was distressed to hear several panel members say that PD EERs were the "worst crafted", "thinnest" or "hardest to judge" of all they had to review. It wasn't that they were poorly written, grammatologically-speaking, but rather that they lacked substance and context. They also assumed a prior knowledge of (and appreciation for) PD products, programs and services that most panel members did not possess.

The public members of these panels complained the most. They pointed out that it was fairly easy to understand the importance of freezing the financial assets of a Balkan war criminal, or reuniting children kidnapped by their foreign father with their American citizen mother. These are accomplishments that anyone can appreciate. By contrast, "increasing Fulbright exchanges by 10 per cent" or "seeing the Bureau's flagship project through to fruition" pale in comparison and fail the "so what?" test absent greater context and elaboration.

Hence, this year's advice, taken directly from panel members' comments in no particular order and without regard for repetitiveness:

- Write for the general public, not for fellow PD specialists or even State Department peers.

- Don't assume that the value and worth of your accomplishments will be self-evident; assume that they won't.

- Put accomplishments in context ("paint a better picture") since context and justification are what give credibility.

- A catalogue of deeds is "boring;" panels like more explanations and fewer "things".

- Hyperbole does not impress; panels want proof, not adjectives - they will judge the quality of your performance, thank you.

- Explain what the job is; don't assume that the panel will automatically infer it from its title.

- Formatting counts: panels appreciate concision, precision, and lots of white space.

- Have pity on the weary-eyed panel members plowing through the same words and trite phrases over and over and over again.

- Group awards don't boost competitiveness.

- Individual awards whose citations echo language in the EER do not help competitiveness.

- Don't expect promotion for doing the same type of job over and over (the "ho-hum factor"), or for going from detail to detail ("running away from State").

- Panels like to see officers who develop and grow with each assignment.

- Panels like to see a mix of assignments and differential posts; doing ACS in Berlin or telecom policy in London for 5 years does not keep one competitive.

- Even such high-profile jobs as staff assistant, special assistant, "line" duty and Ops Center watches can be overdone

and make it hard for a panel to gauge one's development relative to that of one's peers.

- Show how PD work advances Mission and Bureau goals, rather than assume it will be appreciated for its own sake.

- The Area for Improvement should be addressed by the rated employee ESPECIALLY if it is strongly written; it should not be ignored.

- However, one should guard against sounding too defensive in one's own statement.

- Most low-rankings are for performance that is "unremarkable" or for non-competitiveness rather than poor performance, per se.

- There is a hierarchy among precepts, and panels notice when raters choose the lowest and most obscure of these to document skills in the competency groups (e.g., "leadership," "management," etc.).

- Memos, EERs and awards that cover very short periods frustrate panels and "grow stale with re-reading".

- It is better to combine input from multiple sources in one EER than to have multiple documents of short-term performance.

- Awards that are not in the file should not be referred to in the text of the EER.

- Commendation letters mostly serve to clutter the file and are largely ignored; EERs and long-term performance are what count.

- References to one's prior career(s) not only detract but can unwittingly set the bar higher ("You would think a lawyer would know better..."). You are not going to get promoted for what you did in the past, so leave such references out.

- Well-written Work Requirements Statements with specific objectives lead to better examples.

- Interpersonal skills are highly valued; a deficiency in this area is not only a promotion-killer but a likely ticket to low-ranking.

- Your rated officer's statement should be short and have "added value" by saying something new. It should also address the Area for Improvement.

- DON'T use your statement to plow the same ground as your rater and reviewer, or to wedge in a few more random accomplishments that shed little or no new light on your overall record.

- While a few words of appreciation for your rater's and reviewer's support may make you appear gracious, don't turn your statement into an Oscar night acceptance speech.

As you know, there is now a separate EER form (DS-5055) for employees grades -01 and above. The biggest change is that employees at those levels must discuss their own performance. I find it significant that they are asked to do so within the context of "at least three examples of continuing responsibilities or specific projects" from their Work Requirements. This is probably good advice for everyone. Once again, a few key accomplishments properly explained and carefully contextualized are better than a dozen without a sense of significance or priority.

Above all, take pains to explain what it is that we Public Diplomacy professionals do, and why it is important. Do not assume that everybody already knows.

Attached please find last year's message. Comments on my own performance may be registered at http://hrweb.hr.state.gov/cf/CSsurvey/survey.cfm.

Regards to all,

Greg

**Wright, Phillip E**

---

**From:** Adams, Gregory M
**Sent:** Thursday, April 22, 2004 5:46 PM
**Subject:** EER Advice: clarifications & additions

Dear PD Colleagues,

Allow me to take this opportunity to clarify one item in my recent "EER Advice." This particular bullet caused some problems, and obviously was not worded as clearly as it should have been:

- There is a hierarchy among precepts, and panels notice when raters choose the lowest and most obscure of these to document skills in the competency groups (e.g., "leadership," "management," etc.).

Some people did not know what I meant by hierarchy, others thought I was signaling that leadership and management were less important than other competency groups, and others had no clue what I was trying to say. My fault.

What I meant to say was that within each competency/skill group (leadership, management, inter-personal, etc.) there is a hierarchy of examples, from lowest/easiest to highest/most complex. If you go to http://arpsdir.a.state.gov/eform/forms/pdf/ds1829cp.pdf on the State IntraNet, you will see that each skill group is divided into Junior-Level, Mid-Level and Senior-Level examples. If your rater and reviewer consistently document your performance by using examples from the lowest/easiest end, the panel is going to notice. At least, that is what I assume the panel member who made this remark meant. Take it for what you will. In any event, I did NOT mean to indicate that leadership and management were somehow less important than other skills. Just the opposite, in fact.

Finally, a couple of PD colleagues who have served on promotion panels in the past wrote in and were kind enough to add some insights of their own. Here are comments from one of them. I've edited it a bit to protect his/her identity.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

As a former (exhausted) member of the \*\*\*\*\*\*\*\*\* panel of \*\*\*\*\*\*\*, I would like to commend you on your succinct, completely accurate, and very useful list of EER advice for PD officers and their drafters. As we all know, most of us write the bulk of the information on our EERs anyway, so it is essential that we put the right words down on paper for our raters to re-write.

Exhausted is about right. The panels review 40 files PER DAY in the initial run-through to determine who even should be CONSIDERED for promotion and low ranking. If your EER is not easy to read, does not have outstanding examples that quickly answer the "so what?" factor and show a diversity of assignments as well as a credible management of resources, they are going right into the mid-ranked (i.e. not considered for promotion) file -- or worse.

Those files selected for promotion or low ranking will later be given a 30-minute intensive review, but the mid-ranks go right back into the file cabinet. I trust all our colleagues will review ALL your suggestions carefully! Make sure your EER makes the first cut for further review for promotion!

Language - One of the things that struck me about the other agency/public members (at least on my panel) was that they seemed to have developed a sort of "code" for determining if someone should be promoted or not, based on certain words in the EERs. i.e. "Promote him/her NOW!" to them, meant that this person really SHOULD be promoted because the rater was convinced that he/she deserved it. If no such language was present (i.e. in most of the PD rater/reviewer statements - it used to be inadmissible to say this in any of OUR reviews) the panel members, including our non-PD colleagues at State, would assume that the raters did NOT really think promotion was merited. Now, how do we get this message across to our PD colleagues? I personally have told as many as I can, especially those who did NOT make the cut this time around, but I am at a loss as to how to sanitize this important piece of information so that our folks can "get it."

Patterns of assignment - The PD "staff weenie" may get a lot of strokes from the likes of Talbott, Pickering or others of that A/S and other illustrious ilk, but panels in general are not impressed by someone who never goes overseas except on the coattails of some luminary. Management of resources, I explained to my colleagues, is something that we in PD value highly, along with "substantive" achievements and getting the message across. Remember "inform, influence and persuade?" I told them that it was important for a PD officer to show that she/he had done both the substantive and the managerial.

Interpersonal relations and the suicide box. A real killer is anything that indicates that an officer does not "play well with

1

73

others." If it appears in more than on[...]ER over a ten year period; this may spell [...]h. Once the officer's file is looked over in a cursory fashion (10-15 minutes to determine mid-ranking) then we go back and review the file thoroughly. Many will go back to the first EER, even if it is 20 years ago. Write your OWN "area for improvement" and make it something relatively substantive. i.e. If this is your first year on the job in a NATO country, admit that you could learn more about WMD or terrorism if all you have done is deal with narcotics in Latin America for the previous eight years. Difficulties handling staff ("s/he needs to learn to be a little more understanding of staff concerns") or dealing with supervisors ("she/he did not keep me in the loop") are killers. Deal with it in the suicide box if it is not accurate and you have attempted to get the rater to change the statement without success, but be very careful not to be defensive. State the facts. "The DCM was absent from post during part of the crisis and the AMB nominated me for an award for my performance during this period."

That's about it for now - if I think of anything else I will let you know. I have been VERY frank with you, but I really want our colleagues to have the same shot at promotions and they do now at some of the better high-level jobs. We are a terrific group of officers and we need to make sure that we have the words to show this to the panel members.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Gregory M. Adams
HR/CDA/ML - Room #2425 MS
phone: (202) 647-4343
fax: (202) 736-4075
E-mail: AdamsGM@state.gov <mailto:AdamsGM@state.gov>
**https://hrweb.hr.state.gov**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

2



Foreign Service Grievance Board                                     Annual Report for the year 2000

**Message from The Chairman**

decision making. Once achieved, this initiative holds promise of yielding dividends for years to come. While we had hoped to be further along in our efforts, we have now been promised the necessary support and additional vigor will be applied as it is at the top of our priority list.

It is worth emphasizing that this Board is an independent entity whose independence continues to be respected by all the agencies we service. Nothing is more vital to our effectiveness than recognition of this freedom of action. Rarely is compliance with our Orders a problem. The exclusive Foreign Service bargaining representative, AFSA, plays an important role in assisting grievants.

The importance of this Board to the overall Foreign Service personnel system cannot be overstated. Our grievances emanate from any Foreign Service post in the world. For the concerned grievant, we can be a refuge. To the extent that the Board detects systemic problems it was invited by the Director General to bring these matters to his attention.

Efforts to encourage the parties to enter into settlement agreements continue. When, however, matters reach the appellate level of a board action the attitude of the parties often has become fixed and settlement at this level is not readily attainable.

We acknowledge that some matters might drag on well beyond what seems to be a reasonable time to reach a decision. Typically there are valid reasons behind the delay, not all of which are within our control. Even so, we strive to hasten all decisions with due regard to the rights of the parties.

Our experience during the reporting year reveals that all too often grievances which concern employee evaluations and which we find are falsely prejudicial can be attributed to a lack of care or attention to the process by the evaluators involved. Required procedures sometimes are ignored, or comments in evaluations are unbalanced or lack support. The consequence is that some members are retained in the Foreign Service who, perhaps, would not be had the evaluation process been given more attention. In that evaluation reports play such a significant role in the determination of whether an employee might achieve promotion, or even be separated from the Foreign Service for failure to meet class standards, this inattention is somewhat surprising.

Sincerely,