UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
PHILLIP E. WRIGHT,                 )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   Civil Action No. 06-0526(JDB)
                                   )
FOREIGN SERVICE GRIEVANCE          )
BOARD, et al.,                     )
                                   )
            Defendants.            )
_____)

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Defendants submit this memorandum of points and authorities as both the reply to Plaintiff's Opposition to Defendants' Motion to Dismiss and for Summary Judgment and the opposition to Plaintiff's Cross-Motion for Summary Judgment.

The defendants moved to dismiss plaintiff's breach of contract claim on the grounds that the Court lacked jurisdiction and that the plaintiff failed to state a claim upon which relief could be granted (Count III) and for summary judgment as to plaintiff's challenge to the Foreign Service Grievance Board's (FSGB or Board) handling of his grievance (Count II). Plaintiff has filed an opposition to the defendants' motion and cross-moved for summary judgment.[1] The plaintiff's opposition and cross-

---

[1] The plaintiff has failed to submit a statement of material facts as to which there is a genuine issue as required by Local

motion are devoid of support in either the law or the record and confirm that judgment should be entered in favor of the defendants.

**Argument**

I. **The Settlement Contract Claim Should Be Dismissed.**

The Court has no subject matter jurisdiction over plaintiff's contract nullification claim and further the plaintiff fails to state a claim for duress, violation of public policy, or violation of due process as a matter of law. In any event, plaintiff can no longer seek to void the contract because he has already accepted all of its benefits. (Defs.' Mem. at 7-16.)

A. **There Is No Jurisdiction Over the Breach of Contract Claim**.

Plaintiff's sole argument with regard to lack of jurisdiction is his assertion that he has suffered an "injury in fact" that satisfies Article III's requirement for standing. The problem with plaintiff's breach of contract claim is not that he lacks standing, but that he has not plead a basis for subject matter jurisdiction.

The sole basis for jurisdiction in this case is 22 U.S.C. § 4140, which allows for appeals from FSGB decisions to the

---

Rule 7(h) or to controvert the statement of material facts as to which there is no genuine issue submitted by the defendant. Thus, the Court may assume the statements of fact identified by the defendants are admitted. Id.

2

District Court. Plaintiff fails to cite to any other basis for jurisdiction in his Opposition and Cross-Motion. While 22 U.S.C. § 4140 allows for an appeal from the FSGB's July 8, 2003 final decision on plaintiff's 2000 grievance, it provides no jurisdictional basis for challenging the unrelated settlement agreement that was entered into in 2005. As plaintiff's discussion makes clear, the disputes which led to the 2005 settlement post-date the FSGB decision and were not the subject of the grievance that the FSGB addressed (See Pl. Opp. at 2-7).

Review under 22 U.S.C. § 4140 is limited to the administrative record that was before the FSGB.[2] In the five pages that plaintiff devotes in support of his breach of contract claim, he fails to cite to the administrative record once. This is not surprising because, as noted above, the events leading to the settlement agreement post-date the FSGB proceeding that forms the jurisdictional basis for this appeal. Plaintiff attempts to support his opposition to the motion to dismiss exclusively with new exhibits from outside the administrative record. This recourse to evidence not found in the administrative record underscores the point that 22 U.S.C. § 4140 is not a basis for

---

[2] Section 4140 states explicitly that the APA applies to appeals brought under 22 U.S.C. § 4140. Review of agency action under the APA is based solely on the record that was before the agency when it made its decision. See National Treasury Employees Union v. Hove, 840 F. Supp. 165, 168 (D.D.C. 1994); see also defendants' motion at p. 18 and defendants' Opposition to the Motion to Supplement the Record at pp. 2-6.

this Court's jurisdiction over the breach of contract claim. As noted in defendants' motion, the Court of Claims has jurisdiction over contract claims over $10,000. 28 U.S.C. § 1346(a)(2). Plaintiff's demand for reinstatement and back pay would greatly exceed the jurisdictional amount.

    B.    **Plaintiff Fails to State a Claim for Contract Nullification**.

Plaintiff seeks to void his 2005 settlement agreement on the grounds that it was entered under duress and that it violates his constitutional due process rights as well as public policy. In his opposition and cross-motion, plaintiff appears to abandon his due process theory (Pl. Opp. at p. 11).

Plaintiff raises three "public policies" that he contends that the settlement agreement purportedly violates.[3] He contends that foreign service officers should "not to be punished for stating opinions,"; that they should "be given some deference while they are serving overseas, particularly in difficult, dangerous and isolated posts"; and that they "have the right of judicial review to challenge improper actions by the Department."

---

[3] Plaintiff fails to offer any legal authority explaining the circumstances in which contracts that contravene a clearly established public policy are unenforceable. For a general discussion of the pertinent doctrine, see Restatement (Second) Contracts § 178 et seq.; Williston on Contracts § 12:1 et seq.; Town of Newton v. Rumery, 480 U.S. 386, 392 (1987); Kaiser Steel Corp. v. Mullins, 455 U.S. 72 (1982).

Contrary to plaintiff's assertion, the settlement agreement does not violate or even implicate the public policies asserted by plaintiff. There is no support in the record that the settlement agreement was a punishment for stating opinions or failure by the Department to exercise deference to foreign postings, or to eliminate plaintiff's right to challenge allegedly improper Department actions in court. On the contrary, the settlement agreement extended plaintiff's time in class until December 31, 2005 and rescinded his separation out for low ranking so that plaintiff could retire with full retirement benefits. This was a significant benefit to the plaintiff since Department regulations at the time did not give the FSGB the authority to order interim relief pending the outcome of the grievance. Absent the agreement, plaintiff would have been selected out without full retirement benefits.

The American Jurisprudence provision cited by plaintiff provides no solace. It does not prevent an agreement to resolve disputed claims to avoid the risks of continued litigation as suggested by plaintiff. Rather, 20 Am. Jur. 2d Courts § 96 addresses generally contracts that prevent access to the courts for future conduct or potential liability not relevant here. Nothing in the settlement agreement seeks to preclude judicial review of enforcement of the contract or review of claims that arise after the contract was entered. However, jurisdiction does

5

not lie in this Court. 28 U.S.C. § 1346(a)(2).

Plaintiff's claim of duress is predicated on the limited time he had to consider the settlement proposal and that the FSGB did not have the statutory authority to grant interim relief for his selection out pending resolution of his grievance before the FSGB.  As explained in the defendants' motion, these facts are insufficient to state a claim of duress (Defs. Mem. at 9-11.). The plaintiff may have had a difficult decision to make, but the circumstances reflect the routine and standard operation of the statutory and regulatory provisions applicable to all Foreign Service Officers and plaintiff in particular.[4]  Plaintiff fails to identify any improper conduct on the part of the Department in offering the settlement.  Plaintiff's real complaint is with the limited powers granted to the FSGB by statute.

Plaintiff also suggests for the first time that the settlement agreement is void because he received no consideration.  Plaintiff argues, from evidence that is not part of the administrative record, that his 2002 and 2003 low-rankings, and his designation for separation from the Foreign Service, were unwarranted.  Thus, he contends that, "the State Department had nothing to offer in terms of offering a settlement agreement to me since the Department had absolutely no basis for

---

[4] We also note that plaintiff did not sign the settlement agreement until July 14, 2005, thirteen days after the settlement was proposed (Defs. Mot., Ex. 1 (Settlement Agreement)).

6

terminating me."  While the Department maintains that there was nothing improper about plaintiff's low-rankings and designation for separation out, the consideration provided by the settlement agreement was continued employment until the time that plaintiff would qualify for full retirement benefits and the elimination of any risks associated with losing his grievance at the FSGB. Plaintiff does not dispute that he received those benefits.  The suggestion that he received no consideration should be dismissed out of hand.

Plaintiff also contends that the settlement offer was made in bad faith, because if the separation was justified the Department should not have offered to keep him on as an employee for an additional half year.  Plaintiff's logic is certainly not compelling.  It ignores the public policy in favor of resolving rather than litigating disputes which is embodied in Rule 408 of the Federal Rules of Evidence and the good faith in the Department's offer which protected the plaintiff's full retirement benefits and permitted him to finish his tour in Kinshasa for several months.

**II.  Plaintiff Fails to Demonstrate That FSGB's Decision Is Arbitrary, Capricious or Contrary to Law.**

**A.  Plaintiff's FSGB Appeal is Barred by the 2005 Settlement Agreement.**

The undisputed evidence demonstrates that the 2005 settlement agreement covers the grievances he litigated through

7

the FSGB, including the 2003 selection out which is the subject of this appeal (See Defs. Ex. 1 (plaintiff "agrees . . . [t]hat this agreement is in full settlement of any and all claims, administrative or judicial, against the Department with the exception of any claims(s) filed under 22 U.S.C. § 4132"). Having received the benefit of this agreement, plaintiff cannot bring an affirmative claim to nullify the agreement nor can he avoid enforcement of the contract's clear terms when raised by defendants as a defense. See Bennett Enterprises v. Domino's Pizza, Inc., 794 F.Supp 434, 438 (D.D.C. 1992); Weaver v. Bratt, 421 F.Supp. 2d 25, 34 (D.D.C. 2006). Thus, plaintiff's present challenge to the decision of the FSGB is barred by the settlement agreeement.

**B.    The FSGB's Handling of Discovery Was Proper.**

Plaintiff is disingenuous when he argues that he faced "an impossible burden" because he "could no[t] go outside the EERs." He asserts only a half truth when he states that the FSGB "denied my discovery request, which was the only mechanism I had for submitting additional evidence outside of my initial submission." While the FSGB did deny plaintiff's excessive discovery request which included 900 interrogatories, it gave him every opportunity to either justify the need for his interrogatories beyond the regulatory limit of 30 or to offer a narrowed request (AR 465). Moreover, the record is clear that plaintiff could have gone

outside the EERs to obtain evidence and that he did have a mechanism for submitting additional evidence (AR 465-477).  He simply failed to avail himself of those opportunities.  The decision of the FSGB concerning plaintiff's discovery requests was neither arbitrary, capricious or contrary to law.

### C. **The FSGB's Decision on the Merits Was Not Arbitrary or Capricious.**

Plaintiff completely fails to explain how the FSGB decision is arbitrary or capricious, particularly given the deferential standard of review for employee evaluations by the FSGB (AR 538.).  Instead, plaintiff simply concludes that "the record is clear enough that several of my EERs, particularly the EERs from China had omissions and contained falsely prejudicial statements."  This conclusionary statement is not borne out by the record, and it is insufficient to warrant reversal of the Board's decision under the APA.  The question is not whether the FSGB could have granted plaintiff's grievance, but whether it was arbitrary and capricious not to.

Plaintiff cites to a statement nominating him for an award (AR 137-142), comments from Consul General Martin submitted to plaintiff's rating official (AR 156-157), a statement from a colleague stationed with plaintiff in China (AR 245), and a series of memos between plaintiff and his rating official (AR 158-164)in support of his position.  Plaintiff fails to explain how these materials undermine the FSGB's decision.  In fact, most

of these statements have no bearing at all on the accuracy or adequacy of plaintiff's performance evaluations, and none contradict any of the statements in those evaluations.

Plaintiff argues that 22 U.S.C. § 3905(b)(3) protects the right of foreign service officers to voice dissenting opinions, and thus criticisms in his evaluations that he included "inappropriate" and "editorial" comments in memos and communications was improper.  This argument is baseless.  Plaintiff acknowledges that he failed to raise this issue before the FSGB.  Moreover, plaintiff appears to have a fundamental misunderstanding of the appropriate ways to voice dissenting views within the State Department.  The Department has a formal dissent channel for communicating disagreements with United States foreign policy, see 2 FAM 070 (Defendants Exhibit 1 attached), but plaintiff does not contend and fails to demonstrate that he submitted comments through the dissent channel or that his evaluations amount to reprisal for his use of the dissent channel. Id.  The Department also encourages employees to voice their views as policy is being formulated and a course of action chosen.  However, neither the availability of the dissent channel nor the encouragement of open debate and discussion excuse unprofessional conduct or permit a foreign service officer to editorialize or note disagreements in communications that are meant to voice official policy or to

explain a course of action that has already been vetted and approved. All of the evaluation excerpts cited by plaintiff take him to task not for voicing his own opinions, but for doing so in unprofessional, counterproductive ways. Plaintiff fails to point to evidence that the critiques he cites were inaccurate or falsely prejudicial within the meaning of 22 U.S.C. §4131(a)(1)(A). To the contrary, the criticisms of plaintiff's communication style that he cites are consistent with and supported by concrete examples (AR 24, 25, 67). Plaintiff once wrote to his Embassy's Executive Officer that another officer had "decided . . . to take the bean-counter approach and screw me out of several hundred dollars." Commenting in his evaluation, plaintiff's rating official noted that, "On occasion, however, Mr. Wright displays questionable judgment in the way he makes a point." (AR 67). The next year's review took plaintiff to task for overly blunt, raw missives (AR 78-80). Here we include one of the review's two specific examples: "In a letter Mr. Wright drafted for the Consul General, he questioned a Chinese decision by writing, 'We prefer to be told the real reason something is not being done, as opposed to being given excuses . . .'" (AR 79). Plaintiff wrote a similar memo the following year, explaining his plan to dress-down a Chinese official: "I plan to tell Mr. Fu at this meeting that this sort of message is disrespectful, dishonest, dissembling and means that we cannot

11

believe anything the FAO tells us in the future." (AR 24-25.) A draft cable supporting the nomination of an artist for an international visitor grant was overly casual, with gratuitous asides about plaintiff's own lack of art knowledge and his appreciation for erotic content in art as someone "who dwells in the gutter (and likes it) . . . ." Id.[5]

The criticism contained in his evaluations was far more sweeping than just his writing style. The Department's grievance staff noted a consistent problem with "accepting guidance." (AR 15.) Thus, plaintiff's rating official wrote in one EER that, "[w]hen I complimented him on improvements in his performance, he responded that nothing he did professionally had any relation to suggestions I made, because he had no regard for my opinion." (AR 80.) The reviewing official confirmed that "there is an awkward aspect which emerges when reviewing operations and performance with Mr. Wright, and that is that he will frequently respond that he doesn't care what he the DPAO or PAO opinion

---

[5] These examples are all from plaintiff's posting to China, the only time period plaintiff chooses to address. But earlier evaluations noted problems with plaintiff's written communication as well. His EER for 4/86-2/87 (AR 112) stated that, "His memoranda tended to be extremely long and detailed at the beginning, with the main points buried in verbiage. Also, his writing style reflected knowledge of legalese not suited to foreign service needs." Finally, plaintiff's EER for 5/89-5/90 (AR 124) includes "One minor criticism: his writing lately in AmPart reports has included too much informal language that I need to edit out before preparing the final, country-wide version."

might be, he is just doing what has always done in terms of the job." (AR 81.) Other comments note that frustrations with the job "leads him to throw up his hands in despair. As a result, some of his efforts have been half-hearted continuation of existing programs." (AR 90.) There are criticisms for ignoring agency regulations (AR 79), poor time management and prioritization (AR 66), poor supervisory and management skills (AR 68), and a failure to adjust to the "protocolary demands" of the Foreign Service or to exhibit a "sophisticated approach to representation" or "sensitivity to social usages" (AR 112).

In sum, there was ample basis for the FSGB to conclude that plaintiff had not met his burden of proof in challenging his evaluations and low-rankings. Plaintiff, by contrast, fails to provide any basis in the record for concluding that the FSGB's decision was arbitrary, capricious or contrary to law.

## Conclusion

For the reasons stated herein and in defendants' motion to dismiss and for summary judgment, the Court should enter judgment in favor of defendants.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

OF COUNSEL:
DAVID HUITEMAN
Department of State

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was served by First Class mail to:

PHILLIP E. WRIGHT
4260 Franklin Street
China Grove, NC 28023

and by email at: <u>pwrightjr1@yahoo.com</u>

on this _____ day of February, 2007.

                        \_\_/s/_____
                        DIANE M. SULLIVAN
                        Assistant United States Attorney
                        Judiciary Center Building
                        555 Fourth Street, N.W.
                        Room E4919
                        Washington, D.C. 20530
                        (202) 514-7205