**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PHILLIP E. WRIGHT,**<br><br>   **Plaintiff**<br><br>   v.<br><br>**FOREIGN SERVICE GRIEVANCE BOARD, et al.**<br><br>   **Defendants** | **Civil Action No.  06-0526 (JDB)** |

<u>**MEMORANDUM OPINION**</u>

     Plaintiff Phillip E. Wright is a former member of the Foreign Service who resigned from his position as a Public Affairs Officer in Kinshasa, Congo, on July 14, 2005, pursuant to the terms of a settlement agreement he reached with the State Department.  The settlement agreement provided, in part, that plaintiff would relinquish all future administrative and judicial claims against the State Department.  Prior to his resignation, plaintiff had filed a grievance appeal with the Foreign Service Grievance Board ("FSGB") on March 6, 2002, requesting that the State Department expunge or otherwise amend allegedly inaccurate and falsely prejudicial material in his official personnel file.  Plaintiff, proceeding <u>pro se</u>, now brings this action against the FSGB, the State Department, and Condoleeza Rice in her official capacity as United States Secretary of State in part as an appeal of the FSGB's July 8, 2003 denial of plaintiff's grievance. Plaintiff also seeks a declaratory judgment that the July 14, 2005 settlement agreement is void (1) for being signed under duress, (2) for lack of consideration, (3) as against public policy, or (4) as a violation of due process.

Defendants move for summary judgment on plaintiff's challenge to the FSGB's July 8, 2003 decision (herein referred to as Count II), asserting that it is barred by the settlement agreement.  Defendants further contend that even if the settlement agreement did not bar plaintiff's action, the FSGB's decision was neither arbitrary, capricious, an abuse of discretion, nor otherwise contrary to law.  Defendants also move pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss plaintiff's claim for rescission of his July 14, 2005 settlement agreement (herein referred to as Count III), alleging that the Court lacks subject-matter jurisdiction to entertain the claim and that plaintiff has failed to state a claim upon which relief may be granted. In addition, plaintiff has filed a motion for summary judgment as part of his opposition.

Upon consideration of the parties' submissions and for the reasons set forth below, the Court will grant defendant's motion for summary judgment on Count II.  The Court will also grant defendant's motion to dismiss plaintiff's Count III non-constitutional challenges to the settlement agreement for lack of subject-matter jurisdiction.  The Court will grant defendant's motion to dismiss plaintiff's Count III constitutional claim -- that the FSGB statutory scheme violates due process -- for failure to state a claim upon which relief may be granted.  Finally, the Court will deny plaintiff's motion for summary judgment.

## BACKGROUND

Plaintiff Phillip E. Wright began his employment with the Foreign Service of the United States Information Agency ("USIA") in 1985.[1]  A.R. 44.  From 1985 to 1997, plaintiff served in field offices in South Africa, Macedonia, and China, as well as in the USIA Operations Center in Washington, D.C.  See A.R. 44-48.  Plaintiff then took an extended period of leave without pay

---

[1] On October 1, 1999, the USIA merged with the State Department.

before beginning work in the State Department Declassification Center in 1999.  Pl.'s Ex. 1 at 14.

The material events in the present action began when plaintiff received a "low ranking" by the 2000 Selection Board (SB) and was referred to the 2000 Performance Standards Board (PSB).  A.R. 44-49; 170-72.  The 2000 PSB issued plaintiff a "Designation for Separation," mandating his "selection out" of the Foreign Service for failure to maintain the standards of performance required of his class.  A.R. 44-49.  The Foreign Service utilizes an "up or out" personnel system, see Molineaux v. United States, 12 F.3d 264, 265 (D.C. Cir. 1994), whereby each year an SB reviews employees of the same grade for promotion and ranks "in order of merit those members recommended for immediate promotion."  Defs.' Ex. 4 at 7.  Each member reviewed for promotion is also reviewed for low ranking, and the SB must low rank five percent of the officers in each class reviewed.  A.R. 170; see also 22 U.S.C. §§ 4002-03; Defs.' Ex. 4 at 8.  The SB rankings are based largely upon annual Employee Evaluation Reports ("EERs").  See A.R. 56, 63-64, 165-172; see also Pl.'s Ex. 1 at 5-10; Defs.' Ex. 3 at 3; Defs.' Ex. 4 at 2.  The SB refers employees with the lowest rankings to the PSB, which may recommend that the Foreign Service Officer (FSO) be selected out.  See 22 U.S.C. § 4008; see also Defs.' Ex. 4 at 9; Defs.' Ex. 5 at 3-5.  Regardless of whether an FSO is selected out, those who are not promoted from one class to the next within a specified amount of time ("time in class") are automatically retired. See 22 U.S.C. § 4007(c).

If a member of the Foreign Service wishes to contest an EER as inaccurate, incomplete, or falsely prejudicial, or wishes to challenge a PSB Designation for Separation as contrary to law or predicated upon an alleged inaccuracy, omission, error, or falsely prejudicial information, he may file an agency-level grievance with the State Department.  3 Foreign Affairs Manual

("FAM") § 4412(c)(1), (5); 22 U.S.C. § 4131(a)(1)(A), (E); 22 C.F.R. § 901.18(a)(1), (5) (2007); 3 FAM § 4431-34.  The State Department will review the grievance and issue a decision "within 90 days from the date of receipt of the initial written presentation of the grievance."  3 FAM § 4434.4(a).  If a grievant is unsatisfied with the State Department's resolution of his grievance, he may appeal to the FSGB within sixty days.  3 FAM § 4451-52; 22 C.F.R. § 903.1 (2007).

In accordance with this procedure, plaintiff filed a grievance with the State Department on May 9, 2001, contesting his 2000 Designation for Separation; the low rankings he received in 1996, 1997, 1999, and 2000; and eight EERs spanning rating periods from 1986 to 1995.  See A.R. 30-43.  Upon examination of plaintiff's grievance, the State Department determined that there were "major procedural errors" in one of plaintiff's EERs, and ordered that the EER be expunged from plaintiff's official personnel file.  A.R. 07-08; 222-23.  Because the 2000 SB and 2000 PSB had drawn upon this EER in their assessments of plaintiff, the State Department issued an interim decision on June 19, 2001, rescinding plaintiff's 2000 Designation for Separation and deleting plaintiff's 2000 low ranking from its records.  Id.  However, on December 28, 2001, the State Department denied plaintiff's request to expunge or amend the remaining seven contested EERs, as well as his request to delete his 1996 and 1999 low rankings.  A.R. 206-15.

Plaintiff appealed the partial denial of his grievance to the FSGB on March 6, 2002, seeking to have four EERs covering his service in China expunged in their entirety and three others (two from his service in Macedonia and one from his service in South Africa) amended. A.R. 02-06; 201; 530.  Plaintiff further challenged his 1996 and 1999 low rankings on the grounds that they were both based upon the contested EERs, and on the basis that the 1999 SB Chairperson harbored personal hostility towards him.  Id.  On March 26, 2002, plaintiff

-4-

submitted a discovery request to the State Department seeking to propound 945 interrogatory questions to forty-six individuals. A.R. 269-442. The State Department objected to plaintiff's request as unduly broad and in excess of the standard thirty-interrogatory limit. A.R. 443-46. After a lengthy debate between plaintiff and the State Department over the number of allowable interrogatories, the FSGB issued a final decision on October 1, 2002, mandating that plaintiff submit a revised list of thirty interrogatories within fifteen days. A.R. 447-92. When plaintiff failed to comply, the FSGB deemed discovery closed on December 2, 2002. A.R. 500-07.

On July 8, 2003, the FSGB issued its decision denying plaintiff's appeal in full. A.R. 527-42. First, the FSGB denied plaintiff's request to remove or amend his seven contested EERs, holding that the "EERs met the general standards for its review of employee evaluations." A.R. 529; see also A.R. 533-36. Because the validity of the EERs was affirmed, the FSGB found no basis upon which to expunge plaintiff's 1996 low ranking. See A.R. 536. Finally, the FSGB rejected plaintiff's argument that his 1999 low ranking should be deleted, finding no evidence that "an adversarial relationship ever existed" between plaintiff and the 1999 SB Chairperson. A.R. 536-37.

While the FSGB appeal was pending, plaintiff received a low ranking by the 2002 SB. Pl.'s Ex. at 3-6. The 2002 SB "commend[ed] Mr. Wright's work in the Declassification Unit," but nonetheless found that plaintiff was not "on a par with his class," since he "ha[d] not had a recent opportunity to manage public diplomacy programs abroad." Pl.'s Ex. at 5. Plaintiff was subsequently given this opportunity when he was sent to a new post in Kinshasa, Congo, but he was again low-ranked by the 2003 SB, which "called into question his interpersonal skills." Pl.'s Ex. 1 at 9-10. Because plaintiff had received more than one low ranking in five years, he was

automatically referred to the 2003 PSB in accordance with State Department policy.  Pl.'s Ex. 1 at 7; see also Defs.' Ex. 4 at 9.  After reviewing plaintiff's personnel records in their entirety, the 2003 PSB designated plaintiff for selection out.  Pl.'s Ex. 1 at 13-16.  On April 1, 2005, plaintiff filed a grievance seeking agency review of his 2002 and 2003 SB low rankings as well as his 2003 PSB Designation for Separation.  Pl.'s Ex. 1 at 23-33.  Plaintiff's separation was held in abeyance while the State Department considered the merits of his grievance, see Pl.'s Ex. 1 at 35, but State Department regulations in effect at the time provided that the separation would become effective once the agency issued its decision and the grievance process was no longer "pending at the initial level below appeal."  Defs.' Ex. 5 at 5.[2]

On July 1, 2005 -- before the State Department had issued a final decision on plaintiff's grievance -- plaintiff received an e-mail explaining that the State Department was "prepared to issue a decision denying [his] grievance" and warning plaintiff that "[o]nce our decision issues you will lose your entitlement to interim relief because the FSGB lacks the authority to grant such relief."  Pl.'s Ex. 1 at 35.  While affirming plaintiff's "right to appeal our decision to the FSGB," which would then "be obligated to make you whole retroactively . . . if you should prevail before the Board," the State Department proposed instead that plaintiff settle his grievance "according to the following general terms: the Department agrees to extend your appointment until your 20-year date, you agree to retire from the Foreign Service on hitting your 20-year date, you forego all claims against the Department (except the statutory right of a former

---

[2] This process has been slightly modified since plaintiff filed his 2005 grievance.  Under the regulations now in effect, the FSGB has authority to suspend a separation related to a pending grievance "until the date which is one year after such determination or until the Board has ruled upon the grievance, whichever comes first."  22 U.S.C. § 4136(8).

member to grieve financial claims) to include withdrawing the subject grievance."  The e-mail

further explained that since time was "very much of the essence here," plaintiff would have until

July 6, 2005 to consider the proposal and that absent a response, the decision denying his

grievance would issue.  Id.

On July 14, 2005, plaintiff entered into a settlement agreement with the State Department.

Pl.'s Ex. 1 at 1-2; Defs.' Ex. 1 at 1-2.  According to the text of the agreement, the Department of

State agreed "(1) [t]o rescind the 2003 Designation for Separation" and "expunge it from its

records" and "(2) [t]o extend Mr. Wright's Time-in-Class from December 3, 2005 until December

31, 2005."  Id.  In exchange, plaintiff agreed (1) to submit "an unconditional and irrevocable

application for voluntary retirement to be effective no later than December 31, 2005,"; (2) to

forego review "by the Department Selection Boards, including 2004 or 2005 Selection Boards";

(3) to withdraw his 2005 grievance "as being settled in full and all matters raised and documents

grieved shall not form the basis of any other grievance, discrimination complaint or other

complaint, or adjudicative proceeding, including any processing before the Equal Employment

Opportunity Commission or any court"; and (4) "That this Agreement is in full settlement of any

and all claims, administrative or judicial, against the Department with the exception of any

claim(s) filed under 22 U.S.C. [§] 4132."[3]  Id.  The language of the settlement agreement further

states that "nothing herein is intended to preclude Mr. Wright from filing a grievance in the event

the Department does not comply with the terms of this Agreement."  Id.  On March 21, 2006,

plaintiff filed the present action in this Court seeking (1) an appeal of the FSGB's July 8, 2003

---

[3]That provision authorizes retired foreign service officers to file grievances related to
their post-employment benefits, which is not at issue in this case.  See 22 U.S.C. § 4132; see also
22 U.S.C. § 4131(a)(1)(G).

decision (Count II) and (2) rescission of the July 14, 2005 settlement agreement (Count III).[4]

## STANDARD OF REVIEW

### I.    Rule 12(b)(1)

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court --

plaintiff in the present action -- bears the burden of establishing that the court has jurisdiction.

See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000) (citing Steel Co.

v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998)); see also Grand Lodge of Fraternal

Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("[A] Rule 12(b)(1) motion

imposes on the court an affirmative obligation to ensure that it is acting within the scope of its

jurisdictional authority."); Pitney Bowes, Inc. v. U.S. Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C.

1998).  However, when a plaintiff proceeds pro se, his "complaint is held to a less stringent

standard than formal pleadings drafted by lawyers."  Chandler v. Roche, 215 F. Supp. 2d 166,

168 (D.D.C. 2002); see also Hughes v. Rowe, 449 U.S. 5, 9 (1980).  Thus, a pro se plaintiff's

failure to proffer a proper basis for invoking subject-matter jurisdiction will not prove fatal if a

valid basis for the exercise of jurisdiction exists.

Although a court must accept as true all the factual allegations contained in the complaint

when reviewing a motion to dismiss pursuant to Rule 12(b)(1), Leatherman v. Tarrant County

Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), "'plaintiff[s'] factual

allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in

---

[4]In his prayer for relief, plaintiff also requests that "the 2003 Performance Standards Board Designation for Separation be dismissed."  Compl. at 4.  Plaintiff's 2003 PSB Designation for Separation was, in fact, already rescinded under the terms of the July 14, 2005 settlement agreement he entered into with the Department of State.  Pl.'s Ex. 1 at 1-2; Defs.' Ex. 1 at 1-2.

resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14

(quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d

ed. 1990)).  At the stage of litigation when dismissal is sought, a plaintiff's complaint must be

construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can

be drawn from the alleged facts.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621,

624 (D.C. Cir. 1997).  Additionally, a court may consider material other than the allegations of

the complaint in determining whether it has jurisdiction to hear the case, as long as it accepts the

factual allegations in the complaint as true.  See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d

1249, 1253-54 (D.C. Cir. 2005); St. Francis Xavier Parochial Sch., 117 F.3d at 624-25 n.3;

Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992); Haase v. Sessions, 835 F.2d

902, 906 (D.C. Cir. 1987); Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986).

## II.    Rule 12(b)(6)

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a

short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell

Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47

(1957)); accord Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam).  Although

"detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to

provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp., 127

S. Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, the complaint's

"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl.
Corp., 127 S. Ct. at 1965 (citations omitted). Hence, although "a well-pleaded complaint may
proceed even if it strikes a savvy judge that actual proof of those facts is impossible, and 'that a
recovery is very remote and unlikely,'" id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236
(1974)), the "threshold requirement" of Fed. R. Civ. P. 8(a)(2) is "that the 'plain statement'
possess enough heft to 'sho[w] that the pleader is entitled to relief,'" id. at 1966 (quoting Fed. R.
Civ. P. 8(a)(2)).

When the sufficiency of a complaint is challenged by a motion to dismiss under Rule
12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally
construed in his or her favor. Leatherman, 507 U.S. at 164; Phillips v. Bureau of Prisons, 591
F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 127 S. Ct. at 2200 (citing Bell Atl. Corp., 127
S. Ct. at 1965)). The plaintiff must be given every favorable inference that may be drawn from
the allegations of fact. Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d
1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs
if such inferences are unsupported by the facts set out in the complaint. Nor must the court
accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'n Corp.,
16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830,
837 (D.D.C. 1996) (citing Papasan, 478 U.S. at 286).

Finally, the party invoking federal jurisdiction bears the burden of establishing "the
irreducible constitutional minimum of standing." Lujan v. Defenders of Wildlife, 504 U.S. 555,
560 (1992). In order to establish Article III standing, "'[a] plaintiff must allege personal injury
fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the

requested relief.'" <u>Dep't of Commerce v. U.S. House of Representatives</u>, 525 U.S. 316, 329

(1999) (quoting <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984)).  Specifically, standing to bring a

constitutional claim requires (1) "injury in fact" which is (a) "concrete and particularized" and (b)

"actual or imminent, not 'conjectural' or 'hypothetical'" as well as (2) a "causal connection

between the injury and the conduct complained of." <u>Lujan</u>, 504 U.S. at 561; <u>see also</u> <u>Dep't of</u>

<u>Commerce</u>, 525 U.S. at 329.  Although "mere allegations of injury are insufficient" to withstand

a Rule 56 motion for summary judgment, <u>id.</u>, "[a]t the pleading stage, general factual allegations

of injury resulting from the defendant's conduct may suffice." <u>Lujan</u>, 504 U.S. at 561.

### III.    Rule 56(c)

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact. See <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The moving party may successfully support its

motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." <u>Id.</u> (quoting Fed. R. Civ. P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-movant's statements as true and accept all

evidence and make all inferences in the non-movant's favor. See <u>Anderson v. Liberty Lobby,</u>

<u>Inc.</u>, 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the

"mere existence of a scintilla of evidence" in support of its position. <u>Id.</u> at 252.  "If the evidence

is merely colorable, or is not significantly probative, summary judgment may be granted."
Anderson, 477 U.S. at 249-50 (citations omitted).  Summary judgment is appropriate if the
non-movant fails to offer "evidence on which the jury could reasonably find for the
[non-movant]."  Id. at 252.  Finally, because "a motion for summary judgment represents a
decision on the merits," a court cannot grant a motion for summary judgment until jurisdiction is
established.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

### I.    Plaintiff's Challenges to the July 8, 2003 FSGB Decision

22 U.S.C. § 4140 permits an "aggrieved party" to obtain "judicial review of a final action
of the Secretary [of State] or the [Foreign Service Grievance] Board on any grievance in the
district courts of the United States."  A federal district court reviewing a final action of the FSGB
must do so in accordance with the standards articulated by "Section 706 of Title 5 . . . without
limitation or exception."  Id.  As set forth in 5 U.S.C. § 706(2)(A), a district court shall hold
unlawful and set aside final agency action "found to be . . . arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law."  District courts shall additionally set aside
any final FSGB action that is "contrary to a constitutional right," § 706(2)(B), "without
observance of procedure required by law," § 706(2)(C), or "unsupported by substantial
evidence."  § 706(2)(E).  This deferential standard of review reflects "a legislative judgment that
the [Foreign Service Grievance] Board's familiarity with the foreign service ought to be respected
by the judiciary."  United States v. Paddack, 825 F.2d 504, 514 (D.C. Cir. 1987).

Pursuant to § 4140, plaintiff seeks judicial review of the July 8, 2003 FSGB decision
denying his grievance appeal requesting that allegedly inaccurate and falsely prejudicial material

in his personnel file be removed or amended. See A.R. 527-42; Compl. at 1. In this count

(Count II), plaintiff articulates five bases for his challenge to the FSGB decision. Plaintiff asserts

claims that (1) the FSGB acted arbitrarily and capriciously when it prevented him from

propounding over 900 interrogatories, thereby denying him "the opportunity to develop evidence

that would demonstrate the existence of prejudicial material in plaintiff's official personnel file";

(2) the FSGB did not "adjudicate plaintiff's grievance fairly, thereby violating the standards of 5

USC 706"; (3) the decision of the FSGB "is unsupported by and contrary to the evidentiary

record developed before the FSGB"; (4) the FSGB decision "violates the standards of due

process guaranteed by 22 USC 4008[5] and by the Fifth Amendment of the United States

Constitution"; and (5) the FSGB "violated standards of due process by improperly delegating its

fact-finding and decision-making powers to Board staff personnel." Compl. at 1-2.

Defendants, however, respond that plaintiff is precluded from raising any challenges to

the July 8, 2003 FSGB decision by the July 14, 2005 settlement agreement he reached with the

Department of State. See Defs.' Mem. in Support of Mot. to Dismiss & for Summ. J. ("Defs.'

Mot.") at 19. The text of the agreement states that "this Agreement is in full settlement of any

and all claims, administrative or judicial, against the Department with the exception of any

claims file(d) under 22 U.S.C. 4132." Pl.'s Ex. 1 at 1; Defs.' Ex. 1 at 1. Assuming arguendo that

the agreement constitutes a valid, binding contract, there is no dispute between the parties that

"the claims arising from the grievance against the Department that plaintiff had litigated through

the FSGB prior to the settlement were resolved by the Settlement Agreement." Defs.' Mot. at 19;

---

[5] 22 U.S.C. § 4008 states that a Foreign Service member must have "an opportunity . . . to
be heard" whenever "a selection board review indicates that the performance of such a career
member of the Service may not meet the standards of performance for his or her class."

see also Pl.'s Opp'n to Def.'s Mot. to Dismiss & for Summ. J. ("Pl.'s Opp'n") at 7 ("The whole

point of the [settlement agreement] was for me to give up my right to judicial review of any of

the Department's actions either regarding the grievance leading up to the [settlement agreement]

or the previous FSGB decision."). Where the language of a contract is clear and unambiguous,

and the parties concede their shared understanding of the contract's meaning, the Court "will

assume that the terms of the contract carry their ordinary meaning." King v. Dep't of Navy, 130

F.3d 1031, 1033 (Fed. Cir. 1997); see also Green v. Small, No. 05-CV-1055, 2006 WL 148740,

at *8 (D.D.C. Jan. 16, 2006) (granting summary judgment to defendant where pro se plaintiff

"offered no evidence to contradict the clear scope of the settlement" and thus "failed to raise a

genuine issue as to whether the parties' . . . agreement was intended to settle the . . . claims raised

in his present complaint"). The agreement therefore bars consideration of the merits of plaintiff's

FSGB appeal so long as the agreement is not otherwise void or voidable.

Plaintiff argues that the July 14, 2005 settlement agreement is, in fact, void (1) for being

signed under duress, (2) for lack of consideration, (3) as against public policy, or (4) as a

violation of due process. See Compl. at 3-4. Because "[a]n agreement to settle a legal dispute is

a contract," this Circuit has held that "the enforceability of [a] settlement agreement[] . . . is

governed by familiar principles of contract law." Vill. of Kaktovik v. Watt, 689 F.2d 222, 230

(D.C. Cir. 1982). The settlement agreement in the present action is not a contract between two

private parties, but a contract between one private party and a federal agency. Therefore, the

agreement -- like any contract with the federal government -- is governed by federal common

law. A&S Council Oil Co., Inc. v. Saiki, 799 F. Supp. 1221, 1230 (D.D.C. 1992), rev'd &

remanded on other grounds sub nom. A&S Council Oil Co., Inc. v. Lader, 56 F.3d 234 (D.C. Cir.

-14-

1995). This Court will thus assess the validity of the July 14, 2005 settlement agreement in

accordance with federal common law and traditional principles of contract interpretation.[6]

### A.    Lack of Consideration

Plaintiff first argues that the settlement agreement is void "in that there was no

consideration on the Defendants' part in offering" the agreement. Pl.'s Opp'n at 3. According to

plaintiff, there was "absolutely no justification" for the low rankings he received from the 2002

and 2003 SBs, nor was there a basis for his 2003 PSB Designation for Separation. Id. at 2.

Hence, "the State Department had nothing to offer in terms of . . . a settlement agreement . . .

since the Department had absolutely no basis for terminating" plaintiff. Id. at 5. This argument

is simply without merit. In return for plaintiff's agreement to voluntarily retire and forego "all

claims" against the State Department, the State Department agreed to expunge plaintiff's 2003

Designation for Separation and extend his "Time-in-Class" from December 3, 2005 until

December 31, 2005 -- thereby enabling plaintiff to reach his "20-year date" as a member of the

Foreign Service and receive the resulting financial benefits. See Pl.'s Ex. 1 at 1, 35; see also

Defs.' Ex. 1 at 1. Without this agreement, plaintiff would have faced immediate termination if

and when the State Department denied his grievance. Moreover, if the FSGB had found against

plaintiff on any grievance appeal he chose to file, plaintiff would never have reached his "20-year

date" with the Foreign Service and would never have received the financial benefits provided to

him under the terms of the settlement agreement. In other words, the agreement afforded

plaintiff the only possible guarantee that he would receive full retirement benefits regardless of

---

[6]The Court addresses the validity of the settlement agreement here for the limited purpose of determining whether plaintiff's challenge to the July 8, 2003 FSGB decision, which he has brought pursuant to 28 U.S.C. § 4140, is barred by that agreement. See infra note 8.

the disposition of his 2005 grievance.  There is no indication that the State Department has failed

to satisfy its obligations to provide plaintiff with those benefits.  On the other hand, the State

Department benefitted from the settlement agreement by achieving a clean resolution of the

dispute with plaintiff and, it believed, avoiding continuing litigation.  Consequently, the

settlement agreement is not void for lack of consideration.

**B.    Duress**

Plaintiff further contends that the settlement agreement should be declared "null and

void" for being signed under duress.  In support of this claim, plaintiff argues that the

Department's proposal -- which gave him from July 1, 2005, to July 6, 2005 "to decide whether

to sign a settlement agreement or to face immediate dismissal from the Foreign Service" --

denied plaintiff the "time and  . . . the means to research his options," and was inherently

coercive.  Compl. at 3.  Because the FSGB was not yet empowered to stay separations from the

Foreign Service pending grievance appeals, see Defs.' Mot. at 4, plaintiff alleges that he faced the

"threat of imminent dismissal and loss of retirement benefits" if he chose not to sign the

settlement agreement.  Compl. at 3.  According to plaintiff, the existence of this flawed statutory

scheme, in conjunction with the limited time for consideration, prevented plaintiff from making

"a rational and informed decision."  Id.

It is well-established that "[a] party induced to enter a settlement agreement because of

duress may be entitled to relief."  Am. Sec. Vanlines, Inc. v. Gallagher, 782 F.2d 1056, 1060

(D.C. Cir. 1986).  Specifically, "i[f] a party's manifestation of assent is induced by an improper

threat by the other party that leaves the victim no reasonable alternative, the contract is voidable

by the victim."  Restatement (Second) of Contracts § 175 (1981); see also 28 Samuel Williston &

-16-

Richard A. Lord, A Treatise on the Law of Contracts, § 71:8 (4th ed. 2000) ("[A] party coerced into entering a contract has a right to avoid or rescind the transaction").  However, it is also well-established that a victim of duress may be held to have "ratif[ied] the agreement by accepting its benefits."  Goldstein v. S&A Restaurant Corp., 622 F. Supp. 139, 144-45 (D.D.C. 1985) (internal quotation marks omitted).  In other words, because economic duress merely renders a contract voidable -- as opposed to void -- a plaintiff who accepts the benefits of a contract entered into under economic duress cannot later seek to have the contract rescinded.  Restatement (Second) of Contracts §174, cmt. b (1981); see also Restatement (Second) of Contracts § 380(1); VKK Corp. v. Nat'l Football League, 244 F.3d 114, 123 (2d Cir. 2001); Abadessa v. Moore Bus. Forms, Inc., 987 F.2d 18, 23 (1st Cir. 1993); 28 Williston & Lord, supra, § 71:8.  Since plaintiff ratified his July 14, 2005 settlement agreement by continuing his service as an FSO through December 31, 2005 at full salary and subsequently collecting retirement benefits, he cannot now seek to have the agreement declared void on account of duress.[7]

---

[7] The Court further notes that plaintiff has not alleged facts sufficient to demonstrate that he had "no realistic alternative" but to resign, nor has he shown that his resignation was the result of "improper" acts by the Department of State.  See Shoaf v. Dep't of Agric., 260 F.3d 1336, 1341 (Fed. Cir. 2001) (federal employee seeking to demonstrate that he "resigned" involuntarily as a result of duress or coercion must show: "(1) the agency effectively imposed the terms of the employee's resignation or retirement; (2) the employee had no realistic alternative but to resign or retire; and (3) the employee's resignation or retirement was the result of improper acts by the agency").  First, plaintiff did have an alternative to signing the settlement agreement: he was free to decline the proposal, wait for the State Department to deny his grievance, and then file an appeal with the FSGB.  The mere fact that plaintiff was presented with the arguably difficult choice of signing a settlement agreement or foregoing interim relief while the FSGB considered the merits of his grievance appeal does not serve to make plaintiff a victim of duress.  See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1242 (Fed. Cir. 2002).  Second, plaintiff has failed to allege any improper acts by the State Department.  Although the e-mail proposing the settlement agreement warned plaintiff that "Once our decision [denying your grievance] issues you will lose your entitlement to interim relief because the FSGB lacks the authority to grant such relief," Pl.'s Ex. 1 at 35, the State Department in no way "coerced"

C.    **Violation of Public Policy**

Plaintiff's argument that the settlement agreement should be declared "null and void" as a violation of public policy, see Compl. at 3; see also Pl.'s Opp'n at 7, is equally unavailing. Plaintiff articulates three "public policies" which he alleges are violated by the July 14, 2005 settlement agreement: namely, (1) "for FSOs not to [be] punished for stating opinions"; (2) "for FSOs to be given some deference while they are serving overseas, particularly in difficult, dangerous and isolated posts"; and (3) "to have the right of judicial review to challenge the improper actions of the Department." Pl.'s Opp'n at 7. Neither of the first two aforementioned "public policies" are implicated by the settlement agreement. Even if plaintiff's contested EERs were premised upon his outspoken criticisms of agency personnel procedures, see Pl.'s Ex. 9-10, 13-16, there is no evidence that the State Department's proposed settlement agreement was a "punishment" for plaintiff's exercising his right to "state opinions." Similarly, the record is bereft of evidence that the settlement agreement violated the purported "public policy" of giving "deference" to FSOs serving in difficult positions overseas. To the extent that either "public

---

plaintiff into signing the Agreement; it did no more than present plaintiff with a more attractive alternative to availing himself of the statutory procedures available to all FSOs. See Johnson, 531 F.2d at 1043 ("Economic pressure and 'even the threat of considerable financial loss' are not duress"; "'[s]ome wrongful conduct must be shown, to shift to the defendant the responsibility for bargains made by plaintiff under the stress of financial necessity.'" (citations omitted)). Finally, while plaintiff alleges that the five days he was given to consider the proposal constituted wrongful agency conduct, see Compl. at 3; see also Pl.'s Opp'n at 6, plaintiff fails to elucidate why five days was an insufficient amount of time for him to make a "rational and informed" decision regarding the Agreement. Even if, as he contends, plaintiff actually had only two business days to consider the proposal, see Pl.'s Opp'n at 6, there is no indication that plaintiff requested more time and was refused. Given that the actual settlement agreement was not signed until July 14, 2005 -- eight days after plaintiff first communicated his willingness to accept the proposal, see Pl.'s Ex. 1 at 38, -- it seems likely that the State Department would have heeded a request by plaintiff for additional time to assess his options.

policy" is implicated by the agreement at all, it would seem that offering plaintiff an alternative to the FSGB appeal process that enabled him to be employed for the remainder of his time-in-class and receive full retirement benefits actually supported, rather than contravened, the "public policy" of accommodating FSOs serving in difficult positions overseas.

The settlement agreement also does not violate the public policy of protecting the rights of FSOs to obtain judicial review of allegedly improper actions of the State Department. Plaintiff's right to appeal the State Department's denial of his grievance to the FSGB -- and his right to appeal decisions of the FSGB to this Court -- was not jeopardized by the State Department's offer of the settlement agreement. As previously stated, plaintiff was free to decline to enter the settlement agreement and pursue the regular statutory channels for review of agency decisions. Settlements by definition involve an agreement by a party to "extinguish those legal rights it sought to enforce through litigation in exchange for those rights secured by the contract." Vill. of Kaktovik, 689 F.2d at 230. But settlement agreements generally do not contravene "public policy"; to the contrary, this Circuit has held that "[f]ew public policies are as well established as the principle that courts should favor voluntary settlements of litigation by the parties to a dispute." Am. Security Vanlines, 782 F.2d at 1060 (citations omitted). Not only do settlement agreements "produce a substantial savings in judicial resources," but they also "promote efficient use of private resources by reducing litigation and related costs." Id. In order to encourage these public policies, "settlement agreements are to be 'upheld whenever possible.'" Id. (quoting D.H. Overmyer Co. v. Loflin, 440 F.2d 1213, 1215 (5th Cir. 1971)). The Court will therefore not strike down the settlement agreement as a violation of "public policy."

### D.     Violation of Due Process

Plaintiff further alleges that the settlement agreement should be declared void because it "violates standards of due process."  Compl. at 3.  Although plaintiff does not elaborate on his due process argument in his briefs, see Pl.'s Opp'n at 11, the challenge appears to stem from his contention that if he had chosen to appeal the State Department's denial of his grievance to the FSGB (rather than settle his grievance before an agency denial was issued), he would have been "deprived" of a property right without due process of law, because his employment with the Foreign Service would have been terminated before the FSGB decided his appeal.  The FSGB's lack of statutory authority to grant plaintiff interim relief during the pendency of his appeal allegedly "denied plaintiff the right to be heard before any sort of impartial decision-maker before the denial of substantial property benefits."  Compl. at 3.  According to plaintiff, the State Department "used this situation to coerce plaintiff into signing a settlement agreement" and "[a]ccordingly, the settlement agreement signed by the parties in July 2005 . . . violates standards of due process."  Id.  Of course, plaintiff did not go forward with his appeal to the FSGB, and hence he was not actually deprived of any property right even under his strained theory.  In essence, then, plaintiff's "due process" challenge to the settlement agreement is really just a reiteration of his duress claim, which is discussed, and rejected, above.  Therefore, the Court will not declare the settlement agreement "null and void" as a "violation of due process."

The Court has not found any other basis upon which to invalidate the July 14, 2005, settlement agreement, and thus regards the agreement as a binding contract.  Given that plaintiff concedes the agreement was intended to preclude him from raising the claims he now brings in Count II, this Court will grant defendant's motion for summary judgment.

## II.    Plaintiff's Challenges to the July 14, 2005 Settlement Agreement

In Count III of his complaint, plaintiff asks that "the settlement agreement of July 2005 be declared null and void."  Compl. at 4.  Defendants have moved to dismiss this count on the grounds that the Court lacks subject-matter jurisdiction over the claim, and that plaintiff has failed to state a claim upon which relief may be granted.  Defs.' Mot. at 1.  Because subject-matter jurisdiction is a threshold matter that must be established before a court can render a decision on the merits, the Court will consider defendants' Rule 12(b)(1) challenges first.  See United States ex rel. Settlemire v. District of Columbia, 198 F.3d 913, 920-21 (D.C. Cir. 1999).[8]

### A.    Count III Non-Constitutional Claims

Plaintiff alleges that the settlement agreement should be declared "null and void" (1) for being signed under duress, (2) for lack of consideration, (3) as against public policy, and (4) as a violation of due process (Count III).  See Pl.'s Opp'n at 2, 11.  Settlement agreements reached

---

[8] The Court has addressed the merits of plaintiff's challenges to the settlement agreement only insofar as they would provide a basis for invalidating the agreement and thus enable the Court to assess the merits of plaintiff's FSGB appeal (Count II).  Because subject-matter jurisdiction is "determined by looking to the complaint," see Greenhill v. Spellings, 482 F.3d 569, 575 (D.C. Cir. 2007) (citing Tootle v. Sec'y of Navy, 446 F.3d 167, 174 (D.C. Cir. 2006)), this Court may not consider potential defenses -- such as the Government's assertion that the settlement agreement bars plaintiff's action -- in assessing the threshold matter of whether it possesses subject-matter jurisdiction over plaintiff's claims.  See Greenhill, 482 F.3d at 573 (stating that anticipation of Government's defense that settlement agreement barred recovery of money damages and thus defeated Claims Court jurisdiction was not sufficient reason to deny transfer to Court of Federal Claims, since jurisdiction is "an independent, preliminary issue" that must be resolved before "the merits question of whether [plaintiff] is entitled to money damages").  Plaintiff's FSGB appeal as set forth in Count II is properly within the purview of this Court's jurisdiction under 22 U.S.C. § 4140, and this Court therefore has assessed the validity of the settlement agreement for the limited purpose of determining whether the agreement did, in fact, bar consideration of the merits of the plaintiff's FSGB appeal.  The Court cannot, however, issue a declaratory judgment that the settlement agreement is "null and void" unless the Court independently possesses subject-matter jurisdiction over plaintiff's Count III claim.

with federal agencies are considered government contracts for purposes of jurisdictional analyses.  See Shaffer v. Veneman, 325 F.3d 370, 372 (D.C. Cir. 2003).  In order to establish this Court's jurisdiction over a dispute involving a settlement agreement to which the government is a party, a plaintiff must show (1) that the Court "has subject matter jurisdiction over the issues raised by the dispute"; (2) "that the United States has waived [sovereign] immunity for suits of that kind"; and (3) "that the United States has consented to be sued in that particular court." Keith v. U.S. R.R. Retirement Bd., No. 02-CV-1054, 2006 WL 2085389, at *4 (D.D.C. July 25, 2006) (citing Am. Airlines, Inc. v. Austin, 778 F. Supp. 72, 74 (D.D.C. 1991)); see also United States v. Mitchell, 463 U.S. 206, 212 (1983) ("[T]he United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction.").

Therefore, here plaintiff must show both that the United States has waived its sovereign immunity for the type of contract claim being pursued and that the United States has consented to being sued for this claim in federal district court.  See Keith, 2006 WL 2085389, at *5.  Because this Circuit treats constitutional claims involving contracts differently from non-constitutional claims, see Transohio Sav. Bank v. Dir., OTS, 967 F.2d 598, 609 (D.C. Cir. 1992), the Court will first determine whether it possesses subject-matter jurisdiction over plaintiff's non-constitutional challenges to the settlement agreement before assessing whether it may exercise jurisdiction over plaintiff's due process claim.  Since the Court finds that neither the Tucker Act nor the Administrative Procedure Act provides a waiver of sovereign immunity for claims against the United States where a party seeks rescission of a government contract -- as opposed to monetary relief for breach of a contract -- the Court must dismiss plaintiff's Count III non-constitutional challenges to the settlement agreement.

_____1.    **The Tucker Act**

The Tucker Act waives sovereign immunity and grants the United States Court of Federal Claims exclusive jurisdiction over contract actions against the government for money damages exceeding $10,000.  28 U.S.C. § 1491(a)(1).[9]  The related Little Tucker Act grants district courts concurrent jurisdiction over claims founded on a contract with the United States that seek less than $10,000.  28 U.S.C. § 1346(a)(2).  Thus, plaintiffs who wish to bring contract actions against the United States for monetary damages "greater than $10,000 must litigate in the Court of Federal Claims, while plaintiffs seeking $10,000 or less may litigate in either the Court of Federal Claims or the district courts."  Bublitz v. Brownlee, 309 F. Supp. 2d 1, 6 (D.D.C. 2004).

Courts have consistently construed these provisions as "authorizing only actions for money judgments and not suits for equitable relief against the United States."  Richardson v. Morris, 409 U.S. 464, 465 (1973).  In Lee v. Thornton, 420 U.S. 139 (1975), the Supreme Court held that § 1346(a)(2) "empowers district courts to award damages but not to grant injunctive or declaratory relief."  Id. at 140.  The prohibition against district-court awards of equitable relief under § 1346(a)(2) stems from the fact that "the jurisdiction of the district courts under the Act was made expressly concurrent with the Court of Claims'" jurisdiction, and the Court of Claims has historically lacked power to grant equitable relief under § 1491(a)(1).  See Richardson, 409 U.S. at 465-66.  Thus, in order to determine whether the Tucker Act authorizes this Court -- or the Court of Federal Claims -- to exercise jurisdiction over plaintiff's challenges to the settlement agreement, the Court must first assess whether plaintiff seeks monetary or equitable relief.

_____

[9]The "disappointed bidder" jurisdiction under 28 U.S.C. § 1491(b) for bid protest and related challenges to government contracts is not at issue here.

In his Complaint, plaintiff requests rescission of his July 14, 2005 settlement agreement, reinstatement into the Foreign Service, and monetary relief in the form of back pay from January 1, 2006 to the present.  See Pl.'s Compl. at 4.  If plaintiff's contract claim were "in essence" an action for money damages, see Kidwell v. Dep't of Army, Bd. for Correction of Military Records, 56 F.3d 279, 284 (D.C. Cir.1995), the value of his requested back pay would be greater than $10,000, and his claim would be subject to the exclusive jurisdiction of the Court of Federal Claims.  See Powell, 390 F. Supp. at 7 (stating that even where plaintiff "does not specify the amount of back pay that she seeks, the court may infer, based on her salary . . . that her complaint should be read to seek more than $10,000"); see also Doe v. Dep't of Justice, 753 F.2d 1092, 1101 (D.C. Cir. 1985) (inferring plaintiff's claim for back pay exceeded $10,000 by calculating amount of back pay that would be due based on annual salary of average GS-14 attorney).

But plaintiff's listing of back pay as one of his desired remedies does not serve to transform what is "in essence" a claim for equitable relief into a claim for money damages.  This Circuit has held that rescission of a contract is an equitable remedy -- despite the fact that it "sometimes involves the payment of what the common law termed 'damages'."  See Transohio, 967 F.2d at 608; see also Kidwell, 56 F.3d at 284 ("A plaintiff does not 'in essence' seek monetary relief . . . merely because . . . success on the merits may obligate the United States to pay the complainant."); Vietnam Veterans of Am. v. Sec'y of Navy, 843 F.2d 528, 534 (D.C. Cir. 1988) ("[A] claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff.").  Plaintiff in this case seeks only a declaratory judgment invalidating his government contract, which might later result in an award of back pay. Although the Court of Federal Claims possesses exclusive jurisdiction over contract actions by

federal employees seeking damages over $10,000 from the United States, the Court of Federal

Claims cannot order equitable relief in a contract action -- such as rescission -- merely because

such relief might lead to some monetary recovery.  As the Supreme Court has explained, courts

must distinguish "between an action at law for damages -- which are intended to provide a victim

with monetary compensation for an injury to his person, property, or reputation -- and an

equitable action for specific relief -- which may include an order providing for the reinstatement

of an employee with back pay."  Bowen v. Massachusetts, 487 U.S. 879, 893 (1988).

Plaintiff's claim that the settlement agreement he reached with the State Department

should be declared void, see Compl. at 4, is such an equitable action for specific relief.  The fact

that invalidation of the settlement agreement could entitle the plaintiff to reinstatement and back

pay if he were also to prevail on the merits of his 2005 grievance does not alter the fundamentally

equitable nature of plaintiff's requested remedy.  See Bowen, 487 U.S. at 893; Tootle, 446 F.3d at

176.  Because plaintiff seeks rescission of his settlement agreement, not money damages

resulting from breach of the agreement, his claim cannot be heard in this Court under the Little

Tucker Act or in the Court of Federal Claims under the Tucker Act.[10]    _____

---

[10]The Tucker Act does permit the Court of Federal Claims to grant equitable relief in
limited circumstances where such relief is "incident and collateral" to a monetary judgment.  See
28 U.S.C. § 1491(a)(2); see also Greenhill, 482 F.3d at 576; Griswold v. United States, 61 Fed.
Cl. 458, 461 (2004).  However, equitable relief can only be granted by the Court of Federal
Claims where an otherwise valid Tucker Act claim seeking money damages from the United
States already exists.  See Taylor v. United States, 73 Fed. Cl. 532, 545-46 (2006) (noting that
Court of Federal Claims lacks jurisdiction to rescind settlement agreement "in the absence of a
claim for money damages for breach of contract"); see also Keith, 2006 WL 2085389, at *5
(stating that "even if monetary damages in excess of $10,000 would directly flow from a
successful rescission of the contract, the Court of Federal Claims . . . would still lack
jurisdiction" to entertain plaintiff's mental incapacity claim for rescission of settlement
agreement).  Because plaintiff's action for rescission of his July 14, 2005 settlement agreement
cannot be characterized as "incidental" to another claim properly within the purview of the Court

_____2.        **The Administrative Procedure Act (APA) and 28 U.S.C. § 1331**

_____Although the Tucker Act does not enable federal district courts or the Court of Federal

Claims to exercise subject-matter jurisdiction over a claim for rescission of a government

contract, at least one jurisdiction has held that such suits can be entertained in federal district

court under the Administrative Procedure Act (APA) in conjunction with 28 U.S.C. § 1331.  See

Rashid v. United States, 170 F. Supp. 2d. 642, 647 (S.D. W.Va. 2001).  Section 702 of the APA

waives sovereign immunity and confers a general cause of action upon those seeking "relief other

than money damages" for any "legal wrong" suffered because of action taken by a government

agency.  Section 702 does not serve as an independent basis for subject-matter jurisdiction, see

Califano v. Sanders, 430 U.S. 99, 107 (1977), but the federal question statute, 28 U.S.C. § 1331,

can provide subject-matter jurisdiction for claims permitted under the APA's waiver of sovereign

immunity.  See Transohio, 967 F.2d at 607.  Claims seeking rescission of government contracts

do "arise under federal law as § 1331 requires," since the "federal common law of contracts

applies to contracts with the federal government," and "federal common law is part of the 'laws

of the . . . United States' for the purpose of § 1331 jurisdiction."  N. Side Lumber v. Block, 753

F.2d 1482, 1484 (9th Cir. 1985) (citing Illinois v. Milwaukee, 406 U.S. 91, 100 (1972)).

However, the D.C. Circuit has expressly held that "§ 702 of the APA does not waive

sovereign immunity for contract actions against the government."  Transohio, 967 F.2d at 607.

The text of the APA provides that the statute waives sovereign immunity for (1) claims not

seeking "money damages"; (2) claims "for which there is no other adequate remedy"; and (3)

_____

of Federal Claims, that court here -- just as in Taylor -- would not possess "the power to award
the relief sought by the plaintiff."  Taylor, 73 Fed. Cl. at 546.

claims seeking relief that is not "expressly or impliedly forbidden by another statute." 5 U.S.C.

§§ 702, 704; see Transohio, 967 F.2d at 607. Because the Tucker Act -- which does not

authorize equitable relief -- was intended to provide "the exclusive remedy for contract claims

against the government," this Circuit has interpreted the Tucker Act as "impliedly forbidding"

district courts from awarding equitable relief against the government on a contract claim brought

under the APA. Id. at 609 (citing Sharp v. Weinberger, 798 F.2d 1521, 1523 (D.C. Cir. 1986));

see also Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys., 357

F.3d 62, 69 (D.C. Cir. 2004). To allow a plaintiff to utilize the waiver of sovereign immunity

provided by § 702 in conjunction with 28 U.S.C. § 1331 to obtain a district-court judgment that a

government contract is void would "create such inroads into the restrictions of the Tucker Act

that it would ultimately result in the demise of the Court of Claims." Megapulse, Inc. v. Lewis,

672 F.2d 959, 967 (D.C. Cir. 1982). Rather than permit such an outcome, this Circuit has

declared that "under § 702 and the Tucker Act, litigants in the District of Columbia may bring

common-law contract claims only as actions for money damages in the Claims Court" -- or as

actions for money damages in federal district court under § 1346(a)(2) if the amount sought is

below $10,000. Transohio, 967 F.2d at 610.

Because there is no waiver of sovereign immunity for government contract claims

seeking equitable relief, see, e.g., Robbins v. Reagan, 616 F. Supp. 1259, 1271 (D.D.C. 1985)

(stating that "[t]he Tucker Act . . . represents the *only* waiver of sovereign immunity on contract

claims"), the Court grants defendants' motion to dismiss plaintiff's common-law contract claims

in Count III for lack of subject-matter jurisdiction. Moreover, since the Court of Federal Claims

also cannot entertain contract actions against the United States for equitable relief, this Court

declines to exercise its authority under 28 U.S.C. § 1631 to transfer the present action to the

Court of Federal Claims, as "[i]t would not be in the interest of justice to transfer this case when

the Court of Claims would refuse to exercise jurisdiction." Motorola, Inc. v. Perry, 917 F. Supp.

43, 48 (D.D.C. 1996) (citing A&S Council Oil Co., Inc. v. Lader, 56 F.3d at 242).

    **B.**    **Count III Constitutional Claim**

        **1.**    **Subject-Matter Jurisdiction**

Even though litigants cannot bring common-law contract claims for equitable relief

against the government in federal district court, "they may bring statutory and constitutional

claims for specific relief in federal district court . . . even when the claims depend on the

existence and terms of a contract with the government." Transohio, 967 F.2d at 610; accord

Wabash Valley Power v. Rural Elec. Admin., 903 F.2d 445, 452 (7th Cir. 1990); N. Side Lumber

v. Block, 753 F.2d at 1485-86.  In other words, where a plaintiff's contract action is based on the

Constitution or a federal statute, § 702 of the APA provides a waiver of sovereign immunity that

enables the plaintiff to bring his claim in federal district court. Transohio, 967 F.2d at 611.  The

critical inquiry thus becomes whether, "despite the presence of a contract, plaintiffs' claims are

founded only a contract, or whether they stem from a statute or the Constitution." Id. at 598; see

also York Assocs. Inc. v. Sec'y of Housing & Urban Develop., 815 F. Supp. 16, 20 (D.D.C.

1993).

In Megapulse v. Lewis, the D.C. Circuit articulated a test to determine whether a

particular action "is or is not 'at its essence' a contract action."  672 F.2d at 967.  Noting that "a

plaintiff whose claims against the United States are essentially contractual should not be allowed

to avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act," the court in

Megapulse explained that the question whether an action is "essentially contractual" depends "both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." Id. at 968. The Megapulse court thus held that an action by a government contractor to enjoin the government from disclosing information provided under the contract was not a "contract action," since the plaintiff's rights in its technical data were "property rights" which existed independently of the contract, and the type of relief sought was not a traditional contract remedy of monetary damages or specific performance. Id. at 969.

Subsequent courts applying the "Megapulse test" have looked primarily to the source of the rights sought to be enforced to determine whether a federal district court can exercise jurisdiction over alleged constitutional or statutory claims. See Motorola, 917 F. Supp. at 48 (holding that APA waiver of sovereign immunity did not apply to suit by government contractors seeking to have expired Treasury checks replaced because plaintiffs' "rights are created in the first instance by their contracts with defendants, rather than by statutory provisions or Treasury regulations governing the issuance of checks"); see also Spectrum Leasing Corp. v. United States, 764 F.2d 891, 894-95 (D.C. Cir. 1985) (dismissing for lack of subject-matter jurisdiction action by government contractor seeking declaratory judgment that government had violated its rights under Debt Collection Act and injunction compelling government to cease withholding payment, on grounds that plaintiff's rights to payment "arose only upon creation and satisfaction of its contract with the government").

Plaintiff's right to procedural due process arises from the Fifth Amendment of the United States Constitution, and thus, plaintiff's due process claim as articulated in Count III may be heard in federal district court even though it "depend[s] on the existence and terms of a contract

with the government" (his employment contract with the State Department). See Transohio, 967 F.2d at 611; see also Sharp, 798 F.2d at 1523. Because the Court does possess subject-matter jurisdiction over plaintiff's constitutional claim, the Court will address defendant's contention that plaintiff has failed to state a claim upon which relief may be granted.[11]

### 2.    Failure to State a Claim

As previously set forth in this Memorandum Opinion, plaintiff contests the settlement agreement he signed with the Department of State on the grounds that it violated "standards of due process." Compl. at 3. Although the Court has found plaintiff's due process challenge to the settlement agreement to be a mere reiteration of his claim of duress, plaintiff in Count III does

---

[11] Although the Court may exercise subject-matter jurisdiction over plaintiff's constitutional claim as set forth in Count III, it may not exercise supplemental jurisdiction over plaintiff's Count III non-constitutional challenges to the settlement agreement. 28 U.S.C. § 1367(a) provides that " . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Plaintiff's non-constitutional challenges to the settlement agreement do, in fact, arise from the "same case or controversy" as his due process claim. However, numerous courts have held that "pendent jurisdiction has no application to a claim against the United States." Lenoir v. Porters Creek Watershed Dist., 586 F.2d 1081, 1088 (6th Cir. 1978). In other words, since the United States cannot be sued without its consent, litigants may not utilize § 1367(a) to bring claims against the United States which would otherwise not be permitted in federal district court. See Weber v. Hurtgen, 297 F. Supp. 58, 62 (D.D.C. 2003) (expressing agreement with Fifth, Sixth, and Tenth Circuits that "claims under the Tucker Act for more than $10,000 are within the exclusive jurisdiction of the Court of Federal Claims" and thus cannot be brought "in the District Court through pendent jurisdiction"); see also Ware v. United States, 626 F.2d 1278, 1286-87 (5th Cir. 1980) (holding that district court cannot exercise supplemental jurisdiction over Tucker Act claim for more than $10,000 since "[j]urisdictional amounts, like statutes of limitation, are conditions of the waiver [of sovereign immunity], and it is not for us to extend the conditions that Congress has set"); cf. Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 541 (2002) (analyzing intersection between supplemental jurisdiction statute and state sovereign immunity guaranteed by Eleventh Amendment and concluding that § 1367(a) does not "authorize district courts to exercise jurisdiction over claims against nonconsenting States, even though nothing in the statute expressly excludes such claims").

present an independent (though related) procedural due process challenge to the FSGB statutory

scheme.  According to plaintiff, the FSGB's lack of authority to "grant proscriptive relief staying

separations from the Foreign Service" while grievance appeals are pending "denied plaintiff the

right to be heard before any sort of impartial decision-maker before the denial of substantial

property benefits, thereby violating standards of due process guaranteed by 22 USC 4008 and by

the Fifth Amendment."  Compl. at 3.

    Nevertheless, as defendants correctly explain, plaintiff lacks standing to challenge the

constitutionality of the former FSGB statutory scheme.  See Defs.' Mot. at 13.  In order to

challenge the FSGB appeal process as a violation of procedural due process, plaintiff would need

to have been issued a denial of his 2005 grievance by the State Department and then appealed

this decision to the FSGB.  As the Supreme Court has explained, standing to bring a

constitutional claim requires both (1) "injury in fact" which is (a) "concrete and particularized"

and (b) "actual or imminent, not 'conjectural' or 'hypothetical'" as well as (2) a "causal connection

between the injury and the conduct complained of."  See Lujan, 504 U.S. at 561; see also Dep't of

Commerce, 525 U.S. at 329.  Plaintiff, however, never initiated an FSGB appeal for his 2005

grievance.  Indeed, plaintiff's 2005 grievance was not even ripe for appeal to the FSGB.

Although the State Department indicated to plaintiff that it was "prepared to issue a decision

denying [his] grievance," Pl.'s Ex. 1 at 35, plaintiff accepted the settlement agreement before the

agency ever issued a final decision.  If and when the State Department had denied plaintiff's

grievance, and if and when plaintiff had chosen to appeal, he then would have faced a lack of

interim relief during the pendency of his FSGB appeal.  But rather than wait for the State

Department to deny his grievance and initiate an appeal, plaintiff signed the settlement

-31-

agreement.  Because plaintiff did not avail himself of the FSGB appeal process, he lacks standing to argue that the State Department's failure to maintain his status as an FSO during the pendency of his FSGB appeal constituted a denial of procedural due process.  The Court will thus grant defendant's motion to dismiss plaintiff's due process claim in Count III for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the aforementioned reasons, defendants' motion for summary judgment on Count II is granted.  Defendants' Rule 12(b)(1) motion to dismiss plaintiff's non-constitutional challenges to the settlement agreement in Count III of the Complaint is also granted.  Defendants' motion to dismiss plaintiff's constitutional claim as set forth in Count III for failure to state a claim is granted.  Finally, plaintiff's motion for summary judgment is denied.  A separate order has been posted on this date.


_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge


Dated: August 3, 2007